JUDGE GARDEPHE



ORIGINAL



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

                        Plaintiffs,

              v.

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A
CATARINA FREDERICK; VLADIMIR
ZURAVEL A/K/A VLADIMIR
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI
PICHEL; THEODOR PARDO; AND JOHN
DOES 1-10,

                     Defendants.

Civil Action No. 10 CV 8830 (PGG)
ECF CASE

JURY TRIAL DEMANDED

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION
AND MOTION FOR: (1) TEMPORARY RESTRAINING ORDER; (2) ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION; (3) SEIZURE ORDER; (4)
ORDER RESTRAINING THE TRANSFER OF ASSETS; (5) ORDER AUTHORIZING
EXPEDITED DISCOVERY; (6) ORDER AUTHORIZING ALTERNATIVE SERVICE
OF PROCESS; AND (7) ORDER SEALING FILE**

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ............................................................................... 2

I.    PLAINTIFFS AND PLAINTIFFS' GUGGENHEIM TRADEMARKS ........................... 2

II.   DEFENDANTS' COUNTERFEITING SCHEME TO DEFRAUD CONSUMERS........ 4

LEGAL ARGUMENT ...................................................................................... 5

I.    PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER
      AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ACTS OF
      TRADEMARK COUNTERFEITING AND INFRINGEMENT ................................. 5

      A.   Legal Standard ......................................................................... 6
      B.   Plaintiffs Have a Substantial Likelihood Of Success on the Merits Of
           Their Claims................................................................................ 7
           1.   Defendants Have Committed Trademark Infringement In Violation
                Of The Lanham Act ............................................................ 8
                a.   Plaintiffs Own Valid GUGGENHEIM Trademarks ..................... 8
                b.   Defendants' Use Of Plaintiffs' GUGGENHEIM Marks
                     Causes A Likelihood of Confusion................................ 9
                     (1)   Plaintiffs' GUGGENHEIM Marks Are Strong.................. 9
                     (2)   Defendants' Marks Are Identical To And
                           Substantially Indistinguishable From Plaintiffs'
                           GUGGENHEIM Marks ...................................... 11
                     (3)   Defendants Purport To Offer Services Identical to
                           Plaintiffs' Services...................................... 12
                     (4)   Defendants' Bad Faith ................................... 13
                     (5)   Actual Confusion Is Occurring ......................... 15
                     (6)   Purchaser Sophistication................................ 16
                     (7)   Overall Balance of Likelihood of Confusion Factors ...... 17
           2.   Defendants Are Engaged In Trademark Counterfeiting ........................ 17
           3.   Defendants Are Engaged In Cybersquatting............................ 19
                a.   Plaintiffs' GUGGENHEIM Marks Are Distinctive.................... 20
                b.   Defendants' Domain Name Is Identical or Confusingly
                     Similar To Plaintiffs' GUGGENHEIM Mark............................ 20
                c.   Bad Faith Intent To Profit .............................................. 21
      C.   Defendants' Use of Counterfeit GUGGENHEIM Marks Is Causing
           Plaintiffs Irreparable Injury And The Entry Of A Temporary Restraining
           Order And Preliminary Injunction Would Not Injure Defendants ................. 22
           1.   Plaintiffs Are Suffering Irreparable Injury ................................ 22
           2.   Defendants Will Not Suffer Irreparable Injury If An Injunction Is
                Entered ......................................................................... 24
      D.   The Public Deserves A Temporary Restraining Order And Preliminary
           Injunction ................................................................................... 25

II.   DEFENDANTS' CONDUCT WARRANTS AN *EX PARTE* SEIZURE ORDER......... 26

## TABLE OF CONTENTS
(continued)

Page

A.    The Lanham Act Authorizes *Ex Parte* Seizure Orders ........................ 26
B.    Plaintiffs Are Entitled To An *Ex Parte* Seizure Order ...................... 27
    1.    Adequate Security ..................................................... 27
    2.    Plaintiffs Have Not Publicized The Requested Seizure............ 27
    3.    Defendants Are Using Counterfeit Marks .......................... 27
    4.    The Materials To Be Seized Will Be Located At The Addresses Specified In Plaintiffs' [Proposed] Seizure Order ................... 28
    5.    The Harm to Plaintiffs and The Public of Denying The Seizure Far Outweighs Any Harm to The Legitimate Interests of Defendants ........ 29
    6.    Defendants Would Likely Destroy Evidence If Plaintiffs Were To Proceed On Notice ................................................... 30
    7.    *Ex Parte* Relief is Necessary To Adequately Protect Plaintiffs' Trademark Rights.................................................... 31
    8.    Notice to the U.S. Attorney Has Been Provided...................... 32

III.    PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS .................................. 32

IV.    DISCOVERY SHOULD BE EXPEDITED .................................. 34
A.    Plaintiffs Have Shown Likelihood of Success On Their Trademark Claims and Irreparable Harm ...................................................... 35
B.    Expedited Discovery May Prevent Further Irreparable Harm ............. 35
C.    Harm to Plaintiffs If Expedited Discovery Is Denied Outweighs Any Harm to Defendants ........................................................ 36

V.    ALTERNATIVE SERVICE OF PROCESS IS APPROPRIATE ................... 37

VI.    NO BOND OR A NOMINAL BOND IS APPROPRIATE ..................... 38

VII.    THE CASE FILE SHOULD BE SEALED .................................. 39

CONCLUSION............................................................ 39

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*American ORT, Inc. v. ORT Israel*, No. 07 Civ. 23321,
2009 U.S. Dist. LEXIS 10202, at *15-18 (S.D.N.Y. Jan. 21, 2009) ........................................ 39

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912,
2010 U.S. Dist. LEXIS 107733, 24-26 (S.D.N.Y. Oct. 8, 2010)............................................. 33

*Bausch & Lomb, Inc. v. Nevitt Sales Corp.*, 810 F. Supp. 466 (W.D.N.Y. 1993)........................ 15

*Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear*,
909 F. Supp. 896 (S.D.N.Y. 1995) .................................................................................... 10, 11

*Behnam Jewelry Corp. v. Aron Basha Corp.*, No. 97-CIV-3841,
1997 U.S. Dist. LEXIS 15957, *58-59 (S.D.N.Y. July 18, 1997)........................................... 34

*Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000) ............ 14

*Blue & White Food Prods. Corp. v. Shamir Food Indus.*,
350 F. Supp. 2d 514 (S.D.N.Y. 2004) ............................................................................... 9, 13

*BroadBridge Media, L.L.C. v. Hypercd.com*, 106 F. Supp. 2d 505 (S.D.N.Y. 2000) .................. 20

*Cartier Int'l B.V. v. Ben-Menachem*, No. 06 Civ. 3917 (RWS),
2007 U.S. Dist. LEXIS 95366 (S.D.N.Y. Dec. 19, 2007) ............................................. 9, 19, 26

*Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.*, No. CV-07-1455 (CPS),
2007 U.S. Dist. LEXIS 34108, at *9 (E.D.N.Y. May 9, 2007) ............................................... 12

*Chloe v. Designersimports.com USA, Inc.*, No. 07-cv-1791 (CS) (GAY),
2009 U.S. Dist. LEXIS 42351, at *17-19 (S.D.N.Y. Apr. 29, 2009) ......................... 17, 19, 26

*Clarkson Co. v. Shaheen*, 544 F.2d 624 (2d Cir. N.Y. 1976) .......................................... 38

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ........................... 35

*Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321 (S.D.N.Y. 1970)................. 24

*Country Inns & Suites by Carlson, Inc. v. Nayan, LLC*, No. 1:08-cv-624,
2008 U.S. Dist. LEXIS 88559, at *28-29 (S.D. Ind. Oct. 28, 2008) ...................................... 38

*Doctor's Assocs. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)............................................... 38

*Edward B. Beharry & Co. v. Bedessee Imps., Inc.*, No. 06-cv-5707 (JBB),
2006 U.S. Dist. LEXIS 79332, at *2-3 (E.D.N.Y. Oct. 31, 2006)........................................ 6, 7

*Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064 (S.D.N.Y. 1970)................................... 25

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009) ............ 24

*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273 (S.D.N.Y. 2002) .............................. 15

*Gucci Am. v. Accents*, 955 F. Supp. 279 (S.D.N.Y. 1997) ........................................... 26

*Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320 (S.D.N.Y. 2009) ............ 9, 38

*Hermes Int'l v. Lederer de Paris Fifth Ave. Inc.*, 219 F.3d 104 (2d Cir. 2000) ........................... 25

# TABLE OF AUTHORITIES
## (continued)

PAGE

*In re Vuitton et Fils, S.A.*, 606 F.2d at 1 (2d Cir. 1979).................................................................. 30

*Jack Schwartz Shoes Inc. v. Welland Int'l, Inc.*, 02 Civ. 4799 (BSJ) ............................................ 29

*Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374 (E.D.N.Y. 2008) ........... 16

*Lacoste Alligator, S.A. v. F. Saltstein, Inc.*, No. 81 Civ. 4555 (CBM),
    1981 U.S. Dist. LEXIS 16114 at *9 (S.D.N.Y. Nov. 13, 1981) ............................................... 12

*Lexington Mgmt. Corp. v. Lexington Capital Partners*,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998) .............................................................................. 11, 12

*Marshak v. Thomas*, No. CV-98-2550, 1998 U.S. Dist. LEXIS 23644, at *40............................ 24

*Marvel Enterprises v. Toy Season, Inc.*, 05 Civ. 3149 (JES) (S.D.N.Y.) ..................................... 29

*Metlife, Inc. v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223 (S.D.N.Y. 2005).................................... 12

*Microsoft Corp. v. Atek 3000 Computer, Inc.*, No. 06-cv-6403,
    2008 U.S. Dist. LEXIS 56689, at *18 (E.D.N.Y. July 23, 2008) ........................................... 25

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. N.Y. 1987)....................... 15

*Motorola, Inc. v. Abeckaser*, No. 07-cv-3963,
    2009 U.S. Dist. LEXIS 40660 at *15-16 (E.D.N.Y. May 14, 2009) ...................................... 33

*Multi-Local Media Corp. v. 800 Yellow Book, Inc.*, 813 F. Supp. 199 (E.D.N.Y. 1993).............. 6

*N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05cv9083 (RMB),
    2006 U.S. Dist. LEXIS 14226, at *23 (S.D.N.Y. Mar. 30, 2006) ...................................... 7, 33

*National Football League Properties, Inc. v. New Jersey Giants, Inc.*,
    637 F. Supp. 507 (D.N.J. 1986)............................................................................................. 15

*NBA Properties, Inc. v. United New Fashion, Inc.*, 92 Civ. 7106 (LJF) ...................................... 29

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................................................. 10

*New York Road Runners Club v. Luperallo*, 92 Civ. 7850 (MBM)............................................... 29

*New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*,
    697 F. Supp. 2d 415 (W.D.N.Y. 2010) ............................................................... 6, 9, 13, 15, 23

*North Am. Graphics, Inc. v. North Am. Graphics of US, Inc.*, No. 97 Civ. 3448,
    1997 U.S. Dist. LEXIS 8107, at *12, *18 (S.D.N.Y. June 9, 1997).......................................... 10

*Omega, S.A. v. S & N Jewelry Inc.*, No. 92 Civ. 3656 (PKL),
    1992 U.S. Dist. LEXIS 8359, at *11 (S.D.N.Y. June 8, 1992)...................................... 9, 12, 13

*Paddington Corp. v. Attiki Importers & Distrib., Inc.*, 996 F.2d 577 (2d Cir. 1993).................... 14

*Planned Parenthood Fed'n of Am. v. Bucci*, No. 97 Civ. 0629,
    1997 U.S. Dist. LEXIS 3338, at *24, *40 (S.D.N.Y. Mar. 19, 1997) ....................................... 10

# TABLE OF AUTHORITIES
(continued)

**PAGE**

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961) ................................... 9

*Ptak Bros. Jewelry, Inc. v. Ptak*, No. 06 Civ. 13732 (DC),
    2007 U.S. Dist. LEXIS 39283, at *19 (S.D.N.Y. May 29, 2007) ............................... 10

*Rado Watch Co. v. ABC, Co.*, No. 92 Civ. 3657 (PKL),
    1992 U.S. Dist. LEXIS 8356, at *10 (S.D.N.Y. June 8, 1992) ................................... 10, 13, 26

*Romag Fasteners, Inc. v. J.C. Penney Corp.*, No. 07-cv-1667,
    2007 U.S. Dist. LEXIS 87261, *16 (D. Conn. Nov. 27, 2007) ................................ 13

*Samara Bros., Inc. v. Wal-Mart Stores, Inc.*,
    166F.3d 120, 4 U.S.P.Q.2d 1266-67 (2d Cir. 1998) ................................ 14

*Telebrands Corp. v. E. Mishan & Sons*, Civil Action No. 97 Civ. 1414 (RPP),
    1997 U.S. Dist. LEXIS 6229, 54-55 (S.D.N.Y. May 5, 1997) ................................ 16

*Tommy Hilfiger Licensing v. Tee's Ave.*, 924 F. Supp. 17 (S.D.N.Y. 1996) ................................ 32

*Topps CP. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412 (S.D.N.Y. 1996) ................................ 19

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) ................................ 14

*Twentieth Century Fox Film Corp. v. Mow Trading Corp*,
    749 F. Supp. 473 (S.D.N.Y. 1990) ................................ 34, 35

*Vogster Entm't, L.L.C. v. Mostovoy*, No. 09-cv-1036,
    2009 U.S. Dist. LEXIS 20936 at *10 (E.D.N.Y. Mar. 16, 2009) ................................ 20

*Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991) ................................ 26

*Webadviso v. Bank of Am. Corp.*, 09 Civ. 5769, 2009 U.S. Dist. LEXIS 121326,
    12-13 (S.D.N.Y. Dec. 31, 2009) ................................ 22, 23

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009) ................................ 22

**Statutes**

15 U.S.C. § 1057(b) ................................ 3, 8

15 U.S.C. § 1114 ................................ 7, 27

15 U.S.C. § 1114(1) ................................ 19

15 U.S.C. § 1115(a) ................................ 29

15 U.S.C. § 1116(d) ................................ 28, 29, 32

15 U.S.C. § 1116(d)(1)(B) ................................ 8, 17

15 U.S.C. § 1116(d)(2) ................................ 32

15 U.S.C. § 1116(d)(4)(A) ................................ 27

15 U.S.C. § 1116(d)(8) ................................ 39

15 U.S.C. § 1117(a) ................................ 32

# TABLE OF AUTHORITIES
### (continued)

PAGE

15 U.S.C. § 1117(b) ................................................................................. 32

15 U.S.C. § 1117(c) ................................................................................. 33

15 U.S.C. § 1125 ......................................................................................... 7

15 U.S.C. § 1125 (d)(1)(c) ...................................................................... 22

15 U.S.C. § 1125(d) ................................................................................. 19

15 U.S.C. § 1125(d)(1) ............................................................................ 20

15 U.S.C. § 1125(d)(1)(B)(i)(1)-(IX) ................................................... 21

15 U.S.C. §1116(d) ................................................................................. 26

**Rules**

Fed. R. Civ. P. 26(d) ................................................................................ 34

Fed. R. Civ. P. 65(a)(2) ............................................................................. 1

Fed. R. Civ. P. 65(b)(1)(a) ........................................................................ 6

Fed. R. Civ. P. 65(c) ............................................................................... 38

Fed. R. Civ. P. 66 .................................................................................... 30

## INTRODUCTION

This is an urgent matter in which rogue unauthorized parties are soliciting billion-dollar investments under the guise of the famous and federally registered GUGGENHEIM name. Plaintiffs Guggenheim Capital, LLC and Guggenheim Partners, LLC ("Plaintiffs") submit this Memorandum of Law in support of their *Ex Parte* Application and Motion for a (1) Temporary Restraining Order ("TRO"); (2) Order to Show Cause for a Preliminary Injunction; (3) Seizure Order; (4) Order Restraining The Transfer Of Assets; (5) Order Authorizing Expedited Discovery; (6) Order Authorizing Alternative Service of Process; and (7) Order Sealing File. Plaintiffs seek this TRO pending a preliminary injunction hearing or a combined preliminary injunction hearing and trial on the merits pursuant to Fed. R. Civ. P. 65(a)(2).

Plaintiffs are among the most well-known and highly-respected financial firms in the United States and the world. For over 50 years, Plaintiffs and their predecessors have offered financial consultation and investment services under the mark GUGGENHEIM and formatives thereof, such as GUGGENHEIM CAPITAL, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM INVESTMENT ADVISORS, GUGGENHEIM FUNDS, GUGGENHEIM SECURITIES and GUGGENHEIM REAL ESTATE ADVISORS. Consumers rely on financial consultation and investment services branded with Plaintiffs' GUGGENHEIM marks and have entrusted Plaintiffs with the supervision of over 100 billion dollars in assets.

Defendants are engaged in a nationwide scheme to defraud consumers out of billions of dollars by pretending to be Plaintiffs. Defendants use counterfeits of Plaintiffs' GUGGENHEIM marks to offer financial consultation and investment services which offer consumers a variety of bogus investment opportunities, including in commodities such as oil and diamonds. Defendants' scheme not only jeopardizes and devalues Plaintiffs' reputation, but it threatens the financial security of the targets of Defendants' solicitations.

- 1 -

Good cause exists for not providing notice of this application and motion to Defendants. Defendants are knowingly engaging in blatant counterfeiting and willful infringement of Plaintiffs' famous GUGGENHEIM Marks. Defendants' illegal counterfeiting is conducted almost entirely online, where consumer deception is easily made anonymous and evidence is even more easily destroyed. If provided notice, Defendants are likely to conceal and destroy evidence of their on-going infringements and activities. In turn, without such evidence, it may be impossible to identify and warn all persons who have been contacted by Defendants.

Plaintiffs thus request that the Court issue a: (1) Temporary Restraining Order; (2) Order To Show Cause For Permanent Injunction; (3) Seizure Order; (4) Order Restraining The Transfer Of Assets; (5) Order Authorizing Alternative Service Of Process; (6) Order Authorizing Expedited Discovery; and (7) Order Sealing File in this case. The requested relief is necessary to stop a nationwide scam, to determine the extent and nature of Defendants' unlawful acts, and to prevent the irreparable and imminent harm to Plaintiffs and the public.

## STATEMENT OF FACTS

### I.   PLAINTIFFS AND PLAINTIFFS' GUGGENHEIM TRADEMARKS

Plaintiffs are among the most famous and highly-respected financial firms in the United States. (*See* Verified Complaint ¶ 19.) Plaintiff Guggenheim Capital, LLC is a financial services and investment management holding company, whose members include the Guggenheim family. (*Id.*) Plaintiff Guggenheim Partners, LLC is a wholly-owned subsidiary of Guggenheim Capital LLC and a global financial services firm. (*Id.* ¶ 20.) Its customers include high-net-worth individuals, institutional investors, endowments, foundations, insurance companies, pension plans and others. Plaintiffs' clients have entrusted Guggenheim with more than $100 billion in assets under supervision. (*Id.*)

- 2 -

For over 50 years, Plaintiffs and their predecessors have offered financial consultation

and investment services under the mark GUGGENHEIM and formatives thereof, such as

GUGGENHEIM CAPITAL, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS,

GUGGENHEIM INVESTMENT ADVISORS, GUGGENHEIM FUNDS and GUGGENHEIM

SECURITIES (collectively, "GUGGENHEIM Marks"). (*Id.* ¶ 21.) Plaintiffs render their

services under the GUGGENHEIM Marks throughout the United States and the world and

provide information about their services at their websites located at *guggenheimpartners.com,*

*guggenheimadvisors.com, guggenheimfunds.com, guggenheiminvestmentadvisors.com,* and

*guggenheimrealestate.com,* among others. (*Id.* ¶ 21.) Plaintiffs have spent substantial sums of

money to advertise their financial consultation and investment services under the

GUGGENHEIM Marks. (*Id.* ¶ 25.) Consumers recognize Plaintiffs' GUGGENHEIM Marks as

identifying Plaintiffs' financial consultation and investment services. (*Id.* ¶ 28.) Consumers

expect the highest quality from GUGGENHEIM-branded services and inherently trust such

services. (*Id.*)

Plaintiff Guggenheim Capital, LLC owns numerous U.S. trademark registrations for

GUGGENHEIM-formative marks and licenses those marks to Plaintiff Guggenheim Partners,

LLC. (*Id.* ¶ 22.) Plaintiffs' GUGGENHEIM Marks serve as legal evidence of the validity of the

GUGGENHEIM Marks, of the registration of the GUGGENHEIM Marks, of Plaintiff

Guggenheim Capital, LLC's ownership of the GUGGENHEIM Marks, and of Plaintiff

Guggenheim Capital, LLC's "exclusive right" to use the GUGGENHEIM Marks in commerce

for the services listed in the registrations. *See* 15 U.S.C. § 1057(b). Plaintiffs' GUGGENHEIM

marks are registered for financial consultation and investment services, among other services.

Further, Plaintiffs own substantial common law rights in GUGGENHEIM-formative marks,

including GUGGENHEIM CAPITAL, GUGGENHEIM ADVISORS, GUGGENHEIM FUNDS
and GUGGENHEIM SECURITIES. (Ver. Compl. ¶ 23.)

## II.   DEFENDANTS' COUNTERFEITING SCHEME TO DEFRAUD CONSUMERS

Defendants are a group of individuals, most of whom are located in New York. (Ver.
Compl. ¶ 7-11.) Defendants recently commenced a nationwide scheme to defraud consumers by
offering financial consultation and investment services under Plaintiffs' marks. (*Id.* ¶ 29.)
Defendants use the domain name *guggenheimadvisors.org* to host a website purporting to offer
financial consultation and investment services. (Ver. Compl. ¶ 29, 73-76.) Defendants purport
to be Plaintiffs and offer consumers investment opportunities in bogus, large-scale transactions
involving a variety of products, such as crude oil, bank guarantees, diamonds, and gold. (*Id.* ¶¶
29-40, 45-66.)

For example, Defendants are distributing emails, "letters of intent" and purchase
agreements under Plaintiffs' GUGGENHEIM Marks soliciting: (a) purchase contracts of crude
oil for billions of dollars; (b) purchase of 1 billion dollars of 24k gold bars; (c) sales of "Bank
Guarantees" in the denominations of $300 million, $500 million, and $1 billion; (d) offering
loans in excess of 1 billion dollars; and (e) sales of diamonds. (*Id.* ¶¶ 32-40, 45-66 and Exs.
thereto). Defendants also are distributing extensive written communications, such as letters,
investment proposals, transaction terms, financial documents, advertising materials, and other
documents which bear counterfeits of Plaintiffs' federally registered GUGGENHEIM Marks.
(*Id.* ¶¶ 32-72 & Exs. thereto.) Defendants distribute investment materials to consumers by using
an email address ending in *guggenheimadvisors.org*. (*Id.* ¶¶ 29, 78-79.)

As shown in Plaintiffs' Verified Complaint and its exhibits and declarations, each of the
named Defendants has engaged in the use of counterfeits of Plaintiffs' GUGGENHEIM Marks in
furtherance of Defendants' fraudulent scheme to defraud consumers. Defendant Toumei has

distributed numerous emails, letters and purported transaction documents containing

counterfeits, including the marks GUGGENHEIM, GUGGENHEIM ADVISORS,

GUGGENHEIM FUND and GUGGENHEIM BANK.  (*See* Exs. 1, 7, 10-16 to Ver. Compl.)

Defendant Zuravel has also distributed letters and purported transaction documents containing

counterfeit marks in connection with investment opportunities involving diamonds, crude oil and

bank guarantees.  (*See* Ex. 17 to Ver. Compl.)  Defendant Pichel has distributed emails, letters

and purported transaction documents containing counterfeit marks in connection with investment

opportunities towards diamonds.  (*See* Exs. 118-20 to Ver. Compl.)  Finally, Defendant

Birnbuam has worked with other Defendants to distribute letters containing counterfeit marks in

connection with investment opportunities involving diamonds, crude oil and bank guarantees.

Defendants' conduct causes consumers to falsely believe that Defendants' financial

consultation and investment services, and purported investment opportunities, originate from

Plaintiffs.  (*See* Ver. Compl. ¶ 80-81, 85.)  Defendants' use of Plaintiffs' GUGGENHEIM mark

in their domain name and e-mail addresses deliberately creates the false impression that

Defendants' financial consultation and investment services originate from Plaintiffs.  (*Id.*)

Plaintiffs have received numerous communications from individuals who thought they were

dealing with Plaintiffs, when in fact they were dealing with Defendants.  (*Id., See* Declarations of

Jeffrey Bartlett and Lawrence Carroll.)

## LEGAL ARGUMENT

**I.      PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ACTS OF
TRADEMARK COUNTERFEITING AND INFRINGEMENT**

A.   **Legal Standard**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order may be granted without notice to the opposing party where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(a).  Plaintiffs are entitled to a TRO if they show: (1) irreparable harm; and (2) <u>either</u> (a) a likelihood of success on the merits of their claims, <u>or</u> (b) the existence of serious questions going to the merits of the claims to make them a fair game for litigation, and a balance of hardships tipping decidingly in Plaintiffs' favor. *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 424-425 (W.D.N.Y. 2010) (granting preliminary injunction); *Edward B. Beharry & Co. v. Bedessee Imps., Inc.*, No. 06-cv-5707 (JBB), 2006 U.S. Dist. LEXIS 79332, at *2-3 (E.D.N.Y. Oct. 31, 2006) (granting plaintiff's motion to convert *ex parte* motion for temporary restraining order and seizure order to preliminary injunction in counterfeiting case).  "Federal courts have long recognized the need for immediate injunctive relief in trademark infringement cases due to the amorphous nature of the damage to the trademark and the resulting difficulty in proving monetary damages." *Multi-Local Media Corp. v. 800 Yellow Book, Inc.*, 813 F. Supp. 199, 202 (E.D.N.Y. 1993) (granting preliminary injunction).  Accordingly, Courts readily grant temporary restraining orders and preliminary injunctions in counterfeiting cases under the Lanham Act. *See, e.g., N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05cv9083 (RMB), 2006 U.S. Dist. LEXIS 14226, at *23 (S.D.N.Y.

Mar. 30, 2006) (granting TRO and preliminary injunction); *Beharry & Co.*, 2006 U.S. Dist. LEXIS 79332, at *7 (E.D.N.Y. Oct. 31, 2006) (same).[1]

As shown below in <u>Section B</u>, Plaintiffs have a substantial likelihood of success on the merits of their claims.  As shown below in <u>Section C</u>, Plaintiffs will suffer substantial irreparable injury if an emergency injunction does not issue, and the balance of harms weighs substantially in Plaintiffs' favor.  And as shown below in <u>Section D</u>, the public interest strongly favors the entry of a temporary restraining order.

**B.    Plaintiffs Have a Substantial Likelihood Of Success on the Merits Of Their Claims**

Plaintiffs' Verified Complaint alleges, among other things, claims for trademark counterfeiting, trademark infringement, and cybersquatting under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, *et seq*.  Plaintiffs have a substantial likelihood of success on the merits of those claims.

---

[1] In the following unreported decisions, the New York federal courts also granted *ex parte* TROs to stop counterfeiting. *Balenciaga Am., Inc. v. Dollinger*, 10 Civ. 2192 (LTS) (granting plaintiffs' *ex parte* temporary restraining order, order to show cause and order authorizing expedited discovery and alternative service of process on April 6, 2010 against defendants selling counterfeit purses); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08 Civ. 6030 (THK) (S.D.N.Y.) (granting temporary restraining order on July 3, 2008 against defendants selling counterfeit socks); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Combo Trading Inc.*, 07 Civ. 3880 (SMG) (E.D.N.Y.) (granting plaintiffs' *ex parte* temporary restraining order and seizure order on September 26, 2007 against defendants selling counterfeit food products); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Excelsior Trading Corp.*, 07 Civ. 3224 (SMG) (E.D.N.Y.) (granting plaintiffs' *ex parte* temporary restraining order and seizure order on August 6, 2007 against defendants selling counterfeit food products); *Chloe v. Designersimports.com USA, Inc.*, 07 Civ. 1791 (CS) (GAY) (S.D.N.Y.) (granting Plaintiff's *ex parte* motion for temporary restraining order and seizure order on March 1, 2007 against defendants selling counterfeit purses); *Cartier Int'l B.V. v. Ben-Menachem*, 06 Civ. 3917 (RWS) (S.D.N.Y.) (granting plaintiffs' *ex parte* temporary restraining order, seizure order, and order for expedited discovery, asset restraint and to show cause for a preliminary injunction on May 23, 2006 against defendants selling counterfeit watches); *Marvel Enterprises v. Toy Season, Inc.*, 05 Civ. 3149 (JES) (S.D.N.Y.) (granting plaintiffs' *ex parte* application for temporary restraining and seizure order, order to show cause for preliminary injunction, order restraining the transfer or assets and order sealing file and order for expedited discovery on March 23, 2005 against defendants selling counterfeit toys); *Rado Watch Co. v. ABC*, Co., 92 Civ. 3657 (PKL) (S.D.N.Y.) (granting plaintiffs' *ex parte* temporary restraining order and seizure order on May 19, 1992 against defendants selling counterfeit watches).

1.   **Defendants Have Committed Trademark Infringement In Violation Of The Lanham Act**

To prevail on their trademark infringement claims, Plaintiffs must prove: (1) ownership of valid GUGGENHEIM trademarks; and (2) that Defendants' unauthorized use of similar marks is likely to cause confusion as to the source or approval of Defendants' goods and services.[2] *See Beharry & Co.*, 2006 U.S. Dist. LEXIS 79332, at *2, *6-8 (E.D.N.Y. Oct. 31, 2006) (granting plaintiff's motion to convert temporary restraining order into preliminary injunction where defendants used counterfeit marks). As shown below, Plaintiffs have established both elements.

a.   **Plaintiffs Own Valid GUGGENHEIM Trademarks**

Plaintiff Guggenheim Capital, LLC owns federal registrations for GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM INVESTMENT ADVISORS and GUGGENHEIM REAL ESTATE for financial consultation and investment services. (*See* Ver. Compl. ¶ 22, Ex. 4.) Those registrations are "prima facie" evidence of the validity of the GUGGENHEIM Marks, of the registration of the GUGGENHEIM Marks, of Plaintiff Guggenheim Capital, LLC's ownership of the GUGGENHEIM Marks, and of Plaintiff Guggenheim Capital, LLC's "exclusive right" to use the GUGGENHEIM Marks in commerce for the services listed in the registrations. *See* 15 U.S.C. § 1057(b). Thus, Plaintiffs have satisfied the first required element for trademark infringement and trademark counterfeiting. *See, e.g, Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 326 (S.D.N.Y.

---

[2] To prevail on their counterfeiting claims, Plaintiffs must also prove that Defendants are using an "identical or substantially indistinguishable" mark for the same services that are identified in Plaintiffs' federal registrations. *See Chloe v. Designersimports.com USA, Inc.*, No. 07-cv-1791, 2009 U.S. Dist. LEXIS 42351, at *17 (S.D.N.Y. Apr. 29, 2009) (plaintiffs established prima facie case for trademark counterfeiting and infringement where defendant used plaintiff's mark on handbags, the same goods covered by plaintiffs' trademark registration, explaining that under the Lanham Act, a "counterfeit" is a "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark," and accordingly, "counterfeits, by their very nature, cause confusion."). *See* 15 U.S.C. § 1116(d)(1)(B) (a counterfeit mark is defined as "a spurious designation that is identical with, or substantially indistinguishable from" a registered mark).

2009) (granting preliminary injunction, holding that plaintiff's federal trademark registrations

established validity as a matter of law); *Cartier Int'l B.V. v. Ben-Menachem*, No. 06 Civ. 3917

(RWS), 2007 U.S. Dist. LEXIS 95366 (S.D.N.Y. Dec. 19, 2007) (same).

b.    **Defendants' Use Of Plaintiffs' GUGGENHEIM Marks Causes A Likelihood of Confusion**

Defendants' use of GUGGENHEIM and GUGGENHEIM-formative marks to advertise

financial consultation and investment services is likely to cause confusion. Likelihood of

confusion is assessed using the following factors: (1) strength of plaintiff's mark; (2) similarity

of the parties' marks; (3) competitive proximity of the parties' services; (4) the likelihood that

plaintiff will "bridge the gap," if any, between the parties' services; (5) actual confusion; (6)

defendant's good faith; (7) the quality of defendant's services; and (8) purchaser sophistication.

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  To obtain a

temporary restraining order or a preliminary injunction, Plaintiffs are not required to prevail on

all or even a majority of the factors.  *See, e.g., New York State Elec. & Gas Corp.*, 697 F. Supp.

2d at 436 (issuing preliminary injunction where two of the *Polaroid* factors weighed towards a

likelihood of confusion); *Blue & White Food Prods. Corp. v. Shamir Food Indus.*, 350 F. Supp.

2d 514, 521 (S.D.N.Y. 2004) (issuing preliminary injunction where five of the *Polaroid* factors

favored a likelihood of confusion).

(1)    **Plaintiffs' GUGGENHEIM Marks Are Strong**

Plaintiffs' ownership of several federal registrations for their GUGGENHEIM Marks

demonstrate that Plaintiffs' marks are entitled to a high level of trademark protection.  *See*

*Omega, S.A. v. S & N Jewelry Inc.*, No. 92 Civ. 3656 (PKL), 1992 U.S. Dist. LEXIS 8359, at *11

(S.D.N.Y. June 8, 1992) (granting preliminary injunction, federal registrations showed marks

should be afforded a "high level of trademark protection"); *Rado Watch Co. v. ABC, Co.*, No. 92

Civ. 3657 (PKL), 1992 U.S. Dist. LEXIS 8356, at *10 (S.D.N.Y. June 8, 1992) (same).  Further,

Plaintiffs and their predecessors have been using the GUGGENHEIM Marks for financial

consultation and investment services for over 50 years.  (Ver. Compl. ¶ 21.)  *See Planned*

*Parenthood Fed'n of Am. v. Bucci*, No. 97 Civ. 0629, 1997 U.S. Dist. LEXIS 3338, at *24, *40

(S.D.N.Y. Mar. 19, 1997), *aff'd,* 1998 U.S. App. LEXIS 22179 (2d Cir. N.Y. Feb. 9, 1998)

(granting preliminary injunction, strength of plaintiff's mark shown by registration of mark and

continued use for approximately 50 years).  *Cf. E.g., Bear U.S.A. v. A.J. Sheepskin & Leather*

*Outerwear*, 909 F. Supp. 896, 905 (S.D.N.Y. 1995) (granting preliminary injunction, finding

mark strong when it had been in use for only three years and had received mentions in news

magazines); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305,

315 (S.D.N.Y. 2010) (granting preliminary injunction, finding plaintiff's mark strong and

famous through 10 years of exclusive use and widespread publicity and recognition); *Blue &*

*White Food Prods.*, 350 F. Supp. 2d at 521 (granting preliminary injunction, finding mark strong

because it had been in use for 15 years); *North Am. Graphics, Inc. v. North Am. Graphics of US,*

*Inc.*, No. 97 Civ. 3448, 1997 U.S. Dist. LEXIS 8107, at *12, *18 (S.D.N.Y. June 9, 1997)

(granting preliminary injunction, finding mark strong because it had been in use for 22 years).

 Over the years, Plaintiffs have invested many millions of dollars promoting and

advertising their GUGGENHEIM Marks and have earned significant revenue under the marks,

which weighs in favor of finding that Plaintiffs marks are strong.  (Ver. Compl. ¶ 25.)  *See Bear*

*U.S.A.,* 909 F. Supp. at 905 (granting preliminary injunction, finding plaintiff's mark strong

where plaintiff had earned $1 million in sales during the previous year and $3 million during the

current year and had spent tens of thousands of dollars in advertising); *Ptak Bros. Jewelry, Inc. v.*

*Ptak*, No. 06 Civ. 13732 (DC), 2007 U.S. Dist. LEXIS 39283, at *19 (S.D.N.Y. May 29, 2007)

(granting preliminary injunction, acquired distinctiveness shown when plaintiff's gross profits
for 5 year span ranged from $3 to $6 million). Plaintiffs' GUGGENHEIM Marks also have
achieved substantial, unsolicited media coverage, in national and international publications,
which weighs in favor of finding a strong mark. (Ver. Compl. ¶ 26, Ex. 5) (*Id.*) *See Bear*
*U.S.A.*, 909 F. Supp. at 905 (granting preliminary injunction, noting media attention in preceding
three years from three sources weighing towards strength of mark). Finally, Plaintiffs'
employees frequently comment on television programs such as Bloomberg and CNBC and in
business publications such as the Wall Street Journal and Barrons concerning issues facing the
financial and investment markets, providing regular and widespread exposure to the public of the
GUGGENHEIM Marks. (*See* Ver. Compl. ¶ 27, Ex. 6) *See Lexington Mgmt. Corp. v. Lexington*
*Capital Partners*, 10 F. Supp. 2d 271, 280-281 (S.D.N.Y. 1998) (granting preliminary injunction,
fact that plaintiff's portfolio managers frequently appeared on television news programs to
discuss funds they manage weighed towards mark's strength).

    (2) **Defendants' Marks Are Identical To And Substantially**
       **Indistinguishable From Plaintiffs' GUGGENHEIM**
       **Marks**

   Plaintiffs own numerous federal registrations for GUGGENHEIM-formative marks,
including GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM INVESTMENT
ADVISORS and GUGGENHEIM REAL ESTATE. (Ver. Compl. ¶ 22, Ex. 4.) Defendants use
at least the marks GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM
ADVISORS, GUGGENHEIM FUND and GUGGENHEIM BANK. (*See* Ver. Compl. ¶¶ 30-31,
Exs. 7-9, 11, 13-14, 17-20, 22-23.) Plaintiffs offer information about their financial consultation
and investment services at the website located at *guggenheimadvisors.**com*** and Defendants offer
information about Defendants' purported financial consultation and investment services at the
website located at *guggenheimadvisors.**org***. (Ver. Compl. ¶¶ 21, 29, Exs. 73-74.) Thus, the

parties' marks are identical in many cases and substantially indistinguishable in some instances. *See Beharry & Co.*, No. 06-cv-5707, 2006 U.S. Dist. LEXIS 79332, at *7 (E.D.N.Y. Oct. 31, 2006) (granting plaintiff's motion to convert temporary restraining order into preliminary injunction upon analyzing only similarity of marks factor, finding that "it is apparent that [defendant's] counterfeit product does and will cause consumer confusion").

Confusion is "inevitable," where, as here, a defendant uses the exact trademark as plaintiff. *See Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.*, No. CV-07-1455 (CPS), 2007 U.S. Dist. LEXIS 34108, at *9 (E.D.N.Y. May 9, 2007) (granting preliminary injunction where parties used identical marks). Thus, the similarity of marks factor weighs heavily in favor of a likelihood of confusion. *See Omega*, 1992 U.S. Dist. LEXIS 8359, at *12 (S.D.N.Y. June 8, 1992) (granting preliminary injunction, "substantial identity" of counterfeit marks with plaintiffs' marks weighed "most heavily" in plaintiffs' favor); *Lacoste Alligator, S.A. v. F. Saltstein, Inc.*, No. 81 Civ. 4555 (CBM), 1981 U.S. Dist. LEXIS 16114 at *9 (S.D.N.Y. Nov. 13, 1981) (granting preliminary injunction, where defendant's counterfeit marks were "virtually indistinguishable" from plaintiffs' trademarks, "deception, let alone confusion . . . is a certainty").

### (3)   Defendants Purport To Offer Services Identical to Plaintiffs' Services

The parties' services do not need to be competitive in order for this factor to weigh in Plaintiffs' favor. *See Lexington Mgmt.*, 10 F. Supp. 2d at 286 (granting plaintiff preliminary injunction where parties did not perform identical services or offer identical products). If the parties offer the same type of service, however, the similarity of services factor weighs in favor of a likelihood of confusion. *See Metlife, Inc. v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223, 233 (S.D.N.Y. 2005) (granting preliminary injunction where both parties offered retail banking

services).  In addition, if defendants offer the type of services that consumers would believe

came from plaintiffs, the similarity of services factor weighs in plaintiffs' favor.  *See Lexington*

*Mgmt.*, 10 F. Supp. 2d at 286 (granting preliminary injunction where both parties operated in

same field so likelihood of confusion, especially by association, was great).

Here, Plaintiffs offer financial consultation and investment services, including

opportunities to invest in certain investment vehicles that relate to commodities such as crude oil,

petroleum products and liquefied natural gas, and the mining and distribution of precious metals,

such as gold.  (Ver. Compl. ¶ 24.)  Defendants also offer financial consultation and investment

services, and purported investment opportunities in some of the identical product areas, such as

crude oil and gold, and related investment opportunities, as well.  (*Id.* ¶¶ 32-40.)  Thus, the

parties' services are identical and this factor weighs heavily in favor of a likelihood of

confusion.[3]

### (4)   Defendants' Bad Faith

Plaintiffs are not required to show that Defendants operated in bad faith to secure a

temporary restraining order or preliminary injunction.  *See, e.g., Romag Fasteners, Inc. v. J.C.*

*Penney Corp.*, No. 07-cv-1667, 2007 U.S. Dist. LEXIS 87261, *16 (D. Conn. Nov. 27, 2007)

(granting temporary restraining order without evidence of defendant's bad faith, finding "intent

to infringe is clear from the [counterfeit] product itself"); *New York State Elec. & Gas Corp.*, 697

F. Supp. 2d at 428 (granting preliminary injunction without finding defendant acted in bad faith).

Nevertheless, evidence that defendant intended to copy plaintiff's mark creates a presumption of

---

[3] The parties offer the same services and thus the "bridging the gap" likelihood of confusion factor also necessarily weighs in favor of Plaintiffs.  *See, e.g., Blue & White Food Prods. Corp. v. Shamir Food Indus.*, 350 F. Supp. 2d 514, 521 (S.D.N.Y. 2004) (granting preliminary injunction, finding bridge the gap factor to favor plaintiff where defendant used mark on products substantially similar to those plaintiff already traded in); *Rado Watch Co. v. ABC, Co.*, No. 92 Civ. 3657 (PKL), 1992 U.S. Dist. LEXIS 8356, at *12 (S.D.N.Y. June 8, 1992) (same); *Omega, S.A. v. S & N Jewelry Inc.*, No. 92 Civ. 3656, 1992 U.S. Dist. LEXIS 8359, at *12-13 (S.D.N.Y. June 8, 1992) (same).

a likelihood of confusion. *Paddington Corp. v. Attiki Importers & Distrib., Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 357 (S.D.N.Y. 1998). Where, as here, the parties' marks are identical, Defendants "[have] the burden of persuading the court that there is a credible innocent explanation." (*Id.*)

Defendants are using a mark identical to Plaintiffs' famous and federally registered mark GUGGENHEIM to offer the same types of services sold by Plaintiffs – financial consultation and investment services. (Ver. Compl. ¶¶ 30-31, Exs. 7-9, 11, 13-14, 17-20, 22-23.) Defendants' use of an identical mark raises the presumption of Defendants' bad faith and of likelihood of confusion. *See Paddington*, 996 F.2d at 586-87. Moreover, Defendants are using four additional counterfeit marks incorporating Plaintiffs' famous GUGGENHEIM mark – GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM FUND and GUGGENHEIM BANK. (Ver. Compl. ¶¶ 30-31, Exs. 7-9, 11, 13-14, 17-20, 22-23.) Defendants' infringement of a broad array of Plaintiffs' marks further demonstrates Defendants' bad faith. *See Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 166 F.3d 120, 4 U.S.P.Q.2d 1266-67 (2d Cir. 1998) ("willful piracy" evidenced in part by defendant's "breadth of copying"). There is no "innocent explanation" for the virtual identity existing between the parties' marks. *See Paddington*, 996 F.2d at 587 (district court's finding of the absence of bad faith held to be clearly erroneous where similarities between parties products were "so striking" that "it is hard to imagine how [defendants] could have come up with the dress without intentional copying); *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 457 (S.D.N.Y. 2000) (granting preliminary injunction on plaintiff's trade dress infringement and unfair competition claims – "strains credulity" that defendant's reproduction of plaintiffs' trade dress was not meant to capitalize on plaintiff's reputation, goodwill and resulting consumer confusion); *GTFM, Inc. v.*

*Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297-298 (S.D.N.Y. 2002) (judgment for plaintiff and entering permanent injunctive relief where similarities between marks could "only have occurred through deliberate copying").

Furthermore, Defendants' bad faith is shown by the fact that Defendants use counterfeit marks that are identical to Plaintiffs' marks in stylization and color. (*See* Ver. Compl. ¶¶ 32, 45, 55, 69, Exs. 7, 11, 14-15, 22.) *See Bausch & Lomb, Inc. v. Nevitt Sales Corp.*, 810 F. Supp. 466, 475 (W.D.N.Y. 1993) (granting preliminary injunction, defendant's adoption of a mark with script style similar to plaintiff's without innocent explanation created "strong presumption that defendant acted in bad faith"); *National Football League Properties, Inc. v. New Jersey Giants, Inc.*, 637 F. Supp. 507, 518 (D.N.J. 1986) (granting permanent injunction, defendant's adoption of marks copying color, styling and typeface of plaintiff's marks was clear evidence of bad faith and manifested not only intent to confuse but raised presumption of likelihood of confusion).

### (5)   Actual Confusion Is Occurring

Actual confusion evidence is not required to establish a likelihood of confusion necessary for a temporary restraining order or a preliminary injunction. *See Beharry & Co.*, 2006 U.S. Dist. LEXIS 79332, at *5-7 (E.D.N.Y. Oct. 31, 2006) (granting plaintiff's application for TRO and motion for preliminary injunction in counterfeiting case without evidence of actual confusion and without evidence of bad faith). However, the law is well-settled that, when it exists, actual confusion is the best evidence of a likelihood of confusion. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. N.Y. 1987) ("While . . . it is not necessary to show actual confusion . . . there can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.") Indeed, even a few instances of actual confusion weigh heavily in favor of finding a likelihood of confusion. *See New York State Elec. & Gas Corp*, 697 F. Supp. 2d at 436 (W.D.N.Y. 2010) (issuing preliminary injunction, finding that two

- 15 -

instances of actual consumer confusion entitled plaintiff to preliminary injunction, particularly

since a showing of actual confusion is not necessary in the first place); *Telebrands Corp. v. E.*

*Mishan & Sons*, Civil Action No. 97 Civ. 1414 (RPP), 1997 U.S. Dist. LEXIS 6229, 54-55

(S.D.N.Y. May 5, 1997).

Thus, although Plaintiffs need not prove actual confusion to obtain a temporary

restraining order or preliminary injunction, Plaintiffs have substantial evidence that Defendants'

use of counterfeits of Plaintiffs' GUGGENHEIM Marks is causing actual consumer confusion.

(Ver. Compl. ¶¶ 80-81; *See* Declarations of Jeffrey Bartlett and Lawrence Carroll.)  Plaintiffs

have received numerous communications from customers and  professional advisors reflecting

that they were confused as to whether Defendants are Plaintiffs. (*Id.*) This factor weighs even

more heavily towards a likelihood of confusion because some of those that were deceived by

Defendants' use of counterfeits of Plaintiffs' GUGGENHEIM marks were industry

professionals. *See GTFM,* 215 F. Supp. 2d at 297 (granting permanent injunction although

evidence showed only one instance of actual confusion, explaining that professional buyer's

actual confusion "speaks volumes about the likely confusion of less informed consumers.").

Thus, the actual confusion factor weighs heavily in favor of likelihood of confusion.

(6)     **Purchaser Sophistication**

In cases involving identical and virtually identical marks, "an average consumer cannot

be expected to distinguish" between the parties' goods and services. *Johnson & Johnson*

*Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374, 391 (E.D.N.Y. 2008).  Because Defendants are

using counterfeits of Plaintiffs' GUGGENHEIM Marks (*see supra*, p. 11-13) for identical

services – financial consultation and investment services – the purchaser sophistication factor

necessarily weighs towards a likelihood of confusion. *See Johnson & Johnson*, 540 F. Supp. 2d

at 391 (granting permanent injunction against in trademark counterfeiting case – even

sophisticated consumers could not distinguish between nearly identical marks).

(7)    <b>Overall Balance of Likelihood of Confusion Factors</b>

An overwhelming likelihood of confusion exists here.  Defendants are using marks that

are identical and substantially indistinguishable from Plaintiffs' federally registered and well-

known GUGGENHEIM Marks.  Defendants "offer" the same types of services that Plaintiffs

offer, e.g., financial consultation and investment services involving large-scale, high value,

investment opportunities.  Defendants' conduct has caused actual confusion in the marketplace,

including confusion among professionals in the financial and investment industries.  Thus,

Plaintiffs have an overwhelming likelihood of success on their trademark infringement claim.

<b>2.    Defendants Are Engaged In Trademark Counterfeiting</b>

To prevail on trademark counterfeiting claim, in addition to showing that Plaintiffs own

protectable marks and the likelihood of confusion, Plaintiffs must show that Defendants are

using "identical" or "substantially indistinguishable" marks for the same services identified in

Plaintiffs' trademark registrations.  *See Chloe v. Designersimports.com USA, Inc.*, No. 07-cv-

1791 (CS) (GAY), 2009 U.S. Dist. LEXIS 42351, at *17-19 (S.D.N.Y. Apr. 29, 2009) (plaintiffs

established prima facie case for trademark counterfeiting and infringement where defendant used

plaintiff's mark on handbags, the same goods covered by plaintiff's trademark registration);15

U.S.C. § 1116(d)(1)(B) (a counterfeit mark is defined as "a spurious designation that is identical

with, or substantially indistinguishable from" a registered mark).

Here, Plaintiffs own federal registration No. 3,121,127 for GUGGENHEIM, for, among

other things:

> "**Providing information, advice and consulting** in the fields of **finance**,
> insurance, **business, banking, asset management and investment**;
> **financial investment** in the fields of securities, funds, real estate, and

- 17 -

venture capital businesses; **investment management** and asset management services; **investment of funds for others**" and "**providing online magazines and newsletters** in the fields of **finance, insurance, business, banking,** asset management **and investment.**" (Ver. Compl. ¶ 22, Ex. 4 to Ver. Compl.) (emphasis added)

Plaintiffs also own federal registration No. 3,110,878 for GUGGENHEIM PARTNERS, for, among other things:

> "**Financial consultation services,** namely, providing information, advice and consulting in the fields of finance, banking, asset management and investment; **financial investment** in the fields of securities, funds, real estate, and venture capital businesses; **investment management** and asset management services; **investment of funds for others**" and "**providing online financial information** through electronic databases in the fields of **finance, banking,** asset management **and investment.**" (*Id.*) (emphasis added)

Finally, Plaintiffs also own federal registration No. 3,712,544 for GUGGENHEIM INVESTMENT ADVISORS, for, among other things:

> "**Providing information, advice and consulting** in the fields of **finance,** insurance, **banking, asset management and investment; financial investment** in the fields of securities, funds, real estate, and venture capital businesses; **investment management** and asset management services; **investment of funds for others**" and "**providing online electronic databases** in the fields of **finance, banking,** asset management **and investment**." (*Id.*)

Defendants are using the marks GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM FUND and GUGGENHEIM BANK for, among other things, financial consultation and investment services. (Ver. Compl. ¶¶ 29-79, Exs. 7-9, 11, 13-14, 17-20, 22-23.) Thus, there is no dispute that Defendants are providing many of the same services identified in Plaintiffs' federal registrations. (*Id.*)

Moreover, there is no dispute that Defendants are using GUGGENHEIM marks that are identical and "substantially indistinguishable" from the GUGGENHEIM marks identified in Plaintiffs' federal registrations. Two of the marks being used by Defendants, i.e.,

- 18 -

GUGGENHEIM and GUGGENHEIM PARTNERS, are identical to Plaintiffs' registered marks.
The other three marks that are being used by Defendants are "substantially indistinguishable"
from Plaintiffs' registered mark, e.g., GUGGENHEIM ADVISORS, GUGGENHEIM BANK
and GUGGENHEIM FUND, are identical to Plaintiff's federally registered mark
GUGGENHEIM with the addition of the generic words "advisors," "bank," and "fund."

Because Defendants are using marks identical to and substantially indistinguishable from
Plaintiffs' registered marks GUGGENHEIM, GUGGENHEIM PARTNERS, and
GUGGENHEIM INVESTMENT ADVISORS, for services that are identical to those listed by
Plaintiffs' registrations, Defendants are committing trademark counterfeiting in violation of the
federal Lanham Act, 15 U.S.C. § 1114(1). *Chloe v. Designerimports.com USA, Inc.*, No. 07-cv-
1791, 2009 U.S. Dist. LEXIS 42351, at 17-18 (S.D.N.Y. Apr. 29, 2009) (granting preliminary
injunction without a factor-by-factor analysis of likelihood of confusion where defendant's
products were counterfeits bearing plaintiff's trademark); *Cartier Int'l,* No. 06 Civ. 3917, 2007
U.S. Dist. LEXIS 95366, at *29 (S.D.N.Y. Jan. 3, 2008); *see Topps CP. v. Gerrit J. Verburg Co.,*
41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are identical, and the goods are
also identical and directly competitive, the decision can be made directly without a more formal
and complete discussion of all of the *Polaroid* factors.").

### 3.   Defendants Are Engaged In Cybersquatting

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d),
prohibits the bad faith registration and use of the trademarks of others as or in Internet domain
names. To prevail, Plaintiffs must prove: (1) Plaintiffs' GUGGENHEIM Marks were distinctive
at the time Defendants' domain name *guggenheimadvisors.org* was registered; (2)
*guggenheimadvisors.org* is identical or confusingly similar to Plaintiffs' GUGGENHEIM Marks;
and (3) Defendants have a faith intent to profit from *guggenheimadvisors.org. See Vogster*

- 19 -

*Entm't, L.L.C. v. Mostovoy*, No. 09-cv-1036, 2009 U.S. Dist. LEXIS 20936 at *10 (E.D.N.Y.

Mar. 16, 2009) (granting temporary restraining order based upon plaintiff's likely success on its

ACPA claim); *See* 15 U.S.C. § 1125(d)(1).  Courts regularly award temporary restraining orders

and preliminary injunctions on the basis of a *prima facie* ACPA claim.  *See BroadBridge Media,

L.L.C. v. Hypercd.com*, 106 F. Supp. 2d 505, 510 (S.D.N.Y. 2000) (granting plaintiff's order to

show cause for a preliminary injunction continuing the transfer of a domain name containing

plaintiff's trademark to plaintiff, earlier ordered per a temporary restraining order, based on

ACPA claim).  As shown below, Plaintiffs have established each element.

### a.    Plaintiffs' GUGGENHEIM Marks Are Distinctive

As shown *supra*, Plaintiff owns federal registrations for the GUGGENHEIM Marks,

which have been registered for many years, and those marks are very strong marks for financial

consultation and investment services.  (*See supra* pp.8-11.)  Those marks were distinctive and

well-known long prior to May 2010 when Defendant Toumei registered the domain name

*guggenheimadvisors.org*.  (*See supra* pp.10-11.)

### b.    Defendants' Domain Name Is Identical or Confusingly Similar To Plaintiffs' GUGGENHEIM Mark

Defendants' domain name *guggenheimadvisors.org* is confusingly similar to Plaintiffs'

registered GUGGENHEIM Marks, because it incorporates the mark GUGGENHEIM in its

entirety and adds the generic word "advisors," which is plainly a reference to the same type of

services offered by Plaintiffs - financial consultation and investment services.  (*See supra* pp. 12-

13, 17-18.)  Moreover, Defendants' domain name is identical to Plaintiffs' common law mark

GUGGENHEIM ADVISORS.  *See Vogster*, 2009 U.S. Dist. LEXIS 20936, at *10 (granting

temporary restraining order finding plaintiff was likely to prevail on ACPA claim where domain

names were both identical to plaintiff's mark and incorporated plaintiff's mark in its entirety with the addition of generic words).

c.    **Bad Faith Intent To Profit**

The ACPA provides nine, non-exclusive factors to consider in evaluating a defendant's bad faith intent to profit from Plaintiffs' mark.[4]  Those factors affirm Defendants' bad faith. Defendants have no rights in the domain name *guggenheimadvisors.org* because Plaintiffs never authorized Defendants to use Plaintiffs' GUGGENHEIM Marks.  (Ver. Compl. ¶ 82.) Defendants do not make fair use or noncommercial use of the mark at their site; rather, Defendants make commercial, for-profit use of the mark at their site, purporting to offer financial consultation and investment services concerning investments in commodities, advertising Defendant Toumei as the "Investment Relations Manager" for their commercial venture.  (*See* Ver. Compl. ¶¶ 25-26.)  Finally, Defendants are using Plaintiffs' distinctive and famous marks GUGGENHEIM and GUGGENHEIM ADVISORS with the intent of diverting consumers from Plaintiffs' legitimate sites to Defendants' site and harm Plaintiffs' goodwill for their own commercial gain, by creating confusion as to source, affiliation and sponsorship.  There is no other explanation why Defendants would register a domain name consisting of a counterfeit of Plaintiffs' GUGGENHEIM Mark and one that is identical to Plaintiffs' common law trademark

---

[4] Bad faith factors under the ACPA include: (1) the rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. 15 U.S.C. § 1125(d)(1)(B)(i)(1)-(IX).

GUGGENHEIM ADVISORS and Plaintiffs' existing domain name in the top-level-domain ".com," *guggenheimadvisors.com*.

Because Plaintiffs have clearly proven likely success on all three elements of their cybersquatting claim (i.e., a distinctiveness, confusion and bad faith), the Court may order the transfer of the domain name to Plaintiffs. 15 U.S.C. § 1125 (d)(1)(c). Plaintiffs respectfully request that the Court preliminarily enjoin Defendants from using the domain name *guggenheimadvisors.org*, and any email addresses ending in *guggenheimadvisors.org*, and order transfer of the domain name to Plaintiffs during the pendency of this case. *See Webadviso v. Bank of Am. Corp.*, 09 Civ. 5769, 2009 U.S. Dist. LEXIS 121326, 12-13 (S.D.N.Y. Dec. 31, 2009) (granting preliminary injunction restraining opposing party from using the domain names and any iterations thereof during the pendency of the lawsuit and ordering the transfer of ownership of the domain names to trademark owner for the pendency of the lawsuit).

### C. Defendants' Use of Counterfeit GUGGENHEIM Marks Is Causing Plaintiffs Irreparable Injury And The Entry Of A Temporary Restraining Order And Preliminary Injunction Would Not Injure Defendants

#### 1. Plaintiffs Are Suffering Irreparable Injury

As detailed above, Defendants are engaged in counterfeiting that threatens the financial well-being of the public. Plaintiffs will continue to suffer irreparable injury to their reputation and goodwill as long as Defendants are permitted to continue their trademark counterfeiting and trademark infringement. (Ver. Compl. ¶ 87.) As the Second Circuit has noted, "[O]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (affirming district court's grant of preliminary injunction). Defendants have taken this right away from Plaintiffs. The Second Circuit has

recognized that counterfeiting causes immediate, irreparable harm to a trademark owner, who cannot control the quality of its goods and services because "a higher incidence of substantial sales of counterfeit goods, which are invariably nonconforming and inferior" would "harm [Plaintiffs'] reputation and diminish the value of its trademark." *Id.* at 244. Indeed, the law presumes that Defendants' trademark counterfeiting and infringement causes irreparable injury to Plaintiffs. *See New York State Elec. & Gas Corp.,* 697 F. Supp. 2d at 428 (granting preliminary injunction, explaining that, "a plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury. . . thus, if the plaintiff can establish a likelihood of consumer confusion, it will typically be entitled to injunctive relief, absent some countervailing circumstances."). Further, as discussed *supra,* Defendants are violating the ACPA by registering and using the domain name *guggenheimadvisors.org.* Irreparable harm is presumed in ACPA cases. *See Vogster,* 2009 U.S. Dist. LEXIS 20936 at *19 ("In connection with ACPA cybersquatting claims, irreparable harm may be presumed where there is a likelihood of success on the merits."); *accord Webadviso v. Bank of Am. Corp.,* 2009 U.S. Dist. LEXIS 121326, *19.

Plaintiffs have experienced consumer confusion as to whether Plaintiffs are Defendants or are connected to Defendants. Consumers attribute Defendants' business activities under the GUGGENHEIM Marks to Plaintiffs and will continue to do so, irreparably harming Plaintiffs, if a temporary restraining order and preliminary injunction is not entered. (Ver. Compl. ¶¶ 85, 87.) *See New York State Elec. & Gas Corp.,* 697 F. Supp. 2d at 428 (granting preliminary injunction, loss of goodwill, thus irreparable harm, was demonstrated by customer complaint where customer mistook defendant for plaintiff). Consumer confusion may cause Plaintiffs to lose customers and business, which is difficult to quantify. *Id.* (plaintiff had established irreparable

- 23 -

harm because quantifying loss of customers and business would be difficult). Further,
Defendants' infringing domain name *guggenheimadvisors.org* and use of email addresses ending
with *guggenheimadvisors.org*, cause customers looking for information on the Internet
concerning Plaintiffs to be misdirected to Defendants' website and Plaintiffs have lost control
over their goodwill and reputation. *See Webadviso*, 2009 U.S. Dist. LEXIS 121326, at 19-20
(granting preliminary injunction, loss of control over domain names incorporating plaintiffs'
trademarks constituted irreparable harm).

### 2.    Defendants Will Not Suffer Irreparable Injury If An Injunction Is Entered

Defendants are engaged in criminal counterfeiting. Accordingly, the only hardship that
Defendants will suffer in this case through an injunction is the imposition of an obligation to
comply with the law. *See Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F. Supp. 2d 72, 85
(S.D.N.Y. 2009) (granting permanent injunction, balance of hardships favored plaintiffs because
only hardship that would befall defendants was to obey the law while plaintiffs faced continued
loss of goodwill and impairment to exploit trademarks). Further, any loss of business or harm to
Defendants for being enjoined from such illegal conduct is not cognizable. *See Corning Glass
Works v. Jeannette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970) (granting plaintiff
preliminary injunction against trademark infringer; although defendant may suffer loss of
business if enjoined from selling infringing products, "this is a loss [Defendants] may be
justifiably be called upon to bear."), *aff'd* 432 F.2d 784 (2d Cir. 1970); *Marshak v. Thomas*, No.
CV-98-2550, 1998 U.S. Dist. LEXIS 23644, at *40 (granting preliminary injunction where
"defendant has not shown any hardship that could not be compensated by money damages").
Thus, the balance of hardships lies decidedly in Plaintiffs' favor.

**D.     The Public Deserves A Temporary Restraining Order And Preliminary Injunction**

Issuing a preliminary injunction in this case would protect not only Plaintiffs, but also unsuspecting potential investors and the public at large.  The public interest is served in the prevention of consumer confusion.  *See Microsoft Corp. v. Atek 3000 Computer, Inc.*, No. 06-cv-6403, 2008 U.S. Dist. LEXIS 56689, at *18 (E.D.N.Y. July 23, 2008) (granting permanent injunction).  Indeed, "trademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave. Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000).  Courts routinely find that the public interest weighs in favor of enjoining trademark counterfeiting and infringement activities to protect the public from deception as to goods and services.  *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1067 (S.D.N.Y. 1970) (granting preliminary injunction against defendant's sale of counterfeit goods, explaining that "it must be observed that the public is entitled to protection in a matter of this kind.  It would be irresponsible for a court to permit the defendants, whether in good faith or otherwise, to palm off spurious products on a credulous public.  The community is entitled to receive for its money the product which it believes it is buying.").  Moreover, the public's interest that a temporary restraining order and a preliminary injunction order enter here is even greater here than in "garden variety" counterfeiting cases involving consumer products.  Here, Defendants are attempting to engage in **multi-million and multi-billion dollar transactions** under counterfeits of Plaintiffs' GUGGENHEIM Marks.  (*See supra* pp. 11-13, 17-19.)  The amount of money that is at stake in Defendants' proposed transactions is certainly enough to jeopardize the financial health of the consumer and thus is further support for the entry of a temporary restraining order and a preliminary injunction.

## II.   DEFENDANTS' CONDUCT WARRANTS AN *EX PARTE* SEIZURE ORDER

### A.   The Lanham Act Authorizes *Ex Parte* Seizure Orders

Once a plaintiff demonstrates a violation of the Lanham Act, a court may grant an *ex parte* seizure order providing for the seizure of counterfeit goods, counterfeit marks and the means of making such marks, and the records documenting the manufacture, sale or receipt of things involved in counterfeiting. *See* 15 U.S.C. §1116(d). Seizure orders are intended to be available "to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court," in circumstances where, as here, a temporary restraining order is unlikely to result in preservation of the evidence and the removal of counterfeit merchandise from commerce. *See Vuitton v. White*, 945 F.2d 569, 575 (3d Cir. 1991). Courts routinely grant *ex parte* seizure orders in counterfeiting cases both to halt the irreparable harm occurring to plaintiff and to permit plaintiff to determine the full scope of defendants' unlawful acts. *See, e.g., Gucci Am. v. Accents*, 955 F. Supp. 279, 282 (S.D.N.Y. 1997) (denying defendants' motions challenging seizures and granting plaintiff's motions for preliminary injunctions, finding that good cause existed that defendants would destroy or otherwise dispose of counterfeit products and materials for making them if notified of plaintiff's investigation).[5]

Plaintiffs may obtain an *ex parte* seizure order here by showing that: (1) Plaintiffs will provide adequate security; (2) Plaintiffs have not publicized the requested seizure; (3) Plaintiffs are likely to succeed in showing that Defendants used a counterfeit mark; (4) an immediate and

---

[5] In the following unreported decisions, New York federal courts also granted *ex parte* seizure orders in counterfeiting cases: *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Combo Trading Inc.*, 07 Civ. 3880 (SMG) (E.D.N.Y.) (granting seizure order against defendants selling counterfeit food products); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Excelsior Trading Corp.*, 07 Civ. 3224 (SMG) (E.D.N.Y.) (same); *Chloe v. Designersimports.com USA, Inc.*, 07 Civ. 1791 (CS) (GAY) (S.D.N.Y.) (granting seizure order against defendants selling counterfeit purses); *Cartier Int'l B.V. v. Ben-Menachem*, 06 Civ. 3917 (RWS) (S.D.N.Y.) (granting seizure order against defendants selling counterfeit watches); *Marvel Enters. v. Toy Season, Inc.*, 05 Civ. 3149 (JES) (S.D.N.Y.) (granting seizure order against defendants selling counterfeit toys); *Rado Watch Co. v. ABC*, Co., 92 Civ. 3657 (PKL) (S.D.N.Y.) (granting seizure order against defendants selling counterfeit watches).

irreparable injury will occur if such seizure is not ordered; (5) the materials to be seized will be located at the place identified in the application; (6) the harm to Plaintiffs of denying the application outweighs the harm to the legitimate interests of the Defendants; (6) if Plaintiffs were to proceed on notice to Defendants, Defendants or persons acting in concert with them would destroy, move, hide or otherwise make such matter inaccessible to the Court; and (7) an order other than an *ex parte* seizure order is not adequate to achieve purposes of Section 32 of the Lanham Act, 15 U.S.C. § 1114. *See* 15 U.S.C. § 1116(d)(4)(B).[6]

**B.     Plaintiffs Are Entitled To An *Ex Parte* Seizure Order**

**1.     Adequate Security**

Pursuant to 15 U.S.C. § 1116(d)(4)(A), Plaintiffs are willing and able to provide an amount of security deemed reasonable by the Court towards their requested *ex parte* relief. As detailed *infra* (pp. 38-39), Plaintiffs submit that the Court should dispense with the bond requirement or set a nominal bond in this case.

**2.     Plaintiffs Have Not Publicized The Requested Seizure**

Plaintiffs have not publicized the requested seizure, or any of the events surrounding the investigation in this matter, as it would defeat the purpose of an *ex parte* seizure order. (*See* Declaration of John J. Dabney, filed concurrently herewith ("Dabney Decl.") ¶ 10.)

**3.     Defendants Are Using Counterfeit Marks**

As detailed *supra* (pp. 9, 12) and as established through Plaintiffs' Verified Complaint and its exhibits and declarations, Plaintiffs' GUGGENHEIM Marks have been registered with the United States Patent and Trademark Office for a variety of financial consultation and

---

[6] 15 U.S.C. § 1116(d) also requires the applicant for a seizure order to give notice of the *ex parte* application to the United States attorney for the judicial district in which such order is sought. Plaintiffs have provided the required notice. (*See* Dabney Decl. ¶ 11.)

investment services. Defendants are using "identical" or "substantially indistinguishable" marks

for those same services. (*Id.*) Plaintiffs have not licensed, permitted or otherwise authorized

Defendants to use their GUGGENHEIM Marks. (*See* Ver. Compl. ¶ 82.) Therefore, Plaintiffs

have demonstrated that Defendants are using counterfeits of Plaintiffs' GUGGENHEIM Marks.

### 4.   The Materials To Be Seized Will Be Located At The Addresses Specified In Plaintiffs' [Proposed] Seizure Order

Plaintiffs have shown that the materials sought to be seized will be located at the places

specified in the [Proposed] Order. (*See* Exs. 2-3, 11, 24 to Ver. Compl.) Defendants have been

distributing materials to potential investors containing counterfeits of Plaintiffs' GUGGENHEIM

Marks through the Internet via email and other electronic communications. (See Ver. Compl. ¶¶

29-79.) Plaintiffs' Verified Complaint and its exhibits and supporting declarations identify

Defendants' offices and residences, where Defendants are likely engaging in their unlawful

counterfeiting and infringement. For example:

- Defendants have represented that the address for the "Guggenheim Fund" is "525 Ocean Parkway, Suite 1 G-H, Brooklyn, NY 11218." (Ex. 11 to Ver. Compl.) Upon investigation, it was discovered that the address 525 Ocean Parkway, Suite 1 G-H, Brooklyn, NY 11218 is listed as the residence for Defendant Birnbaum. (Ex. 3 to Ver. Compl.) Therefore, counterfeit marks and the means of making such marks, and the records documenting the manufacture, sale or receipt of things involved in counterfeiting (*see* 15 U.S.C. § 1116(d)) should be found at **525 Ocean Parkway, Suite 1 G-H, Brooklyn, NY 11218**. (*See* [Proposed] Order, p. 10.)

- Defendants have represented that Defendant Zuravel maintains the email address vz@vzltd.com (*see* Ex. 12 to Ver. Compl.) It was discovered that the domain name *vzltd.com* is owned by Defendant Zuravel, who listed an address of 63-10 Dieterle Crescent, New York, NY 11374 (*see* Ver. Compl. Ex. 2). Therefore, counterfeit marks and the means of making such marks, and the records documenting the manufacture, sale or receipt of things involved in counterfeiting (*see* 15 U.S.C. § 1116(d)) should be found at Defendant Zuravel's residence at **63-10 Dieterle Crescent, New York, NY 11374**. (*See* [Proposed] Order, p. 10.)

- Plaintiffs' investigators have determined that Defendant Toumei resides at 6136 Paseo Delicias, Rancho Santa Fe, California 92067. (Ver. Compl. ¶ 7.) Therefore, counterfeit marks and the means of making such marks, and the records documenting the manufacture, sale or receipt of things involved in counterfeiting (*see* 15 U.S.C. §

1116(d)) should be found at Defendant Toumei's residence at **6136 Paseo Delicias, Rancho Santa Fe, California 92067**. (*Id., See* [Proposed] Order, p. 10.)

As detailed in Plaintiffs' Verified Complaint, Defendants consist of multiple individuals and unknown entities located throughout the United States are engaged in criminal counterfeiting in furtherance of a fraudulent scheme directed to scam consumers nationwide. The Lanham Act's seizure provisions permit the Court to grant seizure orders to be executed in multiple jurisdictions in order to target exactly this type of counterfeiting activity. *See* 15 U.S.C. § 1115(a) (stating that the court "Shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable. . . Any such injunction. . . may be served upon the parties against whom such injunction is granted anywhere in the United States where they may be found.") Pursuant to this authority, the Court has issued multi-district *ex parte* restraining and seizure orders in many cases. *See, e.g., Marvel Enterprises v. Toy Season, Inc.*, 05 Civ. 3149 (JES) (S.D.N.Y.) (granting plaintiffs' *ex parte* application for temporary restraining and seizure order covering multiple jurisdictions); *NBA Properties, Inc. v. United New Fashion, Inc.*, 92 Civ. 7106 (LJF); *New York Road Runners Club v. Luperallo*, 92 Civ. 7850 (MBM); *Jack Schwartz Shoes Inc. v. Welland Int'l, Inc.*, 02 Civ. 4799 (BSJ).

Thus, Plaintiffs request that the Court enter the requested seizure order to be conducted at Defendants' addresses, detailed above (in the Southern District of New York, Eastern District of New York and Southern District of California), so that the seizures are conducted simultaneously and Defendants do not have the opportunity to move counterfeit materials and destroy significant evidence.

### 5.    The Harm to Plaintiffs and The Public of Denying The Seizure Far Outweighs Any Harm to The Legitimate Interests of Defendants

Further, the harm Plaintiffs will suffer if the seizure is not granted, i.e., further damage to their reputation and goodwill, and the harm that the public will suffer, i.e., possible loss of

disappear, particularly because Plaintiffs have not determined the true identities of Defendants or

even the complete list of individuals and entities to be named as Defendants.  Moreover, it is

even more likely that counterfeit materials and records would be moved or destroyed in light of

the fact that Plaintiffs' investigation has revealed that Defendants are using multiple aliases in

furtherance of their fraudulent scheme using counterfeits of Plaintiffs' GUGGENHEIM Marks

(Ver. Compl. ¶¶ 32-72.), e.g., "Vladimir Guggenheim," "Vladimir Z. Guggenheim," "Vladimir

Z. Guggenheim Bank," "David Guggenheim," and "David B. Guggenheim."  Indeed, the heart of

Defendant's fraudulent business model is to defraud consumers by pretending to be Plaintiffs.

(*See* Ver. Compl. ¶¶ 38-50. 55-63, 67-72.)  Thus, the *ex parte* relief provided for in the Lanham

Act is appropriate and particularly necessary in the instant case.

### 7.  *Ex Parte* Relief is Necessary To Adequately Protect Plaintiffs' Trademark Rights

Lastly, no order, other than an *ex parte* order, would be adequate to stop Defendants'

counterfeiting of Plaintiffs' GUGGENHEIM Marks.  Defendants are offering financial

consultation and investment services under counterfeits of Plaintiffs' famous GUGGENHEIM

Marks. (*See supra,* pp. 11-13, 17-19.)  The Third Circuit has recognized that "[c]onsistent with

their calling, professional counterfeiters and dealers in counterfeit goods are generally not

upstanding citizens." *See Vuitton,* 945 F. 2d at 571.  As counterfeiters, there is no reason to

believe that Defendants would comply with a court order such as a temporary restraining order,

let alone that Defendants would preserve evidence of their unlawful activities if given notice of

Plaintiffs' requested seizure.  Once notice was given, Defendants would have substantial

motivation and sufficient time to destroy or hide evidence of the counterfeit marks. *See Gucci*

*Am.,* 955 F. Supp. at 282 (denying defendants' motions challenging seizures and granting

plaintiff's motions for preliminary injunctions, finding that good cause existed that defendants

millions or billions of dollars based on fraudulent business transactions, clearly outweighs any potential harm to Defendants. (*See supra*, pp. 22-23.) As shown *supra*, it is well-established that damage caused by trademark counterfeiting and infringement is irreparable due to the nature of the harm, and, in fact, the law presumes that Defendants' trademark counterfeiting and infringement causes irreparable injury to Plaintiffs. (*Id.*)  Consumers also suffer severe injury when defrauded by counterfeit goods and materials.  Thus, the harm to Plaintiffs caused by Defendants' continued distribution of counterfeit materials, absent a seizure, would be significant.  Conversely, any hardship befalling Defendants if a seizure is granted, namely, loss of business from being enjoined from illegal counterfeiting, is not cognizable here. (*See supra*, p. 24.)  Defendants have no legitimate interest in retaining counterfeit materials and records relating to their counterfeiting.  Moreover, Defendants would likely hide or destroy such materials if provided prior notice.

### 6.    Defendants Would Likely Destroy Evidence If Plaintiffs Were To Proceed On Notice

It has been long recognized that in counterfeiting cases, providing notice to defendants of a seizure merely enables them to transfer their counterfeit materials to other persons whose identities cannot be traced.  As the Second Circuit has recognized, no notice should be given in such circumstances: "If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action." *In re Vuitton et Fils, S.A.*, 606 F.2d at 1 (2d Cir. 1979) recognized." 606 F.2d at 5.  Indeed, the Lanham Act's seizure provision is consistent with Fed. R. Civ. P. 66, which expressly permits that a temporary restraining order may issue without notice to Defendants.

If Plaintiffs were to give notice of the intended seizure here, it is highly probable that Defendants' purported investment materials and records relating to their counterfeiting would

would destroy or otherwise dispose of counterfeit products and materials for making them if notified of plaintiff's investigation); *Tommy Hilfiger Licensing v. Tee's Ave.*, 924 F. Supp. 17, 20 (S.D.N.Y. 1996) (confirming sufficient basis to grant an *ex parte* seizure order in trademark counterfeiting case, any other type of order would have allowed evidence of counterfeit items to be destroyed). The need for a seizure order here is particularly compelling because of the nature of the counterfeiting activity – the counterfeiting activity here involves multi-million and multi-billion dollar transactions. Given the stakes involved, Defendants will have a substantial incentive to improperly dispose of the relevant evidence in order to conceal the fraudulent counterfeiting activity and the extent of the fraudulent counterfeiting activity.

### 8.    Notice to the U.S. Attorney Has Been Provided

Pursuant to 15 U.S.C. § 1116(d)(2), notice reasonable under the circumstances has been given to the United States Attorney for the Southern District of New York. Specifically, on November 22, 2010, Plaintiffs' counsel called the United States Attorney for the Southern District of New York to advise him that a lawsuit would be filed in this District on or about November 22, 2010, and that Plaintiffs would be making an application for an *ex parte* seizure order concurrently therewith. (*See* Dabney Decl. ¶ 11.)

Therefore, having established all the requirements pursuant to 15 U.S.C. § 1116(d), Plaintiffs request that this Court issue a seizure order in the [Proposed] Order submitted herewith.

### III.    PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS

If Plaintiffs prevail on their trademark claims, which Plaintiffs have shown is highly likely, the Lanham Act provides that Plaintiffs may "recover [among other things] [Defendants'] profits," 15 U.S.C. § 1117(a), treble Plaintiffs' actual damages and prejudgment interest (*Id.* at §

1117(b)), or statutory damages of up to $2 million per counterfeit mark, per type of goods or services "sold, offered for sale, or distributed." *Id.* § 1117(c). Because the Lanham Act authorizes courts to order equitable relief in the form of Defendants' profits, the Court also has the authority to freeze Defendants' assets to ensure availability of final equitable relief. *Motorola, Inc. v. Abeckaser*, No. 07-cv-3963, 2009 U.S. Dist. LEXIS 40660 at *15-16 (E.D.N.Y. May 14, 2009); *accord Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912, 2010 U.S. Dist. LEXIS 107733, 24-26 (S.D.N.Y. Oct. 8, 2010) (denying defendants' motion to modify preliminary injunction freezing defendants' assets in counterfeiting case); *see N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *14 n.7 (S.D.N.Y. March 30, 2006) (ordering continuation of existing asset freeze granted in temporary restraining order).

Plaintiffs have shown that Defendants are engaged in a nationwide scheme to defraud consumers by carrying out a counterfeiting operation involving financial consultation and investment services. *(See supra*, pp. 11-13, 17-19.) As noted, *supra* (p. 31), "counterfeiters and dealers in counterfeit goods are generally not upstanding citizens." As such, there is no reason to believe that Defendants would not hide their assets and monies earned through their infringement of Plaintiffs' GUGGENHEIM Marks once learning of this lawsuit. Moreover, there is evidence that at least one defendant, Defendant Toumei, has a substantial outstanding tax lien due to the state of Hawaii for over $30,000 that has been overdue for approximately two and a half years. (*See* Dabney Decl. ¶ 9; Ex. 27 to Ver. Compl.) Because Defendant Toumei has not complied with her obligation to pay such a substantial amount owed to the government, there is no reason to believe that she will voluntarily pay any damages granted to Defendants through this suit. Therefore, an asset freeze is critical to preserve the funds in Defendants' accounts to protect Plaintiffs' rights to an equitable accounting.

## IV.   DISCOVERY SHOULD BE EXPEDITED

The Federal Rules of Civil Procedure authorize a court to grant expedited discovery "in the interest of justice" upon a showing of "good cause." Fed. R. Civ. P. 26(d).   District Courts have "broad power" to permit expedited discovery in appropriate cases. *See Behnam Jewelry Corp. v. Aron Basha Corp.*, No. 97-CIV-3841, 1997 U.S. Dist. LEXIS 15957, *58-59 (S.D.N.Y. July 18, 1997) (granting counterclaim plaintiff expedited discovery for purpose of discovering full nature of counterclaim defendants' infringement).   Expedited discovery is particularly appropriate in trademark infringement and counterfeiting cases because it may help halt further irreparable harm to the trademark owner. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in copyright and unfair competition action because inquiry may uncover additional infringing materials and evidence of continuing infringement or future infringement, helping avoid continued irreparable harm).   Thus, expedited discovery is routinely granted in infringement and unfair competition actions. *See, e.g., id.*, (granting expedited discovery in copyright and unfair competition action); *Twentieth Century Fox*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in trademark infringement case); *Balenciaga Am.*, SDNY, 10 Civ. 2192 (LTS) (granting expedited discovery in counterfeiting case); *N. Face Apparel Corp. v. TC Fashions, Inc.*, SDNY, 05 Civ. 9083 (RMB) (same); *Warner Bros. Entm't Inc. v. RDR Books*, SDNY, 07 Civ. 9667 (RPP) (granting expedited discovery in trademark and copyright infringement case).

Plaintiffs may obtain expedited discovery by showing: (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without

expedited discovery outweighs the injury that the defendant will suffer if the expedited relief is

granted. *Twentieth Century Fox*, 749 F. Supp. at 475.[7]

### A.   Plaintiffs Have Shown Likelihood of Success On Their Trademark Claims and Irreparable Harm

The elements required to obtain expedited discovery mirror those for granting a

preliminary injunction. Thus, Plaintiffs have already shown that they meet the first two

requirements. There is more than "some probability" that Plaintiffs' will succeed on their

trademark claims – Plaintiffs have shown the Defendants have committed trademark

counterfeiting. (*See supra*, pp. 11-13, 17-19.)  Because Plaintiffs have demonstrated some

probability of success on the merits of their trademark claims, irreparable injury may be

presumed. (*See supra*, pp. 22-24.)  Plaintiffs have also independently established irreparable

harm. (*Id.*)

### B.   Expedited Discovery May Prevent Further Irreparable Harm

Plaintiffs seek to serve expedited discovery on certain third parties in order to identify the

true names and addresses of all appropriate defendants. (*See* Third Party Document Requests

attached as Exhibits 1, 2 and 3 to Dabney Decl.)  Plaintiffs have been unable to identify all

appropriate defendants in this case because the nature of Defendants' conduct – Defendants have

committed their infringing acts substantially over the Internet. *See Columbia Ins. Co. v.

Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) (explaining difficulty of identifying

defendants in cases where infringement occurs online, as infringers may act pseudonymously or

anonymously and provide fictitious or incomplete identifying information).  To that end,

---

[7] Some judges in this district have applied a less formal standard and assess a request for expedited discovery under the standard of "reasonableness and good cause." *See Standard Investment Chartered, Inc. v. NASD, Inc.*, 2007 U.S. Dist. LEXIS 27342 (S.D.N.Y. April 11, 2007) (J. Kram); *Ayyash v. Bank Al-Madina, 233 F.R.D. 325 (S.D.N.Y. 2005)* (J. Lynch).  Because Plaintiffs meet the four factor test, Plaintiffs submit that they also meet the standard of reasonableness and good cause.

Plaintiffs have directed limited discovery requests to third parties Yahoo! Inc., Facebook, Inc. and AT&T Co., asking for the names and contact information associated with certain email addresses and user accounts to distribute counterfeits of Plaintiffs' GUGGENHEIM Marks and otherwise carry out their fraudulent scheme. (*See* Dabney Decl. Exs. A-C.) Obtaining this information will permit Plaintiffs to name these persons as defendants in this lawsuit and serve them with process, which is designed to halt the infringement of Plaintiffs' trademarks and ultimately, the irreparable harm caused to Plaintiffs.

Further, expedited discovery will allow Plaintiffs to develop a full and appropriate evidentiary record for timely consideration by the Court of Plaintiffs' proposed preliminary injunction, which is designed to prevent further irreparable harm to Plaintiffs. Through expedited discovery Plaintiffs may learn of additional infringement, additional infringers, and the full scope of the conduct appropriate for the Court to enjoin. *See Twentieth Century Fox,* 749 F. Supp. at 475 (granting plaintiff's motion for preliminary injunction and expedited discovery in trademark infringement case, explaining that expedited discovery may prevent irreparable harm as full scope of infringement and defendants are uncovered). Plaintiffs' proposed discovery requests to be served upon Defendants immediately upon entry of an Order granting Plaintiffs' request are attached as Exhibits C and D to the Dabney Declaration. These requests are narrow, tailored to issues of immediate importance.

**C.     Harm to Plaintiffs If Expedited Discovery Is Denied Outweighs Any Harm to Defendants**

The burden to Defendants in granting Plaintiffs' requested expedited discovery is minimal. As an initial matter, Defendants will suffer no burden with respect to Plaintiffs' discovery requests to third parties, as Defendants are not required to participate in responding to those requests. Further, any burden to Defendants in responding to Plaintiffs' discovery requests is

minor. Plaintiffs' discovery requests directed to Defendants are limited to issues of immediate importance, such as identification of Defendants' residential or business addresses for purposes of service of process, production of investment materials containing counterfeits of Plaintiffs' GUGGENHEIM Marks, identification of consumers who have been sent counterfeit materials, and identification of Defendants' bank accounts and other assets. (*See* Exs. D – E to Dabney Decl.) Such discovery is not likely to be voluminous and Defendants presumably have this information readily available.

Conversely, Plaintiffs will suffer greatly if expedited discovery is not authorized. As detailed *supra*, Plaintiffs have only just recently learned of Defendants' nationwide scheme to defraud consumers by offering financial consultation and investment services under counterfeits of Plaintiffs' GUGGENHEIM Marks. Plaintiffs do not know how far Defendants' counterfeiting and scheme extends, and as such, do not know the full extent of irreparable harm to their reputations. Plaintiffs need this information in order to develop a full evidentiary record so that the Court may grant a preliminary injunction to stop Defendants' dangerous erosion of the goodwill embodied in Plaintiffs' GUGGENHEIM Marks. Therefore, the injury Plaintiffs will suffer without the requested expedited discovery is overwhelmingly greater to any inconvenience caused to Defendants by participation in expedited discovery.

## V.   ALTERNATIVE SERVICE OF PROCESS IS APPROPRIATE

Plaintiffs have made substantial investigation into the locations of the residences and offices of Defendants, however, have been unable to locate physical addresses for at least two Defendants, which is necessary for the effectuation of traditional process. Further, Plaintiffs contend that under the circumstances, where Defendants are engaged in a nationwide scheme involving counterfeit marks where they and actively employ multiple, fictitious aliases, it is likely that Defendants will attempt to evade service of process in this case. This Court has

previously granted authorization for such service of process in a trademark counterfeiting case

involving the same concerns of defendants' evasion. (*See* Temporary Restraining Order in

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS) (S.D.N.Y. April 6, 2010)). Thus,

Plaintiffs request that the Court authorize alternative service of process as set forth in Plaintiffs'

[Proposed] Order. In addition to personal service, Plaintiffs propose that service be effective

upon mailing with a delivery certification or via electronic mail.

## VI.   NO BOND OR A NOMINAL BOND IS APPROPRIATE

Fed. R. Civ. P. 65(c) provides that in order to issue a temporary restraining order, the

movant must provide security in an amount determined by the Court to be adequate to

compensate any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P.

65(c). The Court has great discretion in determining what security is adequate in each case.

*Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (holding that the district court did not

abuse its discretion in dispensing with bond requirement when issuing preliminary injunction

because the amount of any bond "rests within the sound discretion of the trial court"); *see*

*Heisman Trophy Trust*, 595 F. Supp. 2d at 329 (S.D.N.Y. 2009) (granting plaintiff preliminary

injunction in trademark infringement case and finding plaintiff not required to post a bond, no

proof of likelihood of harm to defendant); *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d

Cir. N.Y. 1976) (within district court's discretion to dispense with bond requirement*).* Courts

dispense with the bond requirement where, as here, Plaintiffs show a high likelihood of success

on the merits of their claims. *See Country Inns & Suites by Carlson, Inc. v. Nayan, LLC*, No.

1:08-cv-624, 2008 U.S. Dist. LEXIS 88559, at *28-29 (S.D. Ind. Oct. 28, 2008) (ruled that

security required by Fed. R. Civ. P. 65(c) was not required because the plaintiff made a strong

showing that it was likely to succeed on the merits of its trademark infringement claim and,

therefore, the posting of security was unnecessary).

Plaintiffs respectfully submit that no bond should be required, given the blatant evidence of Defendants' criminal counterfeiting activity. Further, as two of the most well-known, highly-respected financial firms in the United States (*see supra*, pp. 2-3), it is hard to imagine an entity other than Plaintiffs who is more capable of satisfying any costs or damages necessitated by wrongful seizure. *See Ideal Toy Corp v. Chinese Arts & Crafts, Inc.*, (S.D.N.Y. Dec. 7, 1981) (properly dispensing with bond requirement where no defendants claimed that plaintiff would be unable to satisfy any costs or damages if the injunction proved to be wrongful). In view of the foregoing, Plaintiffs respectfully request that the Court order that the posting of security is unnecessary in this case or order the posting of a nominal bond. *See American ORT, Inc. v. ORT Israel*, No. 07 Civ. 23321, 2009 U.S. Dist. LEXIS 10202, at *15-18 (S.D.N.Y. Jan. 21, 2009) (request for bond denied in its entirety in Lanham Act case where defendant adduced only speculative evidence of harm).

## VII.   THE CASE FILE SHOULD BE SEALED

The provision of the Lanham Act authorizing a seizure order in this case, 15 U.S.C. § 1116(d)(8), mandates that the Court's file for this case be filed under seal pending the hearing on the requested preliminary injunction. By sealing the file, the Court insures that Defendants will not anticipate the seizure and move the materials sought to be seized to another location. Further, sealing the file protects Defendants from adverse publicity until they have an opportunity to respond. Thus, Plaintiffs request that the Court order the case file to be sealed until such time as the seizure of counterfeit materials and Defendants' records is accomplished by the U.S. Marshals or other authorized law enforcement officers.

## CONCLUSION

For the reasons set forth above and upon the facts set forth in Plaintiffs' Verified Complaint and supporting exhibits and declaration, Plaintiffs respectfully request that the Court

grant its *Ex Parte* Application and Motion for a (1) Temporary Restraining Order ("TRO"); (2)

Seizure Order; (3) Order to Show Cause for a Preliminary Injunction; (4) Order Restraining

Transfer Of Assets; (5) Order Authorizing Alternative Service of Process; and (6) Order

Authorizing Expedited Discovery; and (7) Order Sealing File.

MCDERMOTT WILL & EMERY LLP

November 22, 2010

Michael Shanahan (NY Bar. # 3971793)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173
(212) 547-5400 (telephone)
(212) 547-5444 (facsimile)

John J. Dabney (to file for admission *pro hac vice*)
Rita Weeks (to file for admission *pro hac vice*)
McDermott Will & Emery LLP
600 13th Street, NW
Washington, DC 20005
(202) 756-8000 (telephone)
(202) 756-8087 (facsimile)

*Attorneys for Plaintiffs*
*Guggenheim Capital, LLC and Guggenheim Partners, LLC*

WDC99 1945011-1.067276.0119

- 40 -