MWE OFFICE COPY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

                   Plaintiffs,

v.

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A
CATARINA FREDERICK; VLADIMIR
ZURAVEL A/K/A VLADIMIR
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI
PICHEL; THEODOR PARDO; AND JOHN
DOES 1-10,

                   Defendants.

Civil Action No. 10 CV 8830 (PGG)

JURY TRIAL DEMANDED



### SECOND AMENDED COMPLAINT

Plaintiffs Guggenheim Capital, LLC and Guggenheim Partners, LLC (collectively,

"Plaintiffs") file this Second Amended Complaint against Defendants Catarina Pietra Toumei, an

individual a/k/a Lady Catarina Toumei and Catarina Frederick; Vladimir Zuravel, an individual

a/k/a Vladimir Guggenheim, Vladimir Z. Guggenheim and Vladimir Z. Guggenheim Bank;

David Birnbaum, an individual a/k/a David Guggenheim and David B. Guggenheim; Dabir

International Ltd., a Delaware limited liability company; Eli Pichel, an individual; Theodor

Pardo, an individual a/k/a Theodore Pardo; John Does 1-10 ("Doe Defendants"); and entities of

unknown form and organization and individuals of unknown residence, and allege as follows:



**SECOND AMENDED COMPLAINT**     - 1 -

## I.   PRELIMINARY STATEMENT

1.      Defendants are engaged in a nationwide scheme to defraud consumers out of billions of dollars by pretending to be Plaintiffs, the latter of which are two of the most well-known and highly-respected financial firms in the United States and the world.

2.      Defendants distribute letters, investment proposals, and other financial documents bearing counterfeits of Plaintiffs' federally registered GUGGENHEIM marks. Purporting to be Plaintiffs, Defendants offer consumers the chance to participate in multi-million and multi-billion dollar investments involving a variety of products, such as crude oil, bank guarantees, diamonds, and gold.

3.      Defendants are co-conspirators and are aware of each other's actions and intentions in furtherance of a scheme to defraud by investing money with Defendants under the false pretenses that Defendants are Plaintiffs.

4.      Defendants' scheme is carried out through Defendants' use of the U.S. wires and the U.S. mails and consists of a pattern of criminal predicate acts, including mail fraud, wire fraud, and trademark counterfeiting. Defendants' unlawful actions damage Plaintiffs and jeopardize the public interest.

5.      Defendants, through and in the name of Defendant Dabir International Ltd., have sought to further their scheme to defraud investors by applying for federal trademark registration of the trademark GUGGENHEIM for financial services, by filing U.S. Application Serial No. 85/186314 at the U.S. Patent and Trademark Office.

## II.   THE PARTIES

6.      Plaintiff Guggenheim Capital, LLC is a Delaware limited liability company with its principal place of business at 227 W. Monroe, Chicago, IL 60606.

**SECOND AMENDED COMPLAINT**        - 2 -

7.      Plaintiff Guggenheim Partners, LLC is a Delaware limited liability company which is qualified to do business in New York and has its principal place of business at 135 East 57th Street, New York, NY 20022.

8.      Defendant Catarina Pietra Toumei is an individual, who is residing in Rancho Santa Fe, California and Manhattan, New York, and who is also known as "Lady Catarina Pietra Toumei" and "Catarina Frederick" ("Defendant Toumei"). (*See* last two pages of Exhibit 1.) Defendant Toumei has a residence at 6136 Paseo Delicias, Rancho Santa Fe, California 92067 in addition to a mailing address of P.O. Box 615, Rancho Santa Fe, California 92067 and possible alternative residences at 107 Via Coronado, Rancho Santa Fe, California 92091, and/or 16934 Mimosa Place, Rancho Santa Fe, CA 92067, and/or 3023 Avenida Circuela, Carlsbad, California 92009. Defendant Toumei falsely claims to be connected with Plaintiffs, including that she is the "Investment Relations Manager" of the "Guggenheim Fund."

9.      Defendant Vladimir Zuravel is an individual residing in New York, New York, who is also known as "Vladimir Guggenheim," "Vladimir Z. Guggenheim" and "Vladimir Z. Guggenheim Bank." ("Defendant Zuravel"). Defendant Zuravel resides at 63-10 Dieterle Crescent, New York, NY 11374. (*See* Exhibit 2.) Defendant Zuravel falsely claims to be connected with Plaintiffs.

10.     Defendant David Birnbaum is an individual residing in New York, New York, who is also known as "David B. Guggenheim" ("Defendant Birnbaum"). Defendant Birnbaum resides at 525 Ocean Parkway, Brooklyn, New York 11218. (*See* Exhibit 3.) Defendant Birnbaum falsely claims to be connected with Plaintiffs.

11.     On information and belief, Defendant Dabir International, Ltd. ("Defendant Dabir International") is a Delaware limited liability company located at 525 Ocean Parkway,

**SECOND AMENDED COMPLAINT**          - 3 -

Brooklyn, New York 11218. Defendant Dabir International, Ltd. has applied for federal

registration of the trademark GUGGENHEIM (Serial No. 85/186314) at the U.S. Patent and

Trademark Office with the intent to defraud investors and create a false impression that

Defendants' "financial services" in fact emanate from Plaintiffs. *See* Exhibit B. On information

and belief, Defendant Dabir International is the alter ego of Defendant Birnbaum, and Defendant

Birnbaum personally and solely owns, controls, directs, authorizes and operates Defendant Dabir

International, including in relation to the referenced trademark application filed in the name of

Defendant Dabir.

      12.      Defendant Eli Pichel ("Defendant Pichel") is an individual whose residence is

unknown. Defendant Pichel falsely claims to be a licensed attorney working for Plaintiffs or the

Guggenheim family. Defendant Pichel also participates in the schemes described herein through

an entity of unknown structure known as "Pichel Consultancy."

      13.      Defendant Theodor Pardo is an individual residing in Miami, Florida, who is

also known as "Theodore Pardo" or "Theo" ("Defendant Pardo"). Defendant Pardo resides at

825 Brickell Bay Drive, Apt. 1545, Miami, Florida 33131-2919. Defendant Pardo falsely claims

to be connected with Plaintiffs.

      14.      The Doe Defendants are individuals and entities who participate in the schemes

described herein to defraud consumers by using counterfeit GUGGENHEIM trademarks.

      15.      Defendant Toumei, Defendant Zuravel, Defendant Birnbaum, Defendant Pichel,

Defendant Pardo and the Doe Defendants (collectively, "Defendants"), through their officers,

directors, agents, servants, employees, attorneys, partners, joint venturers or other persons

affiliated or acting in concert with them, have engaged in the acts described herein jointly or

severally and with other individuals and entities not yet known to Plaintiffs.

**SECOND AMENDED COMPLAINT**     - 4 -

## III.   JURISDICTION AND VENUE

16.     This is an action for trademark infringement, trademark counterfeiting, trademark dilution, false advertising, cybersquatting, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, *et seq.*; for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") under 18 U.S.C. § 1962, *et seq.*; and for trademark infringement, trademark dilution, deceptive acts and practices, and fraud under New York law.

17.     The Court has original jurisdiction over the claims arising under federal law pursuant to 15 U.S.C. § 1121(a), 18 U.S.C. §§ 1961 and 1964, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

18.     The Court has supplemental jurisdiction over Plaintiffs' state law claims arising under the statutory and common law of the state of New York pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law.  The Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. §1367, because Plaintiffs' state law claims are interrelated with Plaintiffs' federal claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiffs' state law claims with Plaintiffs' federal claims furthers the interest of judicial economy.

19.     The Court has general and specific personal jurisdiction over Defendants.  The Court has general jurisdiction over Defendant Toumei, Defendant Zuravel, Defendant Birnbaum and Defendant Dabir International.  The Court has specific jurisdiction over all Defendants because some of Defendants' unlawful acts and events occurred in this district, including the creation and distribution of materials bearing counterfeits of Plaintiffs' GUGGENHEIM trademarks, as described herein.  Defendants also (i) represent to consumers that they maintain offices in this district (*See* Exhibits 4, 7-8, 10-11, 14-17, 22) (ii) instruct potential investors to deliver and mail certain documents to Defendants at addresses and offices located in this district

(*See* Exhibits 7-8, 11); (iii) maintain at least two telephone lines in this district (*See* Exhibits 2-4); (iv) invite potential customers to this district to perpetrate the fraud (*See* Exhibits 17-18, 22-23) (v) solicited purchases on behalf of Plaintiffs to be consummated in this district (*See* Exhibits 9, 18-20); and (vi) Defendants' website containing counterfeits of Plaintiffs' GUGGENHEIM trademarks (located at *guggenheimadvisors.org*) is available and directed to individuals in this district. Moreover, Defendants know that Plaintiff Guggenheim Partners, LLC is located in this district and know that Plaintiff Guggenheim Partners, LLC would suffer injury to its business reputation in this district on account of Defendants' fraudulent scheme and use of counterfeits of Plaintiffs' GUGGENHEIM trademarks.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) because some of Defendants reside in this district, because some of Plaintiff's claims arise in this district, and because some of Defendants' participation in the unlawful acts and events occurred in this district, including the creation and distribution of counterfeit materials, the use of counterfeit marks, and the filing of a fraudulent federal trademark application as described herein.

## IV.     FACTUAL ALLEGATIONS

### A.     Plaintiffs And Plaintiffs' GUGGENHEIM Trademarks

21.     Plaintiffs are among the most famous and highly-respected financial firms in the United States. Plaintiff Guggenheim Capital, LLC is a financial services and investment management holding company, headquartered in Chicago, Illinois, with an office in New York, NY. Plaintiff Guggenheim Capital, LLC traces its roots to the famous Guggenheim family, a major contributor to the development of business and philanthropy in the United States, and its members include the Guggenheim family. Guggenheim Capital is a global financial services firm offering a wide variety of investment products and services under the mark GUGGENHEIM and formatives thereof.

**SECOND AMENDED COMPLAINT**          - 6 -

22.     Plaintiff Guggenheim Partners, LLC is a wholly-owned subsidiary of Guggenheim Capital LLC and has an office and is qualified to do business in New York, New York. Guggenheim Partners is a global financial services firm offering financial consultation and investment services under the mark GUGGENHEIM and formatives thereof. Guggenheim Partners, LLC provides its services to: individuals, including high-net-worth individuals; institutional investors; endowments; foundations; insurance companies; pension plans; and other institutions, who together entrust the firm with more than $110 billion in assets. Plaintiff Guggenheim Partners, LLC employs over 1,400 people in more than 20 cities throughout the United States, Europe and Asia.

23.     For over 50 years, Plaintiffs and their predecessors-in-interest have advertised and offered financial consultation and investment services under the mark GUGGENHEIM and formatives thereof, such as GUGGENHEIM CAPITAL, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM INVESTMENT ADVISORS, GUGGENHEIM FUNDS, GUGGENHEIM SECURITIES and GUGGENHEIM REAL ESTATE ADVISORS (collectively, "GUGGENHEIM Marks"). Plaintiffs advertise and render their services under the Guggenheim Marks throughout the United States, including in this judicial district, and provide information about their services at their websites located at *guggenheimpartners.com*, *guggenheimadvisors.com*, *guggenheimfunds.com*, *guggenheiminvestmentadvisors.com*, and *guggenheimrealestate.com*, among others.

24.     Plaintiff Guggenheim Capital, LLC owns U.S. trademark registrations for the mark GUGGENHEIM and formatives thereof and licenses some of those marks to Plaintiff Guggenheim Partners, LLC, including:

- **GUGGENHEIM**, U.S. Reg. No. 3,121,127 for:

**SECOND AMENDED COMPLAINT**          - 7 -

Class No. 16: "Printed matter, namely, books, brochures, and newsletters featuring finance, business, insurance, banking, asset management and investment;"

Class No. 36: "Providing information, advice and consulting in the fields of finance, insurance, business, banking, asset management and investment; financial investment in the fields of securities, funds, real estate, and venture capital businesses; investment management and asset management services; investment of funds for others; securitization, structuring and administration of investment assets; securities and investment brokerage services; investment banking services; trust services, namely, investment and trust company services; and providing online electronic databases in the fields of finance, business, banking, asset management and investment;"

Class No. 41: "Educational services, namely, conducting classes, seminars, conferences and workshops in the fields of finance, insurance, business, banking, asset management and investment; and providing online magazines and newsletters in the fields of finance, insurance, business, banking, asset management and investment;"

- **GUGGENHEIM PARTNERS**, U.S. Reg. No. 3,110,878 in Class 36 for "Financial consultation services, namely, providing information, advice and consulting in the fields of finance, banking, asset management and investment; financial investment in the fields of securities, funds, real estate, and venture capital businesses; investment management and asset management services; investment of funds for others; structuring and administration of financial investment assets; securities and investment brokerage services; investment banking services; trust services, namely, investment and trust company services; and providing online financial information through electronic databases in the fields of finance, banking, asset management and investment;"

- **GUGGENHEIM INVESTMENT ADVISORS**, U.S. Reg. No. 3,712,544 in Class 36 for "Providing information, advice and consulting in the fields of finance, insurance, banking, asset management and investment; financial investment in the fields of securities, funds, real estate, and venture capital businesses; investment management and asset management services; investment of funds for others; securitization, structuring and administration of investment assets; securities and investment brokerage services; investment banking services; trust services, namely, investment and trust company services; and providing online electronic databases in the fields of finance, banking, asset management and investment;" and

- **GUGGENHEIM REAL ESTATE**, U.S. Reg. No. 3,712,545 in Class 36 for "Providing information, advice and consulting in the fields of finance, insurance, banking, asset management and investment; financial investment in the fields of securities, funds, real estate, and venture capital businesses; investment management and asset management services; investment of funds for others; securitization, structuring and administration of investment assets; securities and investment brokerage services; investment banking services; trust services, namely, investment and trust company services; and providing online electronic databases in the fields of finance, banking, asset management and investment."

True and correct copies of these registration certificates are attached as <u>Exhibit 4</u>. Each of those registrations is valid and subsisting and, pursuant to 15 U.S.C. § 1057(b), is "prima facie" evidence of the validity of the GUGGENHEIM Marks, of the registration of the GUGGENHEIM Marks, of Plaintiff Guggenheim Capital, LLC's ownership of the GUGGENHEIM Marks, and of Plaintiff Guggenheim Capital, LLC's exclusive right to use the GUGGENHEIM Marks in commerce for the goods and services listed in the registrations. Plaintiff Guggenheim Capital, LLC's federal registrations also serve as constructive notice of Plaintiff's claim of ownership of the Guggenheim Marks. 15 U.S.C. § 1072.

  25. In addition to Plaintiffs' registered trademarks, Plaintiffs own substantial common law rights in other GUGGENHEIM-formative marks for a wide variety of financial consultation and investment services, including GUGGENHEIM CAPITAL, GUGGENHEIM ADVISORS, GUGGENHEIM INVESTMENT ADVISORS, GUGGENHEIM FUNDS and GUGGENHEIM SECURITIES.

  26. For decades, Plaintiffs' GUGGENHEIM Marks have been known throughout the United States as identifying Plaintiffs as a particular source of the highest-quality and most-trusted financial consultation and investment services. Plaintiffs offer a wide range of financial consultation and investment services under their GUGGENHEIM Marks. For example, Plaintiffs offer opportunities to invest in investment vehicles that relate to commodities such as such as crude oil, petroleum products and other energy sources, and activities relating to the mining and distribution of precious metals, such as gold.

  27. Over the years, Plaintiffs have invested millions of dollars advertising and promoting their financial consultation and investment services under the GUGGENHEIM Marks and have earned significant revenue under the marks.

**SECOND AMENDED COMPLAINT**  - 9 -

28.     Over the years, Plaintiffs' GUGGEMHEIM Marks and Plaintiffs' financial consultation and investment services offered under those marks have achieved substantial, unsolicited media coverage in national and international publications, television coverage and Internet coverage.  A representative sample of such unsolicited coverage is attached as Exhibit 5

29.     Plaintiffs' employees frequently appear on national television programs such as Bloomberg and CNBC and in business publications such as the Wall Street Journal and Barrons on issues concerning the financial and investment markets and to publicize Plaintiffs' recent business accomplishments.  In so doing, Plaintiffs' employees are identified as speaking on behalf of Plaintiffs or as Plaintiffs' employees.  A representative sample of such articles is attached as Exhibit 6.

30.     Plaintiffs' GUGGENHEIM Marks are assets of substantial value as symbols of Plaintiffs, their high-quality products and services, and goodwill.  Consumers recognize Plaintiffs' GUGGENHEIM Marks as identifying Plaintiffs' financial consultation and investment services.  Consumers have come to trust financial consultation and investment services branded with Plaintiffs' GUGGENHEIM Marks.  As a result of Plaintiffs' efforts and expertise offered under the GUGGENHEIM Marks, Plaintiffs have been entrusted to manage more than $100 billion dollars in investment funds.

**B.     Defendants' Scheme To Defraud Consumers**

31.     Defendants recently commenced a nationwide scheme to defraud consumers by offering financial consultation and investment services under Plaintiffs' famous GUGGENHEIM Marks.  Using counterfeits of Plaintiff's GUGGENHEIM Marks, Defendants purport to be Plaintiffs and offer consumers investment opportunities in bogus, large-scale transactions involving a variety of products, such as crude oil, bank guarantees, diamonds, and gold. Defendants distribute their counterfeit materials using email addresses ending in

**SECOND AMENDED COMPLAINT**          - 10 -

*guggenheimadvisors.org*.  Further, Defendants use the domain name *guggenheimadvisors.org* to host a website purporting to offer financial consultation and investment services.

32.      Plaintiffs recently learned of Defendant's fraudulent schemes when Plaintiffs received inquiries regarding communications proposing large-scale, complex business transactions—some worth in excess of 1 billion dollars—including letters, financial documents, advertising materials, and emails, which appeared to originate from Plaintiffs, but which actually originated from Defendants.  Defendants' letters, financial documents, advertising materials, and emails proposing business transactions prominently display Plaintiffs' mark GUGGENHEIM or a formative of GUGGENHEIM, such as GUGGENHEIM FUND and GUGGENHEIM BANK, and are replete with unauthorized uses of Plaintiffs' GUGGENHEIM marks, such as GUGGENHEIM ADVISORS and GUGGENHEIM PARTNERS.  True and correct copies of exemplars of those communications are attached as Exhibits to this Complaint and are described in detail below.

33.      Defendants' scheme is based on engendering the false belief among consumers that they are responding to investment offers from Plaintiffs' well-known, highly-reputable financial services firms, when in fact Plaintiffs have nothing to do with the offers or those individuals purporting to make the offers.  Defendants create this false belief through the use of counterfeits of Plaintiffs' GUGGENHEIM Marks, including at least the marks GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM FUND and GUGGENHEIM BANK.

### Defendants' Oil Scheme

34.      On or about July 13, 2010, Defendants emailed an unknown number of persons, soliciting a purchase contract for crude oil for $1-3 billion dollars.  Defendants' email attached

an alleged "letter of intent" purporting to be from Plaintiffs, that bore a counterfeit of Plaintiffs'

GUGGENHEIM Marks. Moreover, Defendants' counterfeit mark is presented in the identical

font, type style and distinctive purple color that Plaintiffs use for their GUGGENHEIM Marks.

A true and correct copy of the letter of intent is attached as Exhibit 7. Defendants' solicitation

contains false claims, including that Defendant Toumei works for, is acting on behalf of, or is

otherwise associated with Plaintiffs. (*Id.*)

35.     Plaintiffs did not create or send the email dated July 13, 2010 or the letter of

intent dated May 28, 2010 attached to the email (Exhibit 7) or authorize any individual or entity

to do so.

36.     On or about June 10, 2010, Defendants distributed a "letter of intent" addressed

to "EGC Corp., c/o Dr. Fadi Noah and Michael Donovan," seeking the purchase of a large

quantity of crude oil. A true and correct copy of Defendants' letter of intent is attached as

Exhibit 8. Defendants' "letter of intent" purported to be from Plaintiffs and bore a counterfeit of

Plaintiffs' GUGGENHEIM Marks. This letter also contains false claims, including that

Defendant Toumei works for, is acting on behalf of, or is otherwise associated with Plaintiffs.

37.     Plaintiffs did not create or send the purported "letter of intent" dated June 10,

2010 (Exhibit 8) or authorize any individual or entity to do so.

38.     Sometime between July through October 2010, Defendants emailed an

unknown number of persons, soliciting a purchase contract for crude oil for a "Mr. Guggenheim"

of the "Guggenheim Family," referencing a website located at *http://www.guggenheim.org*. The

email solicitation represented that a "Mr. Guggenheim" sought to purchase between $1 billion

and $3 billion of crude oil before the end of the next business day. The solicitation further

instructed that the purchasers (the alleged "Guggenheim Family" and a "Mr. Guggenheim")

**SECOND AMENDED COMPLAINT**        - 12 -

required proof of purchase "up front," and that proof of purchase may be sent "via confidential email to his mandate, Catarina," or to Mr. Guggenheim's "family offices in New York." Alternatively, the email stated that proof of purchase "can be shown at a branch of the seller's bank located in New York." Pursuant to that option, the email explained that "[a]s a major shareholder in Deutsche Bank, Mr. Guggenheim will accompany the seller's bank officers [in New York] to view the POP." Defendants' email solicitation contained false claims and false implications, including:

- Defendant Toumei works for, is acting on behalf of, or is otherwise associated with Plaintiffs and/or the Guggenheim family; and

- Defendant Toumei represents a "Mr. Guggenheim," who is a member of the Guggenheim family and is "a major shareholder in Deutsche Bank."

39.     Plaintiffs did not create or send the purported oil purchase offer described in paragraph 36 above or authorize any individual or entity to do so.

**Defendants' Gold Scheme**

40.     On or about July 7, 2010, Defendants sent an email purporting to solicit a purchase of gold for a "Mr. Zladimir Z. Guggenheim." A true and correct copy of that email is attached as Exhibit 9. The email stated, in part, "I took our buyers['] personal contact info out of ths [sic] agreement...you can see who he is...friend of the family and very close with Caterina who is his agent as you can see in the agreement." (Id.)

41.     Defendants' July 7 email purported to attach a "Gold Purchase Agreement," dated July 20, 2010, allegedly representing a purchase of $1 billion of 24k gold bars, with the purchaser listed as "Mr. Vladimir Z. Guggenheim" from "New York, New York." A true and correct copy of Defendants' agreement is attached as part of Exhibit 9. The document creates

**SECOND AMENDED COMPLAINT**     - 13 -

the false impression that Plaintiffs are connected with the agreement and stand behind the agreement. Defendants' agreement lists the buyer's "agent" as "Lady Catarina Pietra Toumei," and lists details for a purported bank account to be used by the seller under the name "Lady Catarina Pietra Toumei." (*Id.*) Further, the agreement purports to contain a "digital signature" of Mr. Vladimir Z. Guggenheim. (*Id.*)

42.     Plaintiffs did not create or distribute the July 7, 2010 email forwarding the purported "Gold Purchase Agreement" or the "Gold Purchase Agreement" itself (Exhibit 9), or authorize any individual or entity to do so, and have nothing to do with the agreement.

### Defendants' Scheme To Defraud The Coca-Cola Company In Plaintiffs' Name

43.     From approximately August 15, 2010 through September 15, 2010, Defendant Toumei made in excess of 20 telephone calls to The Coca-Cola Company, falsely claiming to be connected to Plaintiffs. On or about September 2, 2010, Defendant Zuravel and Defendant Birnbaum contacted The Coca-Cola Company via telephone, falsely claiming to be affiliated with Plaintiffs. Defendants repeatedly requested a dinner meeting with senior leadership of The Coca-Cola Company to discuss financial investments.

44.     Defendants provided The Coca-Cola Company with several telephone numbers for the fictitious Mr. Vladimir Z. Guggenheim and Mr. David B. Guggenheim. A true and correct copy of an email from The Coca-Cola Company to Plaintiffs listing the telephone numbers Defendants provided is attached as Exhibit 10. At least one of those phone numbers is registered to Defendant Birnbaum in New York, NY. (*See* Exhibit 3.)

45.     Plaintiffs did not make the telephone calls to The Coca-Cola company, nor did Plaintiffs authorize any individual or entity to do so.

**SECOND AMENDED COMPLAINT**          - 14 -

46.     The statements that Defendants made to The Coca-Cola Company during the telephone calls between August 15, 2010 and September 15, 2010 were knowingly and intentionally false when made.

**Defendants' Scheme Relating To "Bank Guarantees"**

47.     On or about September 28, 2010, Defendant Toumei emailed a Chad Geren, purporting to offer for sale "Bank Guarantees" in the name of Plaintiffs. A true and correct copy of Defendants' email is attached as Exhibit 11. Defendants' email stated, in part, "I can put you on the phone with Mr. Guggenheim when you call me (as I work with him full-time, daily. . . ."). (Id.) Defendant's email also referred to "Theodor Pardo" (Defendant Pardo) as one of Defendant Toumei's "filters, the intermediaries to get to [her], in order to make sure the buyer was real . . . ." (Id.) Defendants' email contained an attachment purporting to be a letter of intent dated September 28, 2010, stating that a "Mr. David B. Guggenheim and Mr. Vladimir Z. Guggenheim" are "ready, willing and able to issue Bank Guarantees form Deutshe Bank, Credit Suisse, HSBC London, and Barclays London." A true and correct copy of Defendants' letter of intent is attached in Exhibit 11. Defendants' alleged letter of intent contained a counterfeit of Plaintiffs' GUGGENHEIM Marks. (Id.) Moreover, Defendants' counterfeit mark uses the same distinctive purple color that Plaintiffs use for their GUGGENHEIM Marks. The letter instructed potential purchasers to send "proof of funds" to the attention of Mr. David. B. Guggenheim and Mr. Zladimir Z. Guggenheim, of the purported "Guggenheim Fund" at an address listed in Brooklyn, New York. (Id.) The letter contained several false claims, including:

- Defendant Toumei works for, is acting on behalf of, or is otherwise associated with Guggenheim Advisors, LLC;

- Defendant Toumei is the "Investment Relations Manager" for the "Guggenheim Fund;"

SECOND AMENDED COMPLAINT        - 15 -

- "Mr. David B. Guggenheim" is "Chairman" of the "Guggenheim Fund;"

- "Mr. Vladimir Z. Guggenheim" is "President" of the "Guggenheim Fund;" and

48.    The letter claims that the address for the "Guggenheim Fund" is "525 Ocean Parkway, Suite 1 G-H, Brooklyn, NY 11218." The 525 Ocean Parkway address contained in Defendants' letter attached as Exhibit 11 is listed as the residence for Defendant Birnbaum. (*See* Exhibit 3.)

49.    Plaintiffs did not create or distribute the September 28, 2010 email forwarding the purported letter of intent toward bank guarantees or the letter of intent itself (Exhibit 11) or authorize any individual or entity to do so, and have nothing to do with the alleged letter of intent.

50.    Also, on or about September 28, 2010, one of Defendants spoke with a Chad Geren on the telephone, purporting to be "Vladimir Guggenheim," falsely claiming that he is connected to Plaintiffs and encouraging Mr. Geren to participate in an investment.

51.    Later on or about September 28, 2010, Defendant Toumei sent another email to Mr. Chad Geren, stating in part, "I am pleased that you had the (rare) opportunity to speak with Mr. Vladimir Guggenheim today." Defendant Toumei also provided alleged contact information for Vladimir Guggenheim, listing his "private phone" as (347) 459-2000 and his "private" email as vz@vzltd.com. A true and correct copy of this email is attached as Exhibit 12.

52.    The domain name *vzltd.com* is registered to Defendant Vladimir Zuravel. A true and correct copy of the WhoIs record for that domain name is attached as Exhibit 2.

53.    On October 9, 2010, Defendants falsely solicit a transaction for sale of "Bank Guarantees" in the name of Plaintiffs. Defendant Toumei emailed purported terms related to the alleged transaction. A true and correct copy of Defendants' email (stamped 3:59 p.m.) is shown

**SECOND AMENDED COMPLAINT**      - 16 -

in the email chain attached as Exhibit 13. Defendants' email falsely stated, in part, that

"Mr. Guggenheim informed me today that Messrs. Guggenheim are ready, willing, and able to

issue Bank Guarantees from Royal Bank of Scotland, HSBC, Barclays, Deutshe Bank and Credit

Suisse, that are 100% Gold-backed, and available in the denominations of $300 million, $500

million, and $1 billion." (Exhibit 13.) Further, Defendants' email offered:

> "Additionally, we are currently offering 100% cash-backed Bank
> Guarantees in the denominations of $1 Billion, $5 Billion, $25 Billion, and
> higher amounts. Mr. Guggenheim will customize the Bank Guarantee
> procedures to your buyer's needs and discuss higher amounts, and pricing
> confidentially and privately over the phone. Additionally, Messrs.
> Guggenheim are currently offering loans of $1 Billion and larger amounts,
> for those who own Gold AU that they can utilize as collateral."

(Id.) Defendants' email contained several false claims and implications, including that

Defendant Toumei works for, is acting on behalf of, or is otherwise associated with Plaintiffs.

54.      Plaintiffs did not create or distribute the October 9, 2010 email (Exhibit 13)

proposing a transaction for bank guarantees or authorize any individual or entity to do so, and

have nothing to do with the proposal.

55.      On or about October 10, 2010, one or more of Defendants spoke on the

telephone with the potential investors targeted by the email proposal shown in Exhibit 13,

purporting to be connected to Plaintiffs and encouraging potential investors to participate in the

alleged bank guarantee transaction. (See October 10, 2010 email stamped 4:37 p.m. in Exhibit

13.)

56.      In response to Defendants' email proposal show in Exhibit 13, a potential

investor forwarded the proposal via email for further consideration. A true and correct copy of

the potential investor's email is shown in the email chain attached as Exhibit 13 (see October 10,

2010 email stamped 2:16 p.m. in Exhibit 13.) Describing the purported transaction, the potential

investor stated that: "This is a buyer-centric AU officer and I believe the **Guggenheim Trust**

may have interest in this offer. I can bring the CEO of the company into a [conference] call if

[the potential buyers] have solid/concerted interest." (*Id.*) (emphasis added).

**Defendants' Diamond Scheme**

57.     On or about October 11, 2010, Defendants sent multiple emails falsely

purporting to solicit a sale of diamonds on behalf of Vladimir Z. Guggenheim and David B.

Guggenheim. A true and correct copy of one of Defendants' email communications is attached

as Exhibit 1. The emails contain an attachment which falsely purports to be a letter of intent

concerning the transaction, dated October 12, 2010. One letter of intent was addressed to a Mr.

Chris Brown and one was addressed to a Mr. Eli Pichel. A true and correct copy of the letters of

intent addressed to Mr. Chris Brown and Mr. Pichel are attached as Exhibits 14 and 15. Each

letter of intent bears a counterfeit of Plaintiffs' GUGGENHEIM Marks. Moreover, Defendants'

counterfeit mark uses the same distinctive purple color that Plaintiffs use for their

GUGGENHEIM Marks. The letters appear to be written on letterhead from Plaintiffs located in

"New York, New York," and contain false references to affiliations with Plaintiffs. The letters

of intent included false claims, including that and Defendant Toumei is the "Investment

Relations Manager" for the non-existent "Guggenheim Fund."

58.     Plaintiffs did not create or distribute the October 11, 2010 email (Exhibit 1) or

the two October 12, 2010 letters of intent proposing diamond sales (Exhibits 14-15) or authorize

and individual or entity to do so, and have nothing to do with the proposals.

59.     In response to an ongoing chain of email communications with Defendants

concerning the purported diamond transaction, and letter of intent attached as Exhibit 14,

addressed to Mr. Chris Brown, signed by "Lady Catarina Toumei," the purported "Investment

Relations Manager" for the "Guggenheim Fund," a potential investor requested additional

**SECOND AMENDED COMPLAINT**      - 18 -

documentation to proceed with the transaction. A true and correct copy of the email chain containing that communication is attached as <u>Exhibit 16</u>.

60.     In response to the potential investor's email, on or about October 12, 2010, Defendants forwarded a new purported letter of intent concerning the transaction. (*See* email chain reflected in <u>Exhibit 16</u>.) This new letter of intent was dated October 12, 2010, appeared to be written on letterhead stationary from the purported "Guggenheim Fund" located in "New York, New York," and was addressed to a Mr. Chris Brown. A true and correct copy of that letter is attached as <u>Exhibit 17</u>. That letter purported to solicit the diamond transaction directly for Vladimir Z. Guggenheim, an alleged member of the Guggenheim family, and was allegedly signed by Mr. Guggenheim. The signature on the letter is identical to the purported signature of "Lady Catarina Toumei," as shown in <u>Exhibits 11</u> and <u>15</u>. Defendants' letter of intent contained a counterfeit of Plaintiffs' GUGGENHEIM Marks. The letter contained multiple false claims of affiliations with Plaintiffs, including that Defendant Zuravel is "President" of the purported "Guggenheim Fund."

61.     Plaintiffs did not create or distribute the October 12, 2010 letter of intent allegedly signed by Mr. Vladimir Z. Guggenheim (<u>Exhibit 17</u>) or authorize any individual or entity to do so, and have nothing to do with the proposal.

62.     On or about October 23, 2010, Defendants used the Internet to send emails to an unknown number of persons purporting to solicit the sale of diamonds and used a counterfeit of Plaintiffs' GUGGENHEIM Mark in the solicitation. Defendant Pichel sent an email with the subject "ROUGH DIAMONDS – NEW YORK – GUGGENHEIM FUND – CONFIDENTIAL – OFFER" containing an offer to sell diamonds from the purported "Guggenheim Fund." A true and correct copy of these emails are attached as <u>Exhibit 18</u>. In the emails, Defendant Pichel

**SECOND AMENDED COMPLAINT**     - 19 -

falsely represents himself as a "fiduciary" for the so-called Guggenheim Fund. (*Id.*) The emails also invite the buyer to inspect the diamonds in New York. (*Id.*) Defendant Pichel's October 23, 2010 emails contain multiple false and fraudulent claims of affiliations with Plaintiffs, including that Defendant Pichel is the "fiduciary" of the "Guggenheim Fund."

63.     Plaintiffs did not create or distribute the October 23, 210 emails (Exhibit 18) containing terms for a purported diamond sale or authorize any individual or entity to do so, and have nothing to do with the proposal.

64.     Defendants' October 23, 2010 emails contained counterfeits of Plaintiffs' GUGGENHEIM Marks (Exhibit 18) and attached several documents, including the letter attached as Exhibit 15 to this Complaint. It also attaches a "Letter of Intent" with a Transaction code "PICHEL/GUGGENHEIM/DIAMONDS/NY/2010," addressed to the "Guggenheim Fund, Attn. Mr. Vladimir Guggenheim, C/O Mr. Eli Pichel, LL.M., Tax Lawyer." A true and correct copy of this "Letter of Intent" is attached as Exhibit 19. The location of the proposed transaction is "New York, USA." (*Id.*) The terms provide that upon the alleged seller's approval of buyer, seller will visit "New York, USA" for the inspection of the diamonds and the consummation of the transaction. (*Id.*)

65.     Defendant Pichel's October 2010 "Letter of Intent" (Exhibit 19) contained a counterfeit of Plaintiffs' GUGGENHEIM Marks. The letter also contained multiple false claims of affiliations with Plaintiffs, including that Defendant Pichel represents Mr. Vladimir Z. Guggenheim and the "Guggenheim Fund."

66.     Plaintiffs did not create or distribute the October 2010 letter of intent (Exhibit 19) or authorize any individual or entity to do so, and have nothing to do with the proposal.

**SECOND AMENDED COMPLAINT**          - 20 -

67.     Defendant Pichel's October 23, 2010 emails (Exhibit 18), which bear a counterfeit of Plaintiffs' GUGGENHEIM Marks, also attaches a "Master Fee Protection Agreement and Irrevocable Corporate Payment Order" with a Transaction code "PICHEL/GUGGENHEIM/DIAMONDS/NY/2010." A true and correct copy of this "Master Fee Protection Agreement" is attached as Exhibit 20. Defendants' "Master Fee Protection Agreement" contained a counterfeit of Plaintiffs' GUGGENHEIM Marks. Defendants' "Master Fee Protection Agreement" purports to be for the sale of rough diamonds and lists the "Guggenheim Fund" as the "owner and seller," and "Mr. Eli Pichel" as the "fiduciary" and "seller side beneficiar[y]." The location of the proposed transaction is "New York, USA." (Id.) Defendants' "Master Fee Protection Agreement" contains multiple false claims of affiliations with Plaintiffs, including that Defendant Pichel is the fiduciary of the "Guggenheim Fund." (Id.)

68.     Plaintiffs did not create or distribute the "Master Fee Protection Agreement and Irrevocable Corporate Payment Order" (Exhibit 20) or authorize any individual or entity to do so, and have nothing to do with the proposal. Plaintiffs have never authorized Defendants to use Plaintiffs' GUGGENHEIM Marks in any manner, let alone in connection with the sale of diamonds or any other commodity.

**Other Fraudulent Acts**

69.     On or about October 8, 2010, Defendants sent an email containing multiple counterfeits of Plaintiffs' GUGGENHEIM Marks in order to attempt to enter a business relationship with President George H.W. Bush and President George W. Bush. A true and correct copy of Defendants' email communication is shown in the email chain attached as Exhibit 13 (see October 8, 2010 email stamped 5:30 p.m.). The email communication, from Defendant Toumei, states:

"I noticed in your attached bio that there are several photos of you with the Bushes. If you have a current relationship with them, please let them know that the **Guggenheim Fund** and **Guggenheim Bank** are at their disposal. **Messrs. Guggenheim respect their family very much and would be very interested in discussing any kind of financial, new technology, humanitarian or political projects, in which the Guggenheims can do the funding.** I can at any time ~ 24/7 (except for the Sabbath) ~ get Mr. David B. Guggenheim on the phone to speak with either President Bush, or pass on a HLS secure phone line for them to call."

(Exhibit 13 (emphasis added).)  Defendants' email contains several false claims and impressions, including that Defendants are connected with Plaintiffs through the "Guggenheim Fund" and "Guggenheim Bank."

70.     Plaintiffs did not create or distribute the October 8, 2010 email (*see* Exhibit 13) or authorize any individual or entity to do so, and have nothing to do with the email.

71.     Also on October 11, 2010, Defendant Toumei sent an email, attaching a letter to be forwarded to the Bush family.  A true and correct copy of that email is shown in the email chain shown in Exhibit 21.  Defendant Toumei stated that the letter "should be very sufficient in setting up a meeting" with the Bush family.  The letter attached to Defendant Toumei's email communication is dated October 10, 2010, appears on letterhead that contains a counterfeit of Plaintiffs' GUGGENHEIM Marks, and is signed by Defendant "Lady Catarina Toumei." Moreover, Defendants' counterfeit mark uses the same distinctive purple color that Plaintiffs use for their GUGGENHEIM Marks.  A true and correct copy of that letter is attached as Exhibit 22. Defendant's letter states:

"**Messrs. Guggenheim are owners of the Guggenheim Museums, Guggenheim Foundation, and the privately-owned Guggenheim Fund and Guggenheim Bank**.  Mr. David B. Guggenheim is a major shareholder of six of the top international banks, and a majority owner of China National Petroleum (along with the Chinese government). Additionally, Messrs. Guggenheim are large contributors to Home Land Security and the U.S. Army.  They are currently working at a

**SECOND AMENDED COMPLAINT**        - 22 -

governmental level with several countries, which can be discussed in person."

(*Id.* (emphasis added).)  Defendants' letter concludes by stating that "[t]he Bush family is always invited to Manhattan where they will be a guest of the Guggenheims, at any time." (*Id.*) Defendants' letter contained several false claims and false implications, including that Defendants are connected with Plaintiffs through the Guggenheim Fund or the Guggenheim Bank.

72.     Plaintiffs did not create or distribute the October 10, 2010 letter (Exhibit 22) or authorize any individual or entity to do so, and have nothing to do with the proposal.

73.     On or about November 29, 2010, Defendant Dabir and Defendant Birnbaum filed U.S. Trademark Application Serial No. 85/186314 with the U.S. Patent and Trademark Office, in a fraudulent effort to register the trademark GUGGENHEIM for a wide array of financial services.  Plaintiffs did not learn of the application until January 2011, and did not authorize Defendant Birnbaum, Defendant Dabir or anyone else to file it.

> "**Messrs. [David B. and Validmir Z.] Guggenheim** are major shareholders in several of the top 10 international banks, and work full time in the international banking and oil at the government level.  **Messrs. Guggenheim own and run the <u>Guggenheim Foundation</u>, and the privately-held <u>Guggenheim Bank</u>, <u>Guggenheim Fund</u>. . .**"

(*Id.* (emphasis added).)  Defendants' letter concludes by inviting Mr. Murdoch to "discuss potential business with the Guggenheims" by calling David B. Guggenheim and Vladimir Z. Guggenheim at the telephone number (858) 504-1556.  (*Id.*)  Further, the letter states that "Messrs. Guggenheim extend an invitation for you to be their guest for dinner in Manhattan, during the month of October, at your convenience." (*Id.*)  Defendants' letter contained multiple false claims and implications, including that: (a) Defendant Toumei is the "Investment Relations Manager" of the purported "Guggenheim Fund"; (b) Defendant Birnbaum is "Chairman" of the

**SECOND AMENDED COMPLAINT**        - 23 -

purported "Guggenheim Bank"; (c) Defendant Zuravel is "President" of the purported

"Guggenheim Bank"; and (d) Defendants are connected with Plaintiffs through the Guggenheim

Fund or the Guggenheim Bank. The telephone letter listed in the letter (Exhibit 23) is registered

to Defendant Toumei.

74.     Plaintiffs did not create or distribute the September 20, 2010 letter (Exhibit 23)

or authorize any individual or entity to do so, and have nothing to do with the proposal.

**Defendants' Cyberpiracy**

75.     On or about May 28, 2010, Defendant Toumei registered the domain name

*guggenheimadvisors.org*, listing "Lady Catarina Toumei" as the registrant and administrative

and technical contact. A true and correct copy of the WhoIs record for that domain name is

attached as Exhibit 24. Defendants use the domain name to direct to a website that purports to

offer online information, advice and services concerning finance, banking and investments,

including investments in various commodities. A true and correct copy of a print-out from the

home page of that website is attached as Exhibit 25.

76.     Among other things, the website contains multiple postings from Defendant

Toumei. (*See* Exhibit 25.) Defendants' use of Plaintiffs' GUGGENHEIM and GUGGENHEIM

ADVISORS marks in their domain name *guggenheimadvisors.org* directing to the website

described above and shown in Exhibit 25 creates the false impression that Defendants'

investment opportunities originate from Plaintiffs.

77.     When one selects the link titled "About Us," on the homepage of Defendants'

website located at *guggenheimadvisors.org*, one is redirected to a website located at

*http://oilandcommodities.webs.com/*. A true and correct copy of a print-out from that website is

attached as Exhibit 26. That website contains content identical to that available at Defendants'

**SECOND AMENDED COMPLAINT**     - 24 -

website *http://guggenheimadvisors.org*. The "About Us" page, available at

*http://oilandcommodities.webs.com/aboutus.htm*, purports to provide biographical information

about Defendant Toumei.

78.     Defendants are not making a fair use or noncommercial use of Plaintiffs' marks

GUGGENHEIM and GUGGENHEIM ADVISORS in the domain name directing to Defendants'

website described above and shown in Exhibit 25.  Defendants are making commercial, for-

profit use of Plaintiffs' marks in Defendants' domain name directing to the site, as Defendants'

site purports to offer online information, advice and services concerning finance, banking and

investments, advertising Defendant Toumei as the "Investment Relations Manager" for

Defendants' commercial venture.

79.     Plaintiffs did not register the domain name *guggenheimadvisors.org* or create

the website located at *guggenheimadvisors.org*, or authorize any individual or entity to do so,

and have nothing to do with that website.

80.     Further, Defendants are distributing investment materials to consumers by using

at least one email address ending in *guggenheimadvisors.org*, namely,

catarina@guggenheimadvisors.org.  (*See* page 2 of Exhibit 7; page 2 of Exhibit 11; and Exhibit

12.) Defendants' use of Plaintiffs' GUGGENHEIM and GUGGENHEIM ADVISORS marks in

email addresses used to distribute purported investment materials to consumers creates the false

impression that Defendants' investment opportunities originate from Plaintiffs.

81.     Plaintiffs have not distributed any materials from email addresses ending in

*guggenheimadvisors.org*, nor have they authorized any individual or entity to do so, and have

nothing to do with emails sent from email addresses ending in *guggenheimadvisors.org*,

including, without limitation, the email address catarina@guggenheimadvisors.org.

**SECOND AMENDED COMPLAINT**          - 25 -

**Actual Confusion Is Occurring**

82.     On account of Defendants' unauthorized use of Plaintiffs' GUGGENHEIM

Marks, consumers falsely believe that Plaintiffs stand behind the financial consultation and

investment services that are being offered by Defendants.  Indeed, Plaintiffs have received

numerous communications from individuals who thought they were dealing with Plaintiffs when

in fact they were dealing with Defendants.  *See* Declarations of Laurence Carroll and Jeffrey

Barnett, submitted herewith.)  For example, in response to Defendants' purported offer to sell

diamonds on behalf of the "Guggenheim Fund," shown in Exhibit 18, a customer emailed

Plaintiffs on November 16, 2010, and stated his desire and intent to purchase diamonds from

Plaintiffs.  A true and correct copy of that email communication is Attached as Exhibit 27.

83.     Plaintiffs have also received numerous inquiries from individuals in the

financial and investment industries reflecting that they were confused as to whether Defendants

are Plaintiffs and as to Plaintiffs' affiliation with and endorsement of Defendants.  For example,

Plaintiffs have received email inquiries inquiring whether Defendants' "letter of intent" for the

purported purchase of crude oil, attached as Exhibit 7, is a transaction sponsored by Plaintiffs or

not. (*See* Declarations of Laurence Carroll and Jeffrey Barnett.)

84.     Defendants are advertising and offering investment services and opportunities

under marks that are identical and confusingly similar to Plaintiffs' Guggenheim Marks

including, without limitation, GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM

ADVISORS, GUGGENHEIM FUND, GUGGENHEIM BANK and GUGGENHEIM

ADVISORS.

85.     Defendants' unauthorized use of marks confusingly similar to Plaintiffs'

GUGGENHEIM Marks is designed to cause confusion, mistake or deception.

**SECOND AMENDED COMPLAINT**        - 26 -

86.     Defendants' acts were undertaken with the intent to trade upon the goodwill and recognition associated with Plaintiffs' GUGGENHEIM Marks.

87.     On account of Defendants' unauthorized use of Plaintiffs' GUGGENHEIM Marks, consumers falsely believe that Plaintiffs stand behind the financial consultation and investment services that are being offered by Defendants.

88.     Although Defendants may purport to operate by, through, or on behalf of business organizations, such organizations are specious and used merely to cover personal or joint ends, rather than corporate ends, that Defendants have a unity of interest and ownership such that the separate personalities of any involved corporations and individuals do not exist, and that if the acts are treated as those of the involved corporations or business organizations alone, an inequitable result will follow.

89.     Defendants' acts have caused damage and irreparable injury to Plaintiffs and the public, and will cause further damage and irreparable injury if Defendants are not restrained by the Court.

90.     Plaintiffs have received communications showing that Defendants' email addresses include: (1) Defendant Toumei, ladycatarinapietra@gmail.com; catarina@guggenheimadvisors.org; catarinafrederick@sbcglobal.net; cat@bestsellingwriter.net; and cpcount@aol.com; (2) Defendant Zuravel, vz@vzltd.com and vsvzus@live.com; and (3) Defendant Pichel, pichelconsultancy@yahoo.com and pichelconsultancy@attglobal.net. (*See* Exhibits __ - __.)

91.     Defendant Toumei has an outstanding tax lien with the state of Hawaii for over $30,000. (*See* Exhibit 28.)

**SECOND AMENDED COMPLAINT**          - 27 -

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF FEDERALLY REGISTERED
## TRADEMARKS (15 U.S.C. § 1114(1)(a))

92.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

93.     Plaintiffs own federally registered GUGGENHEIM Marks for financial consultation and investment services.

94.     Defendants are using in commerce marks identical and substantially identical to Plaintiffs' federally registered GUGGENHEIM Marks to offer a variety of for financial consultation and investment services.

95.     Defendants' use of Plaintiffs' GUGGENHEIM Marks for Defendants' products and services is likely to confusion, mistake or deception as to source, origin, affiliation, connection or association, in violation of 15 U.S.C. § 1114.

96.     Defendants had actual and constructive knowledge of Plaintiffs' ownership of Plaintiffs' federally registered GUGGENHEIM Marks prior to Defendants' use of those marks.

97.     Defendants' acts constitute knowing, deliberate and willful infringement of Plaintiffs' federally registered GUGGENHEIM Marks and render this an "exceptional case" under 15 U.S.C. § 1117(a).

98.     Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with Plaintiffs' GUGGENHEIM Marks.

99.     Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' willful infringement of Plaintiffs' GUGGENHEIM Marks.

**SECOND AMENDED COMPLAINT**         - 28 -

100.     Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparably injury and harm, for which they have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### TRAFFICKING IN COUNTERFEIT MARKS
### (15 U.S.C. § 1114)

101.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

102.     Plaintiffs own federal registrations for Plaintiffs' GUGGENHEIM Marks.

103.     Defendants offer financial consultation and investment services in commerce under Plaintiffs' GUGGENHEIM Marks and marks that are virtually identical to Plaintiffs' GUGGENHEIM Marks. Defendants' use of Plaintiffs' federally registered GUGGENHEIM Marks or marks that are virtually identical to those marks for the products and services identified in Plaintiffs' registration certificates constitutes the knowing use of counterfeit marks in violation of 15 U.S.C. § 1114(1).

104.     Defendants' knowing use of counterfeit marks in the trafficking and/or attempted trafficking in counterfeit services is likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association of Defendants' products and services.

105.     Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with Plaintiffs' GUGGENHEIM Marks.

106.     Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' counterfeiting of Plaintiffs' GUGGENHEIM Marks.

107.    Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparably injury and harm, for which they have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### FEDERAL TRADEMARK DILUTION
### 15 U.S.C. § 1125(c)

108.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

109.    Plaintiffs' GUGGENHEIM Marks are famous and distinctive.

110.    Defendants commenced use of Plaintiffs' GUGGENHEIM Marks in commerce after those marks had become famous and distinctive.

111.    By using Plaintiffs' GUGGENHEIM Marks in connection with schemes to defraud consumers, Defendants have injured Plaintiffs' business reputation, blurred and tarnished the distinctive quality of Plaintiffs' GUGGENHEIM Marks, and lessened the capacity of Plaintiffs' famous GUGGENHEIM Marks to identify and distinguish Plaintiffs' goods and services, in violation of 15 U.S.C. § 1125(c).

112.    Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with the GUGGENHEIM Marks.

113.    Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparably injury and harm, for which they have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### FEDERAL CYBERPIRACY
### 15 U.S.C. § 1125(d)

114.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

115.     Defendants have registered, trafficked in and used the domain name *guggenheimadvisors.org*.

116.     Defendants' domain name *guggenheimadvisors.org* incorporates Plaintiffs' federally registered GUGGENHEIM mark and GUGGENHEIM ADVISORS mark in their entireties.  Defendants' domain name is identical to and confusingly similar to Plaintiffs' GUGGENHEIM Marks.

117.     Defendants registered and are using the domain name *guggenheimadvisors.org* without Plaintiffs' authorization and in a bad faith intent to profit from Plaintiffs' GUGGENHEIM Marks and to deceive consumers, in violation of 15 U.S.C. § 1125(d).

118.     Plaintiffs' GUGGENHEIM Marks were distinctive and famous at the time Defendants registered the domain name *guggenheimadvisors.org* and remain so today.

119.     Defendants' domain name *guggenheimadvisors.org* does not resolve to a website owned by Plaintiffs.  Rather, it resolves to a website controlled by Defendants.

120.     Defendants knew that their use of the domain name *guggenheimadvisors.org* is not fair use and is unlawful.

121.     Defendants' unlawful registration and use of *guggenheimadvisors.org* infringes Plaintiffs' GUGGENHEIM Marks and irreparably injures Plaintiffs' business, reputation and goodwill.  Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public

**SECOND AMENDED COMPLAINT**          - 31 -

will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
**FALSE ADVERTISING**
**15 U.S.C. 1125(a)**

122.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

123.    Defendants are making false and misleading statements that Defendants and their products and services are affiliated with, sponsored by, or endorsed by Plaintiffs, and those statements are material in the purchasing decision or concern a critical attribute of those products and services.

124.    Defendants' knowing and intentional express and/or implied falsehoods that their products and services are sponsored, endorsed, or otherwise connected with Plaintiffs' services constitute false descriptions or representations of fact, in violation of 15 U.S.C. § 1125(a).

125.    Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with Plaintiffs' Guggenheim Marks.

126.    Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' false advertising.

127.    Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparably injury and harm, for which they have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(a)

128.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

129.     Defendants' acts constitute unfair competition and false designation of origin because they are likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association between Defendants and Defendants' counterfeit services, on the one hand, and Plaintiffs and Plaintiffs' GUGGENHEIM Marks, on the other hand.

130.     Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with Plaintiffs' GUGGENHEIM Marks.

131.     Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' unfair competition and false designation of origin.

132.     Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
## FEDERAL CIVIL RICO VIOLATIONS
### 18 U.S.C. § 1962(c)

133.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

134.     Defendants' scheme was carried out by an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), consisting of an ongoing association-in-fact, which included Defendants and others.  The members of the enterprise were a continuing unit in a particular course of fraudulent conduct by working together in furtherance of their common goal of defrauding

**SECOND AMENDED COMPLAINT**          - 33 -

consumers into investing money and purchasing products and services under false pretenses through a pattern of racketeering involving wire fraud, mail fraud and trafficking in counterfeit GUGGENHEIM marks. Defendants constitute an enterprise engaging in a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

135.    Defendant Toumei is an individual "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c) who associated with, and/or conducted and participated, directly and indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

136.    Defendant Zuravel is an individual "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c) who associated with, and/or conducted and participated, directly and indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

137.    Defendant Birnbaum is an individual "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c) who associated with, and/or conducted and participated, directly and indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

138.    Defendant Pichel is an individual "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c) who associated with, and/or conducted and participated, directly and indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

139.    Defendant Pardo is an individual "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c) who associated with, and/or conducted and participated, directly and

indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

140.    Each of the Doe Defendants is an individual "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c) who associated with, and/or conducted and participated, directly and indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

141.    As a necessary component of the execution of Defendants' scheme to defraud consumers, Defendants have conducted or participated, directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity including, but not limited to, multiple instances of wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and trafficking in counterfeits of Plaintiffs' GUGGENHEIM Marks (15 U.S.C. § 1114).

142.    Defendants engaged in wire fraud in violation of 18 U.S.C. § 1341 by using the Internet and telephone to make, or cause to be made, false, fraudulent and misleading representations in order to execute their scheme to induce consumers and investors to make payments and engage in illegitimate commercial transactions. In particular:

a) From approximately May 28, 2010 through July 13, 2010, Defendant Toumei used the Internet in multiple attempts to solicit a fraudulent letter of intent, to an unknown number of persons, containing multiple counterfeit GUGGENHEIM marks, towards the purchase of a crude oil contract on behalf of Vladimir Z. Guggenheim and David B. Guggenheim, allegedly members of the Guggenheim family. (*See* Exhibit 7.)

b) On or about June 10, 2010, Defendants used the Internet in attempts to solicit a fraudulent "letter of intent," containing multiple counterfeit GUGGENHEIM marks, addressed to "EGC Corp., c/o Dr. Fadi Noah and Michael Donovan," towards the purchase of a crude oil contract on behalf of Vladimir Z. Guggenheim, allegedly a member of the Guggenheim family. (*See* Exhibit 8.)

c) Between January 2010 through October 2010, Defendants used the Internet to distribute an email containing purported terms towards a fraudulent transaction

**SECOND AMENDED COMPLAINT**        - 35 -

towards the sale of crude oil, to an unknown number of persons, on behalf of a "Mr. Guggenheim" of the Guggenheim family. (*See supra*, ¶ 36.)

d) On or about July 7, 2010, Defendant Toumei used the Internet in attempts to solicit a fraudulent "Gold Purchase Agreement" on behalf of Vladimir Z. Guggenheim, allegedly a member of the Guggenheim family. (*See* Exhibit 9.)

e) On or about July 10, 2010, Defendants used the Internet in attempts to solicit a fraudulent "Gold Purchase Agreement" to an unknown number of persons, on behalf of Vladimir Z. Guggenheim, allegedly a member of the Guggenheim family. (*See* Exhibit 9.)

f) Between approximately August through September 2010, Defendants, including, without limitation, Defendant Toumei, Defendant Zuravel and Defendant Birnbaum, made multiple telephone calls to The Coca-Cola Company, seeking to partner towards investments, falsely claiming to represent and be connected with Plaintiffs and part of the Guggenheim family. (*See* Exhibit 10.)

g) On or about September 28, 2010, Defendant Toumei used the Internet in attempts to solicit a fraudulent letter of intent towards the sale of "Bank Guarantees" to a Chad Geren, on behalf of the non-existent "Guggenheim Fund," and David B. Guggenheim and Vladimir Z. Guggenheim, allegedly members of the Guggenheim family. (*See* Exhibit 11.)

h) On or about September 28, 2010, Defendants used the telephone in attempts to fraudulently induce Chad Geren to enter into a business relationship by falsely claiming to be connected to Plaintiffs and/or the Guggenheim family. (*See* ¶ ___.)

i) On or about October 9, 2010, Defendant Toumei used the Internet to distribute an email containing purported terms towards a fraudulent transaction for the sale of bank guarantees, to an unknown number of persons, on behalf of the purported "Guggenheim Fund and a "Mr. Guggenheim" of the Guggenheim family. (*See* Exhibit 13.)

j) On or about October 10, 2010, Defendants used the telephone in attempts to fraudulently potential investors to into a business relationship with Defendants by falsely claiming to be connected to Plaintiffs and/or the Guggenheim family. (*See* Exhibit 13.)

k) On or about October 11, 2010, Defendants used the Internet to distribute emails purporting to solicit letters of intent towards sales of diamonds, to an unknown number of persons, on behalf of the purported "Guggenheim Fund." (*See* Exhibits 1, 14-15.)

**SECOND AMENDED COMPLAINT**          - 36 -

l) On or about October 12, 2010, Defendants Toumei and Zuravel used the Internet to distribute a letter of intent towards the sales of diamonds, to a Mr. Chris Brown, on behalf of the purported "Guggenheim Fund." (*See* Exhibits 14, 17.)

m) On or about October 23, 2010, Defendant Pichel used the Internet to distribute emails containing purported terms towards a fraudulent transaction for the sale of diamonds, to an unknown number of persons, on behalf of the purported "Guggenheim Fund." (*See* Exhibit 18.)

n) On or about October 23, 2010, Defendant Pichel used the Internet to distribute a letter of intent and "Master Fee Protection Agreement and Irrevocable Corporate Payment Order" towards a fraudulent transaction for the sale of diamonds, to an unknown number of persons, on behalf of the purported "Guggenheim Fund." (*See* Exhibits 19-20.)

o) On or about October 8, 2010, Defendant Toumei used the Internet to send emails containing several false representations concerning Defendants' association with Plaintiffs and the Guggenheim family in attempts to enter a business relationship with former Presidents George H.W. Bush and George W. Bush. (*See* Exhibit 21.)

p) On or about October 10, 2010, Defendants used the Internet to distribute a letter on behalf of the purported "Guggenheim Fund" in attempts to enter a business relationship with former Presidents George H.W. Bush and George W. Bush. (*See* Exhibit 22.)

q) On or about October 8, 2010, Defendant Toumei used the Internet to send an email containing several false representations concerning Defendants' association with Plaintiffs and the Guggenheim family in attempt to enter a business relationship with Rupert Murdoch, CEO of New Corporation. (*See* Exhibit 23.)

143.    Defendants engaged in mail fraud and trafficking of counterfeit GUGGENHEIM trademarks by using marks identical to Plaintiffs' GUGGENHEIM marks in connection with Defendants' offering of alleged financial consultation and investment services. For example, Defendants incorporated counterfeit GUGGENHEIM marks in the following communications:

a) May 28, 2010 letter soliciting fraudulent purchase of crude oil contract (*See* Exhibit 7);

b) June 10, 2010 fraudulent "letter of intent" soliciting fraudulent purchase of crude oil contract (*See* Exhibit 8);

**SECOND AMENDED COMPLAINT**        - 37 -

c) July 10, 2010, fraudulent "Gold Purchase Agreement" (*See* <u>Exhibit 9</u>);

d) September 28, 2010 fraudulent letter of intent towards the sale of non-existent "Bank Guarantees (*See* <u>Exhibit 11</u>);

e) October 8, 2010 email attempting to enter into a business relationship with President George H.W. Bush and President George W. Bush on behalf of the Guggenheim family (*See* <u>Exhibit 13</u>);

f) October 12, 2010 letter to "Chris Brown," signed by Defendant Toumei, soliciting fraudulent sale of diamonds (*See* <u>Exhibit 14</u>);

g) October 12, 2010 letter of intent to "Chris Brown," signed by Defendant Zuravel, soliciting fraudulent sale of diamonds. (*See* <u>Exhibit 17</u>);

h) October 23, 2010 email from Defendant Pichel soliciting fraudulent sale of diamonds (*See* <u>Exhibit 18</u>);

i) October 2010 "letter of intent" to "Guggenheim Fund, Attn. Mr. Vladmir Guggenheim, C/O Mr. E. Pichel," toward fraudulent sale of diamonds (*See* <u>Exhibit 19</u>);

j) October 2010 "Master Fee Protection Agreement" for fraudulent rough diamond transaction (*See* <u>Exhibit 20</u>); and

k) October 10, 2010 fraudulent letter to "Robert K. Goodwin," seeking to enter into a business relationship with President George H.W. Bush and President George W. Bush on behalf of the purported "Guggenheim Fund (*See* <u>Exhibit 22</u>).

l) October 8, 2010 email to "Rupert Murdoch, Chairman and CEO, News Corporation." (*See* Exhibit 23.)

144.    Further, Defendants have used counterfeit marks identical to or substantially

indistinguishable from Plaintiffs' GUGGENHEIM Marks in connection with Defendants'

offering of alleged financial consultation and investment services through Defendants' website at

*guggenheimadvisors.org.*

145.    Defendants made false, fraudulent, or misleading statements through the acts

described above, or caused them to be made, with the intent to execute their scheme to defraud

**SECOND AMENDED COMPLAINT**     - 38 -

consumers into investing money based on a pattern of racketeering consisting of wire fraud, mail fraud, and trafficking in counterfeits of Plaintiffs' GUGGENHEIM Marks.

146.     Defendants knowingly used federally regulated wire communications, federal mails and trafficked in counterfeits of Plaintiffs' GUGGENHEIM Marks, for the purpose of executing their scheme to defraud consumers into investing money based on a pattern of racketeering consisting of wire fraud, mail fraud, and trafficking in counterfeit GUGGENHEIM Marks.

147.     The use of the federally regulated wire communications, federal mails, and trafficking in counterfeits of Plaintiffs' GUGGENHEIM Marks was essential and/or incident to essential parts of Defendants' scheme and artifice to execute their scheme to defraud consumers into investing money based on a pattern of racketeering consisting of wire fraud, mail fraud, and trafficking in counterfeits of Plaintiffs' GUGGENHEIM Marks.

148.     Defendants' multiple acts of racketeering activity were committed in the course of related fraudulent schemes and occurred within ten years of one another, constituting a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

149.     Defendants have violated 18 U.S.C. § 1962(c) and have conspired to violate 18 U.S.C. § 1962(c) through, among other things, a pattern of racketeering activity, including mail fraud and trafficking in counterfeit GUGGENHEIM marks.

150.     As a direct and proximate result of, and by reason of Defendant's pattern of racketeering activity, Plaintiffs have been injured within the meaning of 18 U.S.C. § 1964(c). Among other things, Defendants are likely to have diverted potential investors from Plaintiffs' services and have irreparably injured Plaintiffs' reputation and goodwill.

**SECOND AMENDED COMPLAINT**          - 39 -

151.    On account of Defendants' violations of 18 U.S.C. § 1963(c), Plaintiffs have

suffered or are likely to suffer actual economic harm, including lost sales of their financial

advising services, professional fees incurred in investigating Defendants' misconduct, reasonable

attorney's fees and costs, and Plaintiffs' reputation and goodwill have been tarnished.

152.    Unless Defendants are permanently enjoined, they will continue to engage in a

pattern of racketeering activity, including wire fraud and the trafficking of counterfeits of

Plaintiffs' GUGGENHEIM Marks in violation of 18 U.S.C. § 1343 and 15 U.S.C. § 1114.

**EIGHTH CLAIM FOR RELIEF**
**NEW YORK TRADEMARK INFRINGEMENT**

153.    Plaintiffs reallege and incorporate each and every allegation contained in the

paragraphs above as though fully set forth herein.

154.    Plaintiffs used their GUGGENHEIM  Marks long before Defendants'

unauthorized use of Defendants' confusingly similar and counterfeit marks.

155.    Defendants are using in commerce marks identical and confusingly similar to

Plaintiffs' GUGGENHEIM Marks in connection with the offering of financial consultation and

investment services.

156.    Defendants have willfully traded on Plaintiffs' goodwill in Plaintiffs'

GUGGENHEIM Marks and the reputation Plaintiffs have established in connection with their

products and services, as well as confused consumers as to the origin of Defendants' services and

passed off their products and services as those of Plaintiffs.

157.    Defendants' infringement is likely to cause confusion, mistake, or deception as

to source, origin, affiliation, connection, or association of Defendants' goods and services,

constituting trademark infringement under the laws of New York.

**SECOND AMENDED COMPLAINT**         - 40 -

158.     Plaintiffs have suffered damages and Defendants have obtained profits and/or

unjust enrichment as a result of Defendants' infringement of Plaintiffs' GUGGENHEIM Marks.

159.     Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill.

Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will

continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

### NINTH CLAIM FOR RELIEF
### NEW YORK TRADEMARK DILUTION
### N.Y. Gen. Bus. Law § 360-I

160.     Plaintiffs reallege and incorporate each and every allegation contained in the

paragraphs above as though fully set forth herein.

161.     Plaintiffs' GUGGENHEIM Marks are famous and distinctive.

162.     Defendants commenced use of Plaintiffs' GUGGENHEIM Marks in commerce

after those marks had become famous and distinctive.

163.     By using Plaintiffs' GUGGENHEIM Marks in connection with schemes

intended to defraud consumers and in connection with counterfeit products and services,

Defendants have caused a likelihood of injury to business reputation and have diluted the

distinctive quality of Plaintiffs' GUGGENHEIM Marks, in violation of N.Y. Gen. Bus. Law §

360-I.

164.     Defendants' acts have caused Plaintiffs to lose control over the reputation and

goodwill associated with Plaintiffs' GUGGENHEIM Marks.

165.     Defendants' acts have irreparably injured Plaintiffs' business, reputation and

goodwill.  Unless Defendants are enjoined from their wrongful conduct, Plaintiffs will continue

to suffer irreparably injury and harm, for which they have no adequate remedy at law.

**SECOND AMENDED COMPLAINT**          - 41 -

## TENTH CLAIM FOR RELIEF
## DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW
### N.Y. Gen. Bus. Law § 349

166.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

167.     By using Plaintiffs' GUGGENHEIM Marks in connection with schemes intended to defraud consumers and in connection with counterfeit products and services, Defendants have engaged in activities that are deceptive and misleading in violation of N.Y. Gen. Bus. Law § 349.

168.     Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with their GUGGENHEIM Marks.

169.     Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' deceptive acts and practices.

170.     Defendants' deceptive acts and practices have harmed the public at large.

171.     Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

## ELEVENTH CLAIM FOR RELIEF
## FRAUD

172.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above as though fully set forth herein.

173.     Defendants made false representations and material misrepresentations to consumers with the intent of deceiving and defrauding consumers and of inducing consumers to transfer monies to Defendants under the false pretense that Defendants were Plaintiffs or connected with Plaintiffs.

**SECOND AMENDED COMPLAINT**          - 42 -

174.   Defendants knew of the falsity of their misrepresentations when made, and at the time Defendants made the misrepresentations, Defendants made them with the intent of defrauding consumers and of inducing consumers to transfer monies to Defendants.

175.   Defendants knew that their falsehoods were material and would be reasonably relied upon by consumers.

176.   On information and belief, consumers believed Defendants' falsehoods were true and reasonably relied upon them.

177.   Defendants' acts have caused Plaintiffs to lose control over their reputation and goodwill.

178.   Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' fraud.

179.   Defendants' acts irreparably injure Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

**SECOND AMENDED COMPLAINT**          - 43 -

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs Guggenheim Capital, LLC and Guggenheim Partners, LLC pray for judgment against Defendants as follows:

A.   That the Court enter judgment against Defendants, jointly and severally, and against Defendants on all claims for relief alleged herein, and declare that:

1.   Defendants have willfully infringed Plaintiffs' rights in their federally registered GUGGENHEIM Marks in violation of 15 U.S.C. § 1114;

2.   Defendants have engaged in knowing and willful use of counterfeits of Plaintiffs' GUGGENHEIM Marks in violation of 15 U.S.C. § 1114(1);

3.   Defendants have diluted Plaintiffs' famous GUGGENHEIM Marks in violation of 15 U.S.C. § 1125(c);

4.   Defendants have registered and used, in bad faith, the domain name *guggenheimadvisors.org*, intending to profit from Plaintiffs' goodwill and reputation in Plaintiffs' GUGGENHEIM Marks, in violation of 15 U.S.C. § 1125(d);

5.   Defendants have willfully engaged in false advertising in violation of 15 U.S.C. § 1125(a);

6.   Defendants have unfairly competed with Plaintiffs in violation of 15 U.S.C. § 1125(a);

7.   Defendants have knowingly participated in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

8.   Defendants have willfully infringed Plaintiffs' GUGGENHEIM Marks in violation of the common law of the state of New York;

9.    Defendants have caused a likelihood of injury to Plaintiffs' business

reputation and diluted the distinctive quality of Plaintiffs'

GUGGENHEIM Marks in violation of N.Y. Gen. Bus. Law § 360-I;

10.    Defendants have engaged in deceptive acts and practices in violation of

N.Y. Gen. Bus Law § 349; and

11.    Defendants have engaged in fraud in violation of New York law.

B.    That this Court grant a nationwide temporary restraining order and preliminary
and permanent injunction enjoining Defendants and each of their respective partners, owners,
officers, directors, associates, agents, servants, employees, attorneys, successors and assigns, and
all other persons acting in active concert or participation with them who receive actual notice of
this Court's order, judgment or decree, from:

1.    Using Plaintiffs' GUGGENHEIM Marks alone or in combination with any

other mark, term, symbol, designation or design, or any term that is

confusingly similar to Plaintiffs' GUGGENHEIM Marks, including, but

not limited to, use of:

- "Guggenheim";

- "Guggenheim Capital";

- "Guggenheim Partners";

- "Guggenheim Fund;"

- "Guggenheim Advisors;"

- "Guggenheim Investment Advisors";

- "Guggenheim Real Estate Advisors";

- "Guggenheim Brothers";

**SECOND AMENDED COMPLAINT**        - 45 -

- "Guggenheim Securities";

- "Vladimir Z. Guggenheim";

- "David B. Guggenheim";

- "Mr. Guggenheim" or "Messrs. Guggenheim";

- "Guggenheim family";

- "Guggenheims";

- "Guggenheim Foundation";

- "Guggenheim Museums";

- "The Solomon R. Guggenheim Museum";

- "The Peggy Guggenheim Collection";

- "The Guggenheim Museum Bilbao";

- "Deutsche Guggenheim";

- "Guggenheim Abu Dhabi";

- "Guggenheim bank"; and

- "Guggenheim private diamond collection."

2.     Using Plaintiffs' GUGGENHEIM Marks alone or in combination with any

other trademark, term, symbol or design, or any term that is confusingly

similar to Plaintiffs' GUGGENHEIM Marks, including, without

limitation, the terms listed in Section A(1), above, in connection with the

advertising or rendering of any products or services;

3.     Registering or using any domain name incorporating GUGGENHEIM,

any of Plaintiffs' GUGGENHEIM Marks, or any similar mark;

4.     Falsely designating the origin of Defendants' products or services;

**SECOND AMENDED COMPLAINT**          - 46 -

5.    Using any word, term, name, symbol or device, or any combination thereof, or any false designation of origin or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive regarding the origin, sponsorship or approval of Defendants' products or services or falsely to imply a connection or affiliation with Plaintiffs or Plaintiffs' GUGGENHEIM-branded products or services;

6.    Unfairly competing with Plaintiffs in any manner;

7.    Causing a likelihood of confusion with regard to the origin, sponsorship, affiliation, approval, connection of Defendants' products and services or injuring Plaintiffs' business reputation; and

8.    Associating together to offer financial or investment services or to engage in the same type of conduct or endeavor as the Enterprise has engaged in; and

C.    That the Court issue an Order granting the following relief:

1.    Requiring Defendants to deliver up for destruction all literature, advertising and any other material and things which infringe, dilute or otherwise violate Plaintiffs' GUGGENHEIM Marks, pursuant to 15 U.S.C. § 1118;

2.    Ordering the dissolution of all business entities that form part of Defendants' Enterprise;

3.    Ordering Defendants to transfer the domain name *guggenheimadvisors.org* to Plaintiffs, along with any other domains

**SECOND AMENDED COMPLAINT**        - 47 -

registered by or on behalf of Defendants that contain the word
GUGGENHEIM or any term confusingly similar thereto;

4.    Ordering Defendants to pay Plaintiffs statutory damages in the amount of
$100,000 for Defendants' violation of 15 U.S.C. § 1125(d)(1) (*See* 15
U.S.C. § 1117);

5.    Finding Defendants' Acts herein to be willful, that this case be deemed an
"exceptional" case pursuant to 15 U.S.C. § 1117, and that Plaintiffs be
entitled to treble damages pursuant to 15 U.S.C. § 1117, treble the unjust
enrichment profits made by Defendants pursuant to 15 U.S.C. § 1117 and
prejudgment interest;

6.    Awarding Plaintiffs statutory damages in the amount of Two Million
Dollars ($2,000,000) per counterfeit mark, per type of goods or services
Defendants' advertised or sold, pursuant to 15 U.S.C. § 1117(c);

7.    Awarding Plaintiffs treble damages for Defendants' violation of 18 U.S.C.
§ 1964(c);

8.    Awarding Plaintiffs their costs, attorneys' fees and expenses pursuant to
15 U.S.C. § 1117 and 18 U.S.C. § 1964(c);

9.    Ordering Defendants to send out a notice in a form that is acceptable to
Plaintiffs and the Court notifying all persons that received fraudulent and
misleading materials from Defendants that Defendants have been found
liable for willful violations of federal and state law concerning their
relationship with Plaintiffs and requiring Defendants to refund all monies
received from any person on account of Defendants' fraud;

**SECOND AMENDED COMPLAINT**        - 48 -

10.   Requiring Defendants to file with the Court and serve upon Plaintiffs within 30 days after service of the Court's order, judgment or decree as herein prayed, a written report detailing the manner and form in which Defendants have complied with the Court's order, judgment or decree;

11.   Awarding Plaintiffs punitive or exemplary damages as permitted by New York law;

12.   Ordering Defendants to expressly abandon and surrender U.S. Trademark Application Serial No. 85/186314; and

13.   Awarding Plaintiffs all other relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

## V.    DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all claims in this litigation.

Respectfully submitted,

January 14, 2011

Michael Shanahan (NY Bar. # 3971793)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173
(212) 547-5400 (telephone)
(212) 547-5444 (facsimile)

John J. Dabney (Admitted *pro hac vice*)
Robert W. Zelnick (*Pro hac vice* admission pending)
Rita Weeks (Admitted *pro hac vice*)
McDermott Will & Emery LLP
600 13th Street, NW
Washington, DC 20005
(202) 756-8000 (telephone)
(202) 756-8087 (facsimile)

*Attorneys for Plaintiffs*
*Guggenheim Capital, LLC and Guggenheim Partners, LLC*

WDC99 1967887-1.067276.0119

**SECOND AMENDED COMPLAINT**        - 50 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Second Amended Complaint

was served on January 14, 2011, via Fedex and/or e-mail transmission on counsel for Defendants

or Defendants as follows:

> Defendant Catarina Pietra Toumei
> 6136 Paseo Delicias
> Rancho Santa Fe, CA  92067
> ladycatarinapietra@gmail.com; catarina@guggenheimadvisors.org;
> cat@bestsellingwriter.net and cpcount@aol.com
>
> Defendant Vladimir Zuravel
> 63-10 Dieterle Crescent, New York, NY  11374
> vz@vzltd.com and vladimirzuravel@mail.ru
>
> Yitzchak E. Cohen, Esq.
> Law Offices of Yitzchak E. Cohen
> 420 Lexington Avenue, New York, NY  10170
> YCohen@Zlitigator.com
>
> Saskia van de Griek
> info@c-lawonline.com
>
> Jeffrey J. Pardo, Esq.
> Pardo Gainsburg, PL
> 2 South Biscayne Blvd.
> Suite 2475
> Miami, FL  33131

Amelia J. Crowley