UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUGGENHEIM CAPITAL, LLC, AND GUGGENHEIM PARTNERS, LLC,<br><br>                              Plaintiffs,<br><br>                   v.<br><br>CATARINA PIETRA TOUMEI, A/K/A LADY CATARINA PIETRA TOUMEI A/K/A CATARINA FREDERICK; VLADIMIR ZURAVEL A/K/A VLADIMIR GUGGENHEIM A/K/A VLADIMIR Z. GUGGENHEIM A/K/A VLADIMIR Z. GUGGENHEIM BANK; DAVID BIRNBAUM A/K/A DAVID B. GUGGENHEIM; ELI PICHEL; THEODOR PARDO; DABIR INTERNATIONAL, LTD., AND JOHN DOES 1-10,<br><br>                              Defendants. | Civil Action No. 10-CV-8830-PGG<br><br>Honorable Paul G. Gardephe<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF STATUTORY DAMAGES, ATTORNEYS" FEES AND COSTS
AGAINST DEFENDANTS TOUMEI, ZURAVEL AND PICHEL**

Plaintiffs Guggenheim Capital LLC and Guggenheim Partners, LLC ("Plaintiffs") submit this Memorandum in support of their Motion for an award of statutory damages and attorneys' fees and costs against Defendants Catarina Pietra Toumei, Vladimir Zuravel and Eli Pichel (collectively, "Defendants"). As shown below, the requested relief is justified because Plaintiffs prevailed on their trademark counterfeiting and cybersquatting claims under the Lanham Act, 15 U.S.C. § 1114(1), 1125(d).

**I.      STATEMENT OF FACTS**

      **A.      Procedural History**

            **1.      The Verified Complaint**

On November 22, 2010, Plaintiffs commenced this action. (*See* Dkt. No. 1, Ver. Compl.) As detailed in the Verified Complaint, Plaintiffs' firm is a premier diversified financial services company. (*Id*. ¶¶21-30.) Plaintiffs own federal trademark registrations for GUGGENHEIM and variations of that mark, e.g., GUGGENHEIM PARTNERS, for investment and financial consultation services. (*Id.* ¶¶19-21.) Defendants engaged in trademark counterfeiting by using GUGGENHEIM and substantially identical variations of that mark to pass off Defendants' financial services as Plaintiffs' financial services. (*Id.* ¶¶1-2, 19-87.) Defendants also engaged in cybersquatting by registering and using the domain name *guggenheimadvisors.org* to advertise and promote their bogus services. (*Id.* ¶¶19-87.)

### 2.   The Temporary Restraining Order ("TRO") and Defendants' Violations of the TRO

On November 22, 2010, the Court entered a Temporary Restraining Order ("TRO") enjoining Defendants from use of the GUGGENHEIM marks. (Dkt. No. 3.) The Court also ordered Defendants to produce discovery on a expedited basis. (*Id*.)

In early December 2010, Plaintiffs moved for orders of contempt against (i) Defendant Toumei for continuing to use the GUGGENHEIM marks and (ii) Defendants for refusing to produce discovery. (Dkt. Nos. 9, 14.) The Court issued Orders for Defendants to show cause why Defendants should not be held in contempt. (Dkt. Nos. 9, 33.) Defendants did not respond to the Court's Orders to show cause. (Dkt. No. 40, Order granting Default Judgment, at p. 4.)

On January 6, 2011, the Court entered an Order finding Defendant Toumei in contempt for continuing to use the GUGGENHEIM marks. (Dkt. No. 38.) The Court imposed a fine on Defendant Toumei of $50,000 per day beginning January 7, 2011 for every day that she failed to transfer the domain name *guggenheimadvisors.org* to Plaintiffs and awarded approximately $13,000 in costs and attorneys' fees. (*Id.*) On January 6, 2011, the Court entered an Order

finding Defendants in contempt for failing to produce discovery.  (Dkt. No. 36.)  The Court ordered Defendants to pay a fine of $5,000 per Defendant, per day, until Defendants produced the Court-ordered discovery and awarded $20,604.00 in costs and attorneys' fees.  (*Id.*)

### 3.  The Preliminary Injunction Order

On November 29, 2010, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendants from using the GUGGENHEIM marks.  (Dkt. Nos. 4, 8.)  Defendants did not oppose Plaintiffs' motion.  (*See* Dkt. 40, Order granting Default Judgment, at p. 4.)  On December 17, 2010, the Court held a hearing on Plaintiffs' motion and found that Plaintiffs produced substantial evidence to support each of their claims, including their trademark counterfeiting and cybersquatting claims.  (Dkt. 25 at p. 6.)  The Court thus entered a preliminary injunction enjoining Defendants from, among other things, using the GUGGENHEIM marks.  (*Id*. at pp. 5-6.)

### 4.  The Default Judgment Order

On account of Defendants' multiple and material violations of the TRO, as well as Defendants' failure to file Answers to the Verified Complaint, Plaintiffs sought default judgment.  (*See* Dkt. No. 6.)  On January 6, 2011, the Court entered default judgment against Defendants on the claims alleged in the Verified Complaint, including the trademark counterfeiting and cybersquatting claims arising under the Lanham Act.  (Dkt. No. 40 at p. 4.)  In so doing, the Court expressly found that Defendant had engaged in bad faith in the use of Plaintiffs' marks.  (*Id.*)  The Court permanently enjoined Defendants from any use of the GUGGENHEIM marks.  (*Id.* at pp. 5-6.)  Plaintiffs' motion for default did not seek, and the Court did not award, statutory damages, attorneys' fees or costs.  Plaintiffs now seek such an award.

### B.   Defendants' Counterfeiting Activities

#### 1.   Plaintiffs' Federally Registered GUGGENHEIM Trademarks

Plaintiffs own federally registered marks for GUGGENHEIM for "[p]roviding information, advice and consulting in the fields of finance, insurance, business, banking, asset management and investment; financial investment in the fields of securities, funds" and GUGGENHEIM PARTNERS for "[f]inancial consultation services, namely, providing information, advice and consulting in the fields of finance, banking, asset management and investment; financial investment in the fields of securities, funds." (Dkt. No. 1 ¶¶7-8.)[1] Those marks are famous. (Dkt. No. 25, Order granting Preliminary Injunction, ¶ 6.)

#### 2.   Defendants' Use Of Counterfeit GUGGENHEIM Marks

Defendants used counterfeits of Plaintiffs' federally registered GUGGENHEIM mark. (Dkt. No. 1 ¶¶10, 73-77.) This list shows Defendants use of counterfeit marks:

- Defendants' distribution of materials offering to sell "contracts for crude oil," which materials reflect Defendants' use of the following marks: **GUGGENHEIM**, **GUGGENHEIM PARTNERS** and **GUGGENHEIM ADVISORS**. (*Id.* ¶¶11-12 & Exs. 7-8 thereto.) Exhibits 7-8 to the Verified Complaint are attached as Exhibits A and B, with Defendants' counterfeit uses identified in yellow.

- Defendants' distribution of materials offering to sell "bank guarantees," which materials reflect Defendants' use of the following marks: **GUGGENHEIM FUND** and **GUGGENHEIM BANK**. (Dkt. No. 1 ¶¶14-15 & Exs. 11, 23 thereto.) Exhibits 11 and 23 to the Verified Complaint are attached as Exhibits C and D, with Defendants' counterfeit uses identified in yellow.

- Defendants' distribution of materials offering to sell diamonds, which materials reflect Defendants' use of the following marks: **GUGGENHEIM** and **GUGGENHEIM FUND** (Dkt. No. 1 ¶19 & Exs. 14-15, 17-20, 27 thereto.) Exhibits 14-15, 17-20 and 27 to the Verified Complaint are attached as Exhibits E-K, with Defendants' counterfeit uses of Plaintiffs' marks identified in yellow.

---

[1] Because Defendants have defaulted, the well-pleaded factual allegations in Plaintiffs' Verified Complaint are accepted as true. *See Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

- Defendants' distribution of materials offering investment services, which materials reflect Defendants' use of the following marks: **GUGGENHEIM**, **GUGGENHEIM FUND** and **GUGGENHEIM BANK**. (Dkt. No. 1 ¶¶69-72 & Exs. 13, 22-25 thereto.) Exhibits 13 and 22-25 to the Verified Complaint are attached as <u>Exhibits L-P</u>, with Defendants' counterfeit uses of Plaintiffs' marks identified in yellow.

### 3.   Defendant Toumei's Counterfeit Domain Name

Defendant Toumei registered and used the domain name **guggenheimadvisors.org** in a bad faith intent to profit from Plaintiffs' GUGGENHEIM marks, in violation of 15 U.S.C. § 1125(d). (Dkt. No. 1 ¶¶73-79, 112-119; *see* <u>Exhibits O-P</u> attached.)

### II.   LEGAL ARGUMENT

To prevail on counterfeiting claim under the Lanham Act, Plaintiffs must prove that Defendants are using the "identical" or a "substantially indistinguishable" mark to Plaintiffs' federally registered mark for the identical services identified in Plaintiffs' trademark registration. *See generally* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:15 at 25-40 (4th ed. 2011) [hereinafter "McCarthy"].  In entering default judgment, the Court found that Defendants engaged in trademark counterfeiting and cybersquatting and that such conduct was willful. (Dkt. No. 40.) *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (finding defendant liable for trademark counterfeiting as alleged in plaintiff's complaint where defendant defaulted); *United Greeks, Inc. v. Klein,* 2000 U.S. Dist. LEXIS 5670 (N.D.N.Y May 1, 2000) (same – cybersquatting).  As shown below, now that liability has been established against Defendants for trademark counterfeiting and cybersquatting, Plaintiffs are entitled to statutory damages, attorneys' fees and costs on account of that conduct.

### A.   Plaintiffs Are Entitled to Statutory Damages for Defendants' Counterfeiting

The Lanham Act permits Plaintiffs to recover between $1,000 and $200,000 in statutory damages "per counterfeit mark per type of goods or services sold, **offered for sale**, or

distributed, as the court considers just." 15 U.S.C. § 1117(c) (emphasis added). *See generally* 5 McCarthy § 30:95 pp. 30-213 to 30-214. If the counterfeiting is willful, Plaintiffs may recover up to "$2,000,000 per counterfeit mark per type of goods or services sold, **offered for sale**, or distributed, as the court considers just." 15 U.S.C. §1117(c) (emphasis added). *See generally* 5 McCarthy § 30:95 pp. at 30-213 to 30-214.

As detailed *supra* (pp. 4-5), Defendants willfully used four (4) "counterfeits" of Plaintiffs' GUGGENHEIM mark for investment and financial consultation services, including: (1) GUGGENHEIM; (2) GUGGENHEIM FUND; (3) GUGGENHEIM BANK; and (4) GUGGENHEIM ADVISORS. (*See* Exs. A-P.) Defendants also willfully used a counterfeit of Plaintiffs' GUGGENHEIM PARTNERS mark for investment and financial consultation services. (*See* Exs. A-B.) Because of the egregious nature of Defendants' conduct, the Court should award the maximum amount of statutory damages, i.e., $2 million dollars per use of a "counterfeit" mark. Thus, as demonstrated below, Plaintiffs should be awarded **$10 million** in statutory damages for Defendants' counterfeiting.

| Plaintiffs' Trademark Registration | Defendants' Counterfeits | Evidence |
|---|---|---|
| **GUGGENHEIM** (U.S. Reg. No. 3,121,127) for investment and financial consultation services | **(1) GUGGENHEIM**<br>**(2) GUGGENHEIM FUND**<br>**(3) GUGGENHEIM BANK**<br>**(4) GUGGENHEIM ADVISORS** | *See* Exs. A-G, I-J, L-N |
| **GUGGENHEIM PARTNERS** (U.S. Reg. No. 3,110,878) for investment and financial consultation services | **(5) GUGGENHEIM PARTNERS/ guggenheimpartners.org** | *See* Exs. A-B |
|  | **5 counterfeit marks x $2 million = $10 million** |  |

### B.   An Award of Maximum Statutory Damages Is Warranted

Numerous facts support the imposition of the maximum amount of statutory damages.

### 1.   Defendants Used Plaintiffs' Famous Marks In Connection With Large Scale Financial Transactions

Plaintiffs' GUGGENHEIM marks are famous.  (*See* Dkt. No. 25, Order granting Preliminary Injunction, ¶ 6.)  Defendants used Plaintiffs' marks to capitalize on the fame of those marks and even used the same color and font type as Plaintiffs.  (See Dkt. No. 1 ¶¶ 32, 45, 55, 69, Ex. 7, 11, 14-15, 22; Dkt. No. 8, p. 22.)  Defendants used the marks in connection with proposed transactions of over a billion dollars.  (See Dkt. No. 1 ¶¶ 30, 32-66; Exs. 7-9, 11, 13-15, 17-21 to Dkt. No. 1.)  Defendants' uses of Plaintiffs' identical, famous names, e.g., **GUGGENHEIM**, **GUGGENHEIM PARTNERS**, **guggenheimpartners.com** and **guggenheimadvisors.org**, as well as the same font and color as Plaintiffs' marks are depicted in, for large-scale financial transactions demonstrates Defendants' bad faith and justifies the award of maximum statutory damages.  *See, e.g., Samara Bros., Inc. v. Wal-Mart Stores, Inc.,* 165 F.3d 120 (2d Cir. 1998) (the **extent** of defendant's copying demonstrated willfulness); *Paddington Corp. v. Attiki Importers and Distrib., Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) (evidence that defendant intentionally copied plaintiff's mark demonstrates bad faith); *Bausch & Lomb, Inc. v. Nevitt Sales Corp.*, 810 F. Supp. 466 (W.D.N.Y. 1993) (similar script between the marks demonstrated willfulness).

### 2. Defendants' Conduct Caused Actual Confusion

Defendants' counterfeiting caused actual deception.  (*See* Dkt. No. 25, Order granting Preliminary Injunction, ¶ 6.)  Sophisticated investment advisors were deceived into believing that Defendants were Plaintiffs.  (*See* Dkt. No. 1, ¶¶ 80-81; *See* Ex. 27 to Dkt. No. 1; *See* Declarations of Lawrence Carroll and Jeffrey Barnett, submitted with Dkt. No. 1.)  This too weighs in favor of a finding of willful infringement and justifies the maximum amount of statutory damages.

### 3. Defendants Defaulted And Violated Court Orders

Defendants failed to answer Plaintiffs' Verified Complaint, resulting in default, and failed to comply with the Court Orders requiring the transfer of the domain name **guggenheimadvisors.org** and the production of discovery. (*See* Dkt. Nos. 36, 38, 40.) These facts also weigh in favor of awarding the maximum amount of statutory damages.

The law is well-settled that "willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself." *Chloe v. Zarafshan*, 2009 U.S. Dist. LEXIS 84255 at *7 (S.D.N.Y. Sept. 15, 2009). Defendants' default is evidence that the counterfeiting was willful and justifies the maximum amount of statutory damages. *E.g., Allstar Mktg. Group, LLC v. Media Brands Co.*, 2010 U.S. Dist. LEXIS 117668, **14-15 (S.D.N.Y. Nov. 5, 2010) (award of enhanced statutory damages appropriate because defendant's default established willfulness); *Malletier v. Carduci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("Here, by virtue of its default, [defendant] has admitted [plaintiff]'s allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff]'s rights."); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 2009 U.S. Dist. LEXIS 61608 at *6 (S.D.N.Y. July 20, 2009) (noting that for purposes of § 1117(b), "where a defendant defaults, that may be taken as evidence of willful infringement"); *Tiffany (NJ) Inc.*, 282 F. Supp. 2d at 124 ("By virtue of the default, the [defendant]s' infringement is deemed willful.").

Further, Defendants' failure to produce discovery in violation of Court orders is evidence of willfulness, which also justifies the award of the maximum amount of statutory damages. *See Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, 697 F. Supp. 2d 287, 301 (E.D.N.Y. 2009) (awarding maximum amount of statutory damages against defendants who refused to produce discovery); *Louis Vuitton Malletier, S.A. v. LY USA*, 2008 U.S. Dist. LEXIS 107592 (S.D.N.Y. Oct. 3, 2008) (awarding enhanced statutory damages because of defendant's failure to

produce discovery); *Nike, Inc. v. Top Brand, Co.*, 2006 U.S. Dist. LEXIS 76543 (S.D.N.Y. Feb. 27, 2006) (same); *Software Freedom Conservancy, Inc. v. Best Buy Co.*, 2010 U.S. Dist. LEXIS 75208 (S.D.N.Y. July 27, 2010) (same -- "[b]ecause [defendant] failed to participate in the discovery process, plaintiffs are entitled to the full amount of statutory damages").

### 4. Defendants Continued To Infringe Plaintiffs' Marks After Receipt Of The Verified Complaint And Entry Of The TRO

Defendants demonstrated their willful infringement by continuing to use counterfeits of Plaintiffs' GUGGENHEIM marks after this lawsuit was filed. Indeed, after the entry of the TRO, Defendants continued to solicited potential investors under the GUGGENHEIM marks. (*See* Dkt. No. 38.) Defendants' infringement of Plaintiffs' famous GUGGENHEIM marks after receipt of notice of Plaintiffs' rights and objections, as well as the Court's TRO, is further evidence of Defendants' willfulness, and justifies the maximum award of statutory damages. *See Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, 2008 U.S. Dist. LEXIS 77013 (S.D.N.Y. Oct. 2, 2008) (willfulness found to support enhanced statutory damages when defendant failed to cease use of counterfeits after notice from plaintiff); *Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, 697 F. Supp. 2d 287, 301 (E.D.N.Y. 2009) (awarding maximum amount of statutory damages against defendants who continued to sell counterfeit goods after entry of TRO). Defendants' conduct here is far **more** egregious than in other cases where the court awarded the maximum in statutory damages. *See Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 2006 U.S. Dist. LEXIS 76543 at *7 (S.D.N.Y. Feb. 27, 2006) (awarding maximum damages despite the fact that, unlike here, defendants appeared and participated in the proceeding).

### C. Plaintiffs Are Entitled to Statutory Damages for Defendants' Bad Faith Registration and Use of the Domain Name **guggenheimadvisors.org**

Plaintiffs also are entitled to recover statutory damages for Defendant Toumei's registration and use of the domain name **guggenheimadvisors.org** in a bad faith intent to profit from Plaintiffs' GUGGENHEIM marks, in violation of 15 U.S.C. § 1125(d). (*See* Dkt. No. 1 ¶¶73-79, 112-119; *see* <u>Exs. O-P</u> attached hereto.) To this day, despite a Court Order (Dkt. No. 38), Defendant Toumei refuses to transfer the domain name **guggenheimadvisors.org** to Plaintiffs. In cases of cyberpiracy, the Lanham Act permits recovery of statutory damages up to $100,000. 15 U.S.C. § 1117(d). The Court should award the maximum amount of statutory damages of $100,000 due to Defendants' egregious conduct.

### D. Plaintiffs Are Entitled to Recover Attorneys' Fees and Costs

Plaintiffs also are entitled to an award of attorneys' fees and costs for Defendants' counterfeiting. An award of attorneys' fees and costs is **<u>mandatory</u>** in counterfeiting cases, absent "extenuating circumstances." 15 U.S.C. §1117(b) (in counterfeiting cases -- "the court **<u>shall</u>**, unless the court finds extenuating circumstances," award "a reasonable attorney's fee") (emphasis added); *see also Burberry Ltd. v. Designers Imps., Inc.*, 07 Civ. 3997, 2010 U.S. Dist. LEXIS 3605 at *30-31 (S.D.N.Y. Jan. 19, 2010) (awarding attorneys' fees upon a finding of counterfeiting and no "extenuating circumstances."); *Fila U.S.A. v. Run Run Trading Corp.*, 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y. May 20, 1996) (same). No "extenuating circumstances" exist here. Defendants defaulted, are in violation of Court Orders to this day, and continued to use Plaintiffs' famous marks after the filing of the Verified Complaint and the entry of the TRO. Indeed, "extenuating circumstance" is an affirmative defense which is waived where, as here, it was not pled. *See Louis Vuitton, S.A. v. Pun Yan Lee*, 875 F.2d 584, 590 (7th Cir. 1989).

Plaintiffs request that the Court award attorneys' fees and costs that Plaintiffs have incurred in prosecuting this action. If the Court grants Plaintiffs' motion, Plaintiffs will promptly

submit a declaration, and any other supporting documentation that the Court requests, concerning their attorneys' fees and costs.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion.

Respectfully submitted,

February 22, 2011

_____
Rita Weeks (admitted *pro hac vice*)
John J. Dabney (admitted *pro hac vice*)
Robert W. Zelnick (admitted *pro hac vice*)
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000 (telephone)
(202) 756-8087 (facsimile)

Michael Shanahan (NY Bar. # 3971793)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY  10173
(212) 547-5400 (telephone)
(212) 547-5444 (facsimile)

*Attorneys for Plaintiffs*
*Guggenheim Capital, LLC and*
*Guggenheim Partners, LLC*