# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

Plaintiffs,

v.

Civil Action No. 10-CV-8830-PGG

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A
CATARINA FREDERICK; VLADIMIR
ZURAVEL A/K/A VLADIMIR
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI
PICHEL; THEODOR PARDO; DABIR
INTERNATIONAL, LTD. AND JOHN DOES
1-10,

Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTIVE RELIEF, STATUTORY DAMAGES AND ATTORNEYS' FEES AGAINST DEFENDANTS DAVID BIRNBAUM AND DABIR INTERNATIONAL, LTD.

Pursuant to the Court's instruction at the April 4, 2011 Show Cause Hearing, Plaintiffs

Guggenheim Capital, LLC and Guggenheim Partners, LLC ("Plaintiffs") respectfully submit this

Memorandum of Law in support of their Motion for an order granting a default judgment against

Defendants David Birnbaum and Dabir International Ltd. ("Defendants"), as well as other

appropriate relief.  As explained below, Defendants repeatedly violated this Court's Temporary

Restraining Order ("TRO") and Preliminary Injunction Order preventing the use of Plaintiffs'

Guggenheim names and marks.  Plaintiffs seek the entry of default judgment against Defendants,

a permanent injunction that bars Defendants from using the Guggenheim names and marks,

statutory damages for trademark counterfeiting, and reasonable attorneys' fees and costs.

## STATEMENT OF FACTS

### I.   Factual Background

Plaintiffs are highly respected financial firms that trace their roots to the famous

Guggenheim family.  (Second Amended Compl., Dkt. No. 50 ("SAC"), ¶21.)[1]  Plaintiffs own

federally registered marks for, among other marks, GUGGENHEIM, GUGGENHEIM

PARTNERS and GUGGENHEIM INVESTMENT ADVISORS for "[p]roviding information,

advice and consulting in the fields of finance, insurance, business, banking, asset management

and investment; financial investment in the fields of securities, funds." (*Id.* ¶24.)  Those marks

are widely recognized by the general consuming public in the United States as designating the

source of Plaintiffs' financial services and thus are famous. (*See* Order Granting Prelim. Injun.,

Dkt. No. 25 ("PI Order"), ¶6.)

Defendants have no bona fide right to use the name GUGGENHEIM to advertise or sell

any product or service or to represent themselves as a "Guggenheim." (PI Order ¶7.)

Nevertheless, Defendants use counterfeits of Plaintiffs' federally registered GUGGENHEIM

marks and marks that are substantially similar to Plaintiffs' GUGGENHEIM marks to advertise

and promote their own financial services. (SAC ¶¶31-32.) Defendants use Plaintiffs'

GUGGENHEIM marks to attempt to defraud investors into entering financial transactions worth

hundreds of millions or billions of dollars.  (*Id.* ¶¶31-33.)  On account of their use of counterfeits

of Plaintiffs' GUGGENHEIM marks and marks that are substantially similar to those marks,

---

[1]      As discussed *infra*, because Defendants should be defaulted the Court should accept as true all of the well-pleaded allegations alleged in Plaintiffs' Second Amended Complaint.

Defendants have deceived sophisticated investors into believing that Defendants' financial services are Plaintiffs' financial services. (*Id.* ¶¶82-83; Decls. of Laurence Carroll and Jeffrey Barnett, Dkt. Nos. 5-6; *see also* Decl. of Joe Costonis, attached as <u>Ex. A</u> to the Decl. of John J. Dabney in Supp. of Pls' Mot. for Default Judgment Against Defs. Birnbaum and Dabir Int'l ("Dabney Decl."), submitted herewith.) Defendants used the following counterfeit GUGGENHEIM marks to advertise and promote their own financial services: (i) GUGGENHEIM, (ii) GUGGENHEIM PARTNERS, (iii) GUGGENHEIM ADVISORS, (iv) GUGGENHEIM FUND, and (v) GUGGENHEIM BANK. (SAC ¶¶34-37, 47-48, 57, 69-71 & Exs. 7-8, 11, 13-15, 17-20, 21-23 thereto.)

## II.    Procedural History

### A.    The Temporary Restraining Order

On November 22, 2010, Plaintiffs commenced this action against Defendant Birnbaum and various other Defendants alleging claims of trademark counterfeiting, trademark infringement, RICO and violations of various other federal and state laws.[2] On November 22, 2010, the Court entered a TRO enjoining Defendant Birnbaum from using Plaintiffs' GUGGENHEIM "names and trademarks in any way relevant to this matter." (Dkt. No. 3.)

### B.    The Preliminary Injunction Order

On December 17, 2010, the Court entered a Preliminary Injunction Order. (Dkt No. 25.)

---

[2]    Default judgment on liability, as well as a permanent injunction, has been entered against Defendants Toumei, Zurevel and Pichel. (Dkt. No. 40.) Plaintiffs have moved for the entry of statutory damages for trademark counterfeiting and an award of reasonable costs and attorney's fees against those Defendants, which motion is currently pending. (Dkt. No. 76.) Plaintiffs also seek the entry of various financial sanctions against these Defendants for their continuing failure to comply with the Court's permanent injunction, which motion also is pending. (*See*, e.g., February 17, 2011 letter from John J. Dabney to the Court.) If the Court awards the relief that Plaintiffs seek in this motion and the other pending motions, the only remaining Defendant is Defendant Pardo. Plaintiffs currently anticipate that Defendant Pardo will ultimately be dismissed from this action in the near future, but are currently investigating Mr. Pardo's role, if any, in the fraudulent scheme of the other Defendants.

The Court found that Plaintiffs own federally registered marks for GUGGENHEIM and variations thereof for financial services and that there is "**substantial evidence** that Defendants have used and are using counterfeit copies and unauthorized reproductions of Plaintiffs' GUGGENHEIM trademarks in connection with the advertising, offering to sell, sale and/or rendering of products and services, including financial consultation and investment services." (*Id.* ¶¶1-2 (emphasis added).)

The Court reasoned that "[t]here is a likelihood that Defendants' continued advertising, offering to sell, sale and/or rendering of products and services under counterfeit copies and unauthorized reproductions of Plaintiffs' GUGGENHEIM trademarks will cause Plaintiffs **immediate and irreparable injury** if the relief requested in not ordered." (*Id.* ¶6 (emphasis added).) The Court thus enjoined Defendant Birnbaum "and each of [his] respective partners, owners, officers, directors, associates, agents, servants, employees, attorneys, successors and assigns, and all other persons active in concert or participation with them," from "using Plaintiffs' GUGGENHEIM trademarks alone or in combination with any other mark, term, symbol, designation or design, or any term that is confusingly similar to Plaintiffs' GUGGENHEIM trademarks." (*Id.* at pp. 4-5.)[3]

### C.    The December 30, 2010 Contempt Hearing

On December 30, 2010, the Court held a hearing concerning Defendant Birnbaum's continued use of Plaintiffs' GUGGENHEIM marks, in violation of the TRO and the Preliminary Injunction Order. The genesis of that hearing was that Plaintiffs had secured evidence from a

---

[3]     Plaintiffs have plead, and Defendants have not contested, that Defendant Dabir is solely owned, operated, and controlled by Defendant Birnbaum. (SAC ¶11.) The Preliminary Injunction Order thus enjoins Dabir from using "Guggenheim," because Defendant Birnbaum owns and controls Dabir. Defendant Birnbaum was Defendant Dabir's corporate designee at a Rule 30(b)(6) deposition and invoked the Fifth Amendment in response to every question, including questions concerning his exclusive ownership and control of Dabir. (*See* Dabir Int'l Dep. Tr., attached as Ex. B to Dabney Decl.)

third-party investor on December 23, who stated that he had had a business meeting with Defendant Birnbaum the previous week during which Defendant Birnbaum represented himself as "David B. Guggenheim," chairman of "Guggenheim Bank." (Dkt. No. 73 (12/30 Hearing Tr.), 6:15-7:4).) The Court warned Defendant Birnbaum that the Court's "patience is wearing thin here. It's wearing very thin. And if I get so much as a peep from [Plaintiffs' counsel] that [Defendant Birnbaum] is continuing to use the Guggenheim name in business, the consequences are going to be **very very severe**." (*Id.*, 11:15-22 (emphasis added).

### D.    Defendant Birnbaum's Motion to Modify the Preliminary Injunction Order

Discontent with the Court's rulings in the TRO and in the Preliminary Injunction Order that he must stop using Plaintiffs' GUGGENHEIM marks, on January 26, 2011, Defendant Birnbaum moved to modify the Preliminary Injunction Order to allow for, among other things, the use of "David Guggenheim" and "David B. Guggenheim." (Dkt No. 65 at p. 1.) Defendant Birnbaum argued that "on a strict reading of the Preliminary Injunction, Defendant Birnbaum would seem to be precluded from using in any manner either the term GUGGENHEIM or DAVID B. GUGGENHEIM, even in reference to himself personally . . . ." (*Id.*) The Court denied Defendant's motion and left the Preliminary Injunction Order intact. (*Id.* at p. 2.)

### E.    Defendants' Continued Use of Plaintiffs' Guggenheim Marks

Despite being formally ordered and warned **four separate times** to stop using the GUGGENHEIM names and marks, i.e., in the TRO, in the Preliminary Injunction Order, at the December 30, 2010 hearing, and in the Court's Order denying Defendants' motion to amend the Preliminary Injunction Order, Defendants continued to use the "Guggenheim" name to solicit and close multi-million dollar financial deals. During the January to March 2011 timeframe, Defendants attempted to close a large-scale fuel transaction, in which Defendant Birnbaum

represented to investors that he was a "Guggenheim." Specifically, Mr. Joel Costonis of CNF

Commodities testified in a Declaration, attached to Plaintiffs' March 4, 2011 letter to the Court,

that his company was poised to enter a large-scale oil transaction with Defendant Dabir and an

individual (Defendant Birnbaum) who had identified himself as "David Guggenheim" over the

past few months. (Costonis Decl., attached as Ex. A to Dabney Decl.) Indeed, as recently as

March 2011, Defendant Birnbaum was identifying himself to investors in the CNF deal as

"David Guggenheim." (*Id.*)

Based on Mr. Costonis' testimony, the Court scheduled a hearing for April 4, 2011 for

Defendants to show cause why default judgment should not be entered against them. At that

hearing, Defendant Birnbaum did **not** dispute Mr. Costonis' testimony or challenge Plaintiffs'

request that default judgment be entered against Defendant Birnbaum and Defendant Dabir on

account of their willful violations of the Preliminary Injunction Order. Defendant Birnbaum's

entire submission in response to the Court's show cause order was the invocation of the Fifth

Amendment. (Tr. from April 4, 2011 hearing, attached as Ex. C to Dabney Decl., at 5:6-12.)

## LEGAL ARGUMENT

### I.     Plaintiffs Are Entitled to Default Judgment

#### A.     Legal Standard

"Persons subject to an injunctive order issued by a court with jurisdiction are expected to

obey that decree until it is modified or reversed." *Paramedics Electromedicina Comercial, Ltda.

v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 656 (2d Cir. 2004) (affirming district court's

finding of civil contempt and imposition of sanctions). Compliance "is a matter of respect for

the judicial process." *Id.*

The Court may sanction a party for violating a court order by the entry of default

judgment. *E.g., Int'l Union v. Bagwell*, 512 U.S. 821, 833 (U.S. 1994); *Dell, Inc. v. Advicon Computer Servs.*, 06-11224, 2007 U.S. Dist. LEXIS 50371, **12-13 ( E.D. Mich. July 12, 2007) (summarizing circuit cases affirming entry of default judgment because litigant violated court order, and granting default judgment for defendant's "disregard of the Court's orders."). Courts consider the following factors in determining whether default judgment should be entered: "(a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *American Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999). As shown below, each of these factors weighs in favor of entering default judgment against Defendants.

**B.      The Court Should Enter Default Judgment Against Defendants**

       **1.      Defendants Willfully Violated The Preliminary Injunction Order**

The TRO and the Preliminary Injunction Order bar Defendants from using "Guggenheim." (*See, e.g.*, PI Order at pp. 3-5.) At the December 30, 2010 hearing, upon hearing undisputed evidence that Defendants continued to use the "Guggenheim" name to pass-off their financial services **after** the entry of the TRO and the Preliminary Injunction Order, the Court instructed Defendants once again to stop using the "Guggenheim" name. (Dkt. No. 73 (12/30 Hearing Tr.), 10:24-11:6.) Defendants understood that the Preliminary Injunction Order prohibited the use of the "Guggenheim" name in any context because Defendants sought to modify that order to allow some uses of "Guggenheim," i.e., "David Guggenheim." (Dkt. No. 65.) Despite the Court's (i) entry of a TRO prohibiting the use of Plaintiffs' GUGGENHEIM marks, (ii) entry of a Preliminary Injunction Order prohibiting the use of "Guggenheim" in any

manner, (iii) express warning at the December 30, 2010 hearing not to use the "Guggenheim" name, and (iv) denial of Defendants' motion to amend the Preliminary Injunction Order to allow for use of "Guggenheim," Defendants continued to use the "Guggenheim" name for two to three months to attempt to close a large-scale transaction with CNF Commodities, Mr. Costonis' company. (*See* Costonis Decl., <u>Ex. A</u> to Dabney Decl.) Defendants' conduct can only be understood as a willful violation of the Preliminary Injunction Order. Indeed, Defendants used precisely the name, i.e., "David Guggenheim," that they had unsuccessfully moved the Court for permission to use in their motion to amend the Preliminary Injunction Order. (Dkt. No. 65.) Defendants understood that the use of "Guggenheim" had been repeatedly enjoined by Court order, but made an economic decision to use the name anyway, because it was the only way they could attract or consummate a large-scale financial transaction.

### 2.    Defendants Previously Violated The Preliminary Injunction Order

The Preliminary Injunction Order prohibited Defendants from using "Guggenheim." (Dkt. 25.) Immediately after the entry of that Order, Defendant Birnbaum held himself out as "David Guggenheim," chairman of the "Guggenheim Bank" to a potential investor in New York. (*See supra* pp. 4-5.) The Court considered that undisputed evidence during the December 30 hearing and warned Defendant Birnbaum that if he used "Guggenheim" again, the consequences would be "very, very severe." (Dkt. No. 73, Dec. 30 Tr. at 11:15-22.) The Court was right to set a zero tolerance policy for Defendants' continued violations of the Preliminary Injunction Order. As the Court found in its Preliminary Injunction Order, Plaintiffs have offered "substantial evidence" that Defendants have engaged in a nationwide scheme to defraud investors out of hundreds of millions or billions of dollars by pretending to be Plaintiffs. (*See* PI Order ¶5.) Sophisticated investors were deceived into believing that Defendants were Plaintiffs. (*Id.* ¶5; *see*

Decls. of Jeffrey Bartlett and Lawrence Carroll, Dkt. Nos. 5-6.)  Defendant Birnbaum's conduct

is now the subject of a criminal prosecution that could lead to a prison term.  Because of the

magnitude of the financial transactions at stake, the public interest demands that violations of the

Preliminary Injunction Order not be tolerated.  A single violation could cause a catastrophic loss

for an investor (and that investor's investors).

### 3.   Lesser Sanctions Would Be Ineffective

The Court warned Defendants numerous times, in orders and at a hearing, not to use the

"Guggenheim" name.  (*See supra* pp. 3-5.)  As the Court knows, Defendant Birnbaum has been

charged with a federal felony for using "Guggenheim."  Despite all of this, Defendants refuse to

stop using the "Guggenheim" name.  The only explanation for Defendants' willful unlawful

conduct is their realization that they can only make money if they convince investors that

Defendants are Plaintiffs.  The Court's orders thus far have had no effect on Defendants, and

Defendants continue to act as they please.  Any sanction short of default judgment would be

ignored. *See Medina v. Gonzalez*, 08 Civ. 01520, 2010 U.S. Dist. LEXIS 101601, at **67-68

(S.D.N.Y. 2010).

### 4.   Defendants Were Warned That Their Violation Of The Preliminary Injunction Order Would Lead To Very Severe Consequences

At the December 30 hearing, when presented with uncontroverted evidence that

Defendant Birnbaum held himself out as "David Guggenheim," chairman of the "Guggenheim

Bank," to an investor after the entry of the TRO and the Preliminary Injunction Order, the Court

warned Defendant Birnbaum that the Court's "patience was wearing thin" and that the

"consequences would be very, very severe" if Defendant Birnbaum continued to use the

"Guggenheim" name. (Dkt. No. 73, Dec. 30 Tr. at 11:15-22.)  Despite that warning, Defendants

spent January through March 2011 attempting to consummate a financial transaction with CNF

Commodities, Mr. Costonis' company, by using the "Guggenheim" name. *(See* Costonis Decl.,
Ex. A to Dabney Decl.)  Defendants have no one but themselves to blame if the Court enters
default judgment against them.

### 5.    Defendants Are Responsible For The Violations

Defendants are solely responsible for continuing to use the "Guggenheim" name despite
the TRO, the Preliminary Injunction Order, the Court's explicit warning on December 30, 2010
and the Court's denial of Defendant Birnbaum's motion to amend the Preliminary Injunction.  At
the April 4 show cause hearing, Defendant Birnbaum did not argue that he was not repeatedly
warned by the Court not to use the "Guggenheim" name or claim that he misunderstood the
Court's repeated warnings.  Instead, faced with the evidence of his willful violations of the
Preliminary Injunction Order, Defendant Birnbaum invoked the Fifth Amendment, which allows
the Court to draw the inference that Defendant Birnbaum knew that he was prohibited from
using the "Guggenheim" name, and is responsible for the violations.  (Ex. C to Dabney Decl., at
5:6-12.)  *See SEC v. Martino*, 255 F. Supp. 2d 268, 282-83 (S.D.N.Y. 2003) (drawing negative
inference from defendant's invocation of Fifth Amendment privilege).

### 6.    Defendants' Contemptuous Conduct Prejudices Plaintiffs

Plaintiffs are irreparably injured and prejudiced by Defendants' continued use of
Plaintiffs' GUGGENHEIM marks.  As the Court held in the Preliminary Injunction, "[t]here is a
likelihood that Defendants' continued advertising, offering to sell, sale and/or rendering of
products and services under counterfeit copies and unauthorized reproductions of Plaintiffs'
GUGGENHEIM trademarks **will cause Plaintiffs immediate and irreparable injury** if the
relief requested in not ordered." (PI Order ¶2 (emphasis added).)   The "immediate and
irreparable injury" that was the impetuous for the entry of the Preliminary Injunction Order is

still being inflicted on Plaintiffs, because Defendants still hold themselves out to investors as

Plaintiffs. Moreover, Defendants' failure to comply with the Court's Preliminary Injunction

Order has forced Plaintiffs to spend time and money attempting to compel Defendants'

compliance with that Order. *See Wing Kwong Ho v. Target Constr. of N.Y., Corp.*, 08 CV 4750,

2010 U.S. Dist. LEXIS 54176, *9-10 (E.D.N.Y. June 3, 2010) (prejudice shown where plaintiff

expended significant time and resources to compel defendant to comply with court orders).

For all of the foregoing reasons, the Court should enter default judgment against

Defendants on account of their violations of the Preliminary Injunction Order.

### C.  Plaintiffs Have Adequately Alleged Claims for Trademark Counterfeiting and Trademark Infringement

Once a party has defaulted, that default is treated as an admission of all well-pleaded

allegations related to liability. *See Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d

245, 253 (E.D.N.Y. 2010). This principle applies regardless of whether default is entered as a

sanction or for failure to defend. *Id.*; *See Bambu Sales*, 58 F.3d at 854 (liability established

through a default judgment entered as a Rule 37 sanction).

#### 1.  Plaintiffs' Second Amended Complaint Contains Well-Pleaded Allegations Against Defendants That Establish Trademark Counterfeiting And Trademark Infringement

The well-pleaded allegations of Plaintiffs' Second Amended Complaint establish
Defendants' liability. Plaintiffs may prevail on their trademark infringement claims by
demonstrating: (1) ownership of valid GUGGENHEIM trademarks; and (2) that Defendants'
unauthorized use of similar marks is likely to cause confusion as to the source or approval of
Defendants' goods and services.[4]  *See Beharry & Co.*, 2006 U.S. Dist. LEXIS 79332, at **2, 6-8

---

[4]      To prevail on their counterfeiting claims, Plaintiffs must also prove that Defendants are using an "identical
or substantially indistinguishable" mark for the same services that are identified in Plaintiffs' federal registrations.
*See Chloe v. Designersimports.com USA, Inc.*, No. 07-cv-1791, 2009 U.S. Dist. LEXIS 42351, at *17 (S.D.N.Y.
Apr. 29, 2009) (plaintiffs established prima facie case for trademark counterfeiting and infringement where
defendant used plaintiff's mark on handbags, the same goods covered by plaintiffs' trademark registration,
explaining that under the Lanham Act, a "counterfeit" is a "a spurious mark which is identical with, or substantially
(continued...)

(E.D.N.Y. Oct. 31, 2006) (granting plaintiff's motion to convert temporary restraining order into preliminary injunction where defendants used counterfeit marks).  Plaintiffs have alleged ownership of valid GUGGENHEIM trademarks.  (SAC¶¶ 23-25.)  Indeed, Plaintiffs' trademarks are federally registered and thus presumed valid.  (SAC¶ 24.)  Defendants have willfully used in commerce marks identical, substantially identical, and confusingly similar to Plaintiffs' federally registered GUGGENHEIM marks to advertise and offer a variety of financial consultation and investment services.  (SAC¶¶ 31-89.)  Defendants' actions are likely to create consumer confusion and in fact have caused actual consumer confusion, including among sophisticated investors.[5]  (SAC ¶¶82-87; *see* Decls. of Jeffrey Bartlett and Lawrence Carroll, Dkt. Nos. 5-6; Costonis Decl., Ex. A to Dabney Decl.)

> **2.      Plaintiffs' Evidence Also Establishes Defendants' Liability for Trademark Counterfeiting And Trademark Infringement**

Although Plaintiffs need only demonstrate that the well-pleaded allegations in the SAC

show Defendants' liability in order to prevail on default judgment, Plaintiffs have provided

substantial evidence supporting their claims.  Indeed, based on the evidence presented in

Plaintiffs' SAC, the Court found in the Preliminary Injunction Order that Plaintiffs own famous

and federally registered marks for GUGGENHEIM for financial services.  (PI Order ¶1.)  The

Court also found in the Preliminary Injunction Order, as is chronicled in the evidence attached to

Plaintiffs' SAC, that Defendants use Plaintiffs' identical marks and substantially similar marks to

sell financial services and other products and services.  (*Id.*¶2.)  Defendants' use of Plaintiffs'

GUGGENHEIM names and marks has caused actual confusion among sophisticated investors

who believed that Defendants were Plaintiffs.  (*See* SAC¶¶82-83; Declarations of Jeffrey Bartlett

and Lawrence Carroll, Dkt. Nos. 5-6; Costonis Decl. Ex. A. to Dabney Decl.)  Thus, the well-

pleaded allegations in the SAC, as well as the evidence attached to the SAC prove that

Defendants' use of Plaintiffs' GUGGENHEIM marks and similar marks constitutes trademark

---

indistinguishable from, a registered mark," and accordingly, "counterfeits, by their very nature, cause confusion."). *See* 15 U.S.C. § 1116(d)(1)(B) (a counterfeit mark is defined as "a spurious designation that is identical with, or substantially indistinguishable from" a registered mark).

[5]      For proposed factual findings on "likelihood of confusion" factors, please see Plaintiffs' proposed Findings of Fact and Conclusions of Law, contained in Plaintiff's [Proposed] Default Judgment, submitted herewith.

counterfeiting, trademark infringement and trademark dilution in violation of federal and New York law.

## II. The Court Should Enter A Permanent Injunction And Award Statutory Damages, and Reasonable Attorneys' Fees and Costs Against Defendants

### A. The Court Should Enter a Permanent Injunction

Plaintiffs may obtain a permanent injunction by demonstrating that: (1) they have suffered irreparable injury; (2) there is no adequate remedy at law; (3) considering the balance of hardships between plaintiffs and defendant, a remedy in equity is warranted; and (4) the public's interest would not be disserved by a permanent injunction. *Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 258 (E.D.N.Y. 2010) (*citing eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)). *See generally* 15 U.S.C. § 1116 (court may award injunction to prevent trademark infringement and counterfeiting).

### 1. Plaintiffs Are Suffering Irreparable Injury And Will Continue To Do So Without a Permanent Injunction

As Defendants have defaulted through their repeated violations of the Court's TRO and Preliminary Injunction Order, Defendants' default constitutes an admission of liability as to Plaintiffs' trademark counterfeiting and infringement claims. *See Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 258 (E.D.N.Y. 2010) ("Defendant's default constitutes an admission of liability as to plaintiff's trade dress infringement [claims]. . .") Accordingly, Plaintiffs have shown a likelihood of confusion and thus irreparable injury. *Id.*; *see Chloe v. Designersimports.com USA, Inc.*, 2009 U.S. Dist. LEXIS 42351 (S.D.N.Y. Apr. 29, 2009) (granting permanent injunction, explaining that "[i]n the context of trademark infringement and false designation of origin claims, the [irreparable harm requirement]. . . is established by a showing of likelihood of confusion.") Indeed, in entering the Preliminary Injunction Order, the

Court already found that Defendants' continued use of the "Guggenheim" name was likely to "cause Plaintiffs **immediate and irreparable injur**y . . including diminution of the value of Plaintiffs' trademarks, impairment of goodwill and reputation, [and] confusion in the marketplace." (PI Order¶¶2-3 (emphasis added).)

Defendants' use of Plaintiffs' GUGGENHEIM marks has deceived sophisticated investors into believing that Defendants are Plaintiffs, which is further evidence of irreparable injury. *See DCH*, 2006 U.S. Dist. LEXIS 4298, 2006 WL 279055, at *29 (actual confusion establishes irreparable injury) (*See* Dkt. Nos. 5-6; Ex. A to Dabney Decl.)  Plaintiffs will continue to be irreparably harmed if Defendants are not permanently enjoined from all use of the "Guggenheim" name and mark, because Plaintiffs will have lost control over the reputation associated with their famous and federally registered GUGGENHEIM marks.

### 2.   No Adequate Remedy of Law Exists

As detailed *supra*, the Court has warned Defendants repeatedly not to use the "Guggenheim" name.  Moreover, Defendant Birnbaum has been charged with a federal felony for using "Guggenheim."  Nonetheless, Defendants flatly refuse to stop using the "Guggenheim" name.  Thus, Plaintiffs have satisfied the second *eBay* factor - "no adequate remedy of law" – because "the record contains no assurance against defendant's continued violation of plaintiffs' [trademarks]." *Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010) (granting permanent injunction).  "Moreover, [Plaintiffs'] demonstration of irreparable harm necessarily demonstrates that [they have] no adequate remedy at law." *Microsoft Corp. v. Atek 3000 Computer, Inc.*, 2008 U.S. Dist. LEXIS 56689 (E.D.N.Y. July 23, 2008) (granting permanent injunction).

### 3.    The Hardships Weigh in Plaintiffs' Favor

Defendants are engaged in trademark counterfeiting.  Thus, the only hardship that

Defendants will suffer in this case through a permanent injunction is the imposition of an

obligation to comply with the law.  *See Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F.

Supp. 2d 72, 85 (S.D.N.Y. 2009) (granting permanent injunction, balance of hardships favored

plaintiffs because only hardship that would befall defendants was to obey the law while plaintiffs

faced continued loss of goodwill and impairment to exploit trademarks).  Further, any loss of

business or harm to Defendants for being enjoined from such conduct is not cognizable.  *See*

*Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970)

(granting plaintiff preliminary injunction against trademark infringer; although defendant may

suffer loss of business if enjoined from selling infringing products, "this is a loss [Defendants]

may be justifiably be called upon to bear."), *aff'd* 432 F.2d 784 (2d Cir. 1970).  Thus, the balance

of hardships supports the entry of a permanent injunction.

### 4.    The Public Interest Will Be Served Through a Permanent Injunction

Issuing a permanent injunction in this case would protect not only Plaintiffs, but also

unsuspecting potential investors and the public at large.  The public interest is served in the

prevention of consumer confusion.  *See Microsoft Corp. v. Atek 3000 Computer, In*c., No. 06-cv-

6403, 2008 U.S. Dist. LEXIS 56689, at *18 (E.D.N.Y. July 23, 2008) (granting permanent

injunction).  Indeed, "trademark laws exist to protect the public from confusion." *Hermes Int'l v.*

*Lederer de Paris Fifth Ave. Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000).  Courts routinely find that

the public interest weighs in favor of enjoining trademark counterfeiting and infringement

activities to protect the public from deception as to goods and services.  *See Montblanc-Simplo*

*GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010) (granting permanent injunction, explaining that, "here is greater public benefit in securing the integrity of plaintiffs' trade dress than in permitting defendant to infringe those interests and cause consumer confusion."); *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1067 (S.D.N.Y. 1970) (granting preliminary injunction against defendant's sale of counterfeit goods, explaining that "it must be observed that the public is entitled to protection in a matter of this kind.  It would be irresponsible for a court to permit the defendants, whether in good faith or otherwise, to palm off spurious products on a credulous public.  The community is entitled to receive for its money the product which it believes it is buying.").

For the forgoing reasons, Plaintiffs respectfully request that the Court enter a permanent injunction as proposed in Plaintiffs' [Proposed] Default Judgment, filed herewith.

### B.   Plaintiffs are Entitled to an Award of Statutory Damages on Account of Defendants' Trademark Counterfeiting

The Lanham Act permits Plaintiffs to recover between $1,000 and $200,000 in statutory damages "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. §1117(c).  If the counterfeiting is willful, Plaintiffs may recover up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  *Id.*  Statutory damages are available as a remedy against counterfeiters "because counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept [,] ... making proving actual damages in these cases extremely difficult if not impossible."  *Union of Orthodox Jewish Congregations of Am. v. Am. Food & Bev. Inc.*, 704 F. Supp. 2d 288, 290 (S.D.N.Y. 2010).

### 1.   Defendants Used "Counterfeits" of Plaintiffs' GUGGENHEIM Marks

A defendant is liable for trademark counterfeiting under the Lanham Act if he uses a

mark that is "identical or substantially indistinguishable" from Plaintiff's federally registered

mark for the identical service identified in Plaintiff's federal registration. 15 U.S.C. §1116(d).

As detailed *supra* (pp.2-3), Defendants willfully used five (5) different "counterfeits" of

Plaintiffs' federally registered GUGGENHEIM marks for investment and financial consultation

services: (1) GUGGENHEIM; (2) GUGGENHEIM FUND; (3) GUGGENHEIM BANK; (4)

GUGGENHEIM ADVISORS; and (5) GUGGENHEIM PARTNERS.  (*See* Exs. 7-8, 11, 13-15,

21-23 to SAC.)  Because of the egregious nature of Defendants' conduct which is discussed

above and in further detail below, the Court should award the maximum amount of statutory

damages available, i.e., $2 million dollars per "counterfeit" mark.  Plaintiffs should be awarded a

total of $10 million in statutory damages for Defendants' counterfeiting as summarized below.

| Plaintiffs' Trademark Registration and Services | Defendants' Counterfeit Marks | Evidence |
|---|---|---|
| **GUGGENHEIM** (Reg. No. 3,121,127) for investment and financial consultation services | **(1) GUGGENHEIM (2) GUGGENHEIM FUND (3) GUGGENHEIM BANK (4) GUGGENHEIM ADVISORS** | *See* Exs. 7-8, 11, 14-15, 21-23 to SAC |
| **GUGGENHEIM PARTNERS** (Reg. No. 3,110,878) for investment and financial consultation services | **(5) GUGGENHEIM PARTNERS** | *See* Exs. 7-8 to SAC |
| | **5 counterfeit marks x $2 million per mark = $10 million in statutory damages** | |

> ### 2.      Defendants' Trademark Counterfeiting Was Willful

Plaintiffs are entitled to the maximum statutory damages because Defendants'

counterfeiting was willful.  First, Defendants repeatedly used counterfeits of Plaintiffs' federally

registered marks in order to capitalize on the famousness of those marks and to attempt to

defraud consumers out of billions of dollars.  (*See* Exs. 7- 8, 11, 18-19 to SAC.)  Defendants'

explicit references to Plaintiffs' identical business names and websites in association with
Defendants' fraudulent scheme, e.g., **GUGGENHEIM, GUGGENHEIM PARTNERS,**
**guggenheimpartners.com** and **guggenheimadvisors.org**, demonstrates Defendants'
willfulness. *See Paddington Corp. v. Attiki Importers and Distrib., Inc.*, 996 F.2d 577, 586-87
(2d Cir. 1993) (evidence that defendant intentionally copied plaintiff's mark demonstrates bad
faith).

     Second, Defendants have continued use of "Guggenheim," despite the Court's repeated,
explicit orders to stop all such use. *See Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*,
2008 U.S. Dist. LEXIS 77013 (S.D.N.Y. Oct.2, 2008) (willfulness found to support enhanced
statutory damages when defendant failed to cease use of counterfeits of plaintiffs' marks after
notice from plaintiff).  Despite the Court's: (i) November 22, 2010 TRO prohibiting the use of
Plaintiffs' GUGGENHEIM marks; (ii) December 17, 2010 Preliminary Injunction prohibiting
the use of "Guggenheim" in any manner; (iii) express warning at the December 30, 2010 hearing
not to use the "Guggenheim" name; and (iv) February 10, 2011 denial of Defendants' motion to
amend the Preliminary Injunction to allow for use of "Guggenheim," Defendants have continued
to use the "Guggenheim" name as recently as March 2011. (*See* Costonis Decl., Ex. A to
Dabney Decl.)  Further, Defendants cannot plausibly claim that they did not understand the
scope of the Court's numerous injunctive orders as Defendants sought to amend the Preliminary
Injunction on January 26, 2011 to use "Guggenheim" for, among other things, vodka. (Dkt. No.
65.)  Defendants' repeated violations of the Court's orders clearly demonstrate Defendants'
willfulness. *See Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, 697 F. Supp. 2d 287,
301 (E.D.N.Y. 2009) (awarding maximum amount of statutory damages against defendants who
continued selling counterfeit goods after entrance of TRO); *Gucci Am., Inc. v. Duty Free*

*Apparel, Ltd.*, 315 F. Supp. 2d at 522 (granting maximum statutory damages where defendant "knew he was under an injunction not to sell counterfeit merchandise" but sold at least three more counterfeit items within a month of the Court's injunction).

### C.    Reasonable Attorneys' Fees and Costs

Plaintiffs also are entitled to an award of reasonable attorneys' fees and costs for Defendants' trademark counterfeiting and infringement. *See* 15 U.S.C. 1117(a); *Ahava v. J.W.G., Ltd.*, 286 F. Supp. 2d 321, 325 (S.D.N.Y. 2003). Indeed, absent "extenuating circumstances," an award of reasonable attorneys' fees is mandatory in a willful counterfeiting cases. *See* 15 U.S.C. §1117(b) (in cases involving the intentional use of a counterfeit mark, "the court **shall**, unless the court finds extenuating circumstances," grant "a reasonable attorney's fee"); *see also Burberry Ltd. v. Designers Imps., Inc.*, 07 Civ. 3997, 2010 U.S. Dist. LEXIS 3605 at *30-31 (S.D.N.Y. Jan. 19, 2010) (granting attorneys' fees upon a finding of willful infringement and "no extenuating circumstances."); *Fila U.S.A. v. Run Run Trading Corp.*, 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y. May 20, 1996) (granting attorneys' fees and costs in counterfeiting case because defendants demonstrated no "extenuating circumstances"). The Court should award reasonable attorney's fees and costs here for several different reasons.

First, "extenuating circumstance" is an affirmative defense which is waived where, as here, it was not pled by Defendants. *See Louis Vuitton, S.A. v. Pun Yan Lee*, 875 F.2d 584, 590 (7th Cir. 1989). Second, there are no "extenuating circumstances" to preclude an award of reasonable attorneys' fees and costs. Defendants engaged in a nationwide fraud designed to deceive investors into believing that Defendants are Plaintiffs. (*See supra* pp. 2-3.) Sophisticated investors were deceived into believing that Defendants are Plaintiffs and the

investment transactions at issue were worth hundreds of millions and in some instances billions of dollars.  (*See id.*)

Plaintiffs respectfully request that the Court award the reasonable attorneys' fees and costs that Plaintiffs have incurred in investigating and prosecuting this action against Defendants. Plaintiffs note that they have a pending motion for the imposition of an award of attorneys' fees against defaulting Defendants Toumei, Zurevel and Pichel.  Because the Court's ruling on that motion may affect the requested amount of attorneys' fees and costs against Defendants Birnbaum and Dabir, Plaintiffs respectfully request that, if the Court grants an award of reasonable attorneys' fees against any or all of Defendants Toumei, Zurevel, Pichel, Birnbaum and Dabir, that Plaintiffs be allowed to then promptly submit a declaration documenting the reasonable attorneys' fees and costs they seek against each Defendant.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for entry of default judgment against Defendants Birnbaum and Dabir and enter a permanent injunction in the form attached hereto, and further award Plaintiffs: (1) statutory damages of $10 million against Defendants Birnbaum and Dabir, jointly and severally, and (2) reasonable attorneys' fees and costs incurred by Plaintiffs in this action.

McDERMOTT WILL & EMERY LLP

April 18, 2011              By:

    /s/  John J. Dabney
    John J. Dabney (admitted *pro hac vice*)
    Rita Weeks (admitted *pro hac vice*)
    Robert W. Zelnick (admitted *pro hac vice*)
    McDermott Will & Emery LLP
    600 13th Street, NW
    Washington, DC  20005

(202) 756-8000 (telephone)
(202) 756-8087 (facsimile)

Michael Shanahan (NY Bar. # 3971793)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY  10173
(212) 547-5400 (telephone)
(212) 547-5444 (facsimile)

*Attorneys for Plaintiffs*
*Guggenheim Capital, LLC and Guggenheim Partners, LLC*

WDC99 2008259-1.067276.0119