UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUGGENHEIM CAPITAL, LLC, AND GUGGENHEIM PARTNERS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>CATARINA PIETRA TOUMEI, A/K/A LADY CATARINA PIETRA TOUMEI A/K/A CATARINA FREDERICK; VLADIMIR ZURAVEL A/K/A VLADIMIR GUGGENHEIM A/K/A VLADIMIR Z. GUGGENHEIM A/K/A VLADIMIR Z. GUGGENHEIM BANK; DAVID BIRNBAUM A/K/A DAVID B. GUGGENHEIM; ELI PICHEL; THEODOR PARDO; DABIR INTERNATIONAL, LTD., AND JOHN DOES 1-10,<br><br>    Defendants. | Civil Action No. 10-CV-8830-PGG<br><br>Honorable Paul G. Gardephe<br><br>JURY TRIAL DEMANDED<br><br>**[PROPOSED] DEFAULT JUDGMENT AGAINST DEFENDANT BIRBNAUM AND DEFENDANT DABIR INTERNATIONAL LTD.** |

The Court hereby makes the following findings of fact and conclusions of law in connection with the entry of default judgment against Defendants David Birnbaum and Dabir International, LLC. Unless otherwise noted, the following findings are supported by the well-pleaded factual allegations in Plaintiffs' Second Amended Complaint and the evidence attached thereto.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**FINDINGS OF FACT**

**A.   Plaintiffs and Their Famous GUGGENHEIM Trademarks**

1. Plaintiff Guggenheim Capital, LLC is a financial services and investment management holding company, headquartered in Chicago, Illinois, with an office in New York, New York. Plaintiff Guggenheim Partners, LLC is a wholly-owned subsidiary of Guggenheim Capital LLC and

has an office and is qualified to do business in New York, New York. (Order Granting Preliminary Injunction, Dkt. No. 25 ("PI Order") ¶1; Second Amended Compl., Dkt. No. 50 ("SAC"), ¶¶6-7, 21.)

2. Plaintiffs are among the most famous and highly-respected financial firms in the United States. Plaintiff Guggenheim Capital, LLC traces its roots to the famous Guggenheim family, a major contributor to the development of business and philanthropy in the United States, and its members include the Guggenheim family. (SAC ¶21.)

3. Plaintiff Guggenheim Partners, LLC is a global financial services firm offering financial consultation and investment services under the mark GUGGENHEIM and formatives thereof. Guggenheim Partners, LLC provides services to: individuals, including high-net-worth individuals; institutional investors; endowments; foundations; insurance companies; pension plans; and other institutions, who together entrust the firm with more than $110 billion in assets. (SAC ¶22.)

4. For more than fifty 50 years, Plaintiffs and their predecessors-in-interest have advertised and offered financial consultation and investment services under the mark GUGGENHEIM and formatives thereof, such as GUGGENHEIM CAPITAL, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM INVESTMENT ADVISORS, GUGGENHEIM FUNDS and GUGGENHEIM SECURITIES (collectively, "GUGGENHEIM Marks") (PI Order, ¶3; SAC ¶23.)

5. Plaintiffs offer a wide range of financial consultation and investment services under their GUGGENHEIM Marks. For example, Plaintiffs offer investment opportunities relating to commodities such as such as crude oil, petroleum products and other energy sources, and activities relating to the mining and distribution of precious metals, such as gold. (SAC ¶26.)

6. Plaintiff Guggenheim Capital, LLC owns federal trademark registrations for GUGGENHEIM and formatives thereof for a variety of products and services, including

financial consultation and investment services, and licenses some of those marks to Plaintiff Guggenheim Partners, LLC, including: GUGGENHEIM (Reg. No. 3,121,127); GUGGENHEIM PARTNERS (Reg. No. 3,110,878); and GUGGENHEIM INVESTMENT ADVISORS (Reg. No. 3,712,544). (PI Order, ¶4; SAC ¶24.)

7. Plaintiffs also own common law trademark rights in GUGGENHEIM and GUGGENHEIM-formative marks for financial consultation and investment services, including GUGGENHEIM CAPITAL, GUGGENHEIM ADVISORS, GUGGENHEIM INVESTMENT ADVISORS, GUGGENHEIM FUNDS and GUGGENHEIM SECURITIES. (SAC ¶25.)

8. For decades, Plaintiffs' GUGGENHEIM Marks have been known throughout the United States as identifying Plaintiffs as the source of the high-quality and trusted financial consultation and investment services and related products and services. (SAC ¶¶26, 30.)

9. Plaintiffs have invested millions of dollars to advertise and promote their financial consultation and investment services under the GUGGENHEIM Marks. (SAC ¶27.) Plaintiffs have earned significant revenue under the GUGGENHEIM Marks. (*Id.*)

10. Plaintiffs advertise and render their products and services under the GUGGENHEIM Marks throughout the United States and provide information about those products and services at *guggenheimpartners.com, guggenheimadvisors.com, guggenheimfunds.com,* and *guggenheiminvestmentadvisors.com,* among others. (SAC ¶23.)

11. Plaintiffs' GUGGENHEIM Marks have achieved substantial, unsolicited, nationwide media coverage in a variety of publications, as well as through television and the internet. (SAC ¶¶28-29; Exs. 5-6 to SAC.)

12. Plaintiffs' GUGGENHEIM Marks are famous to the general consuming public throughout the United States. (*See* SAC ¶¶108-113; PI Order ¶6, finding that defendants' continued use of Plaintiffs' GUGGENHEIM Marks would cause Plaintiffs immediate and

irreparable injury, including "dilution of Plaintiffs' famous GUGGENHEIM trademarks.").)

**B.     Defendants' Scheme to Defraud Consumers Using Counterfeits of Plaintiffs' GUGGENHEIM Marks**

13. Defendant David Birnbaum is an individual residing at 525 Ocean Parkway, Brooklyn, New York 11218. Defendant Birnbaum uses the phony aliases "David B. Guggenheim" and "David Guggenheim." (SAC ¶10; *see* transcript of January 13, 2011 hearing, attached as Ex. 8 to Dkt. No. 8, 19:7-9 where the Court noted that "David B. Guggenheim" is not Defendant Birnbaum's "correct name.")

14. Defendant Dabir International, Ltd. ("Dabir") is a Delaware limited liability company located at 525 Ocean Parkway, Brooklyn, New York 11218. (SAC ¶11.) Dabir is the alter ego of Defendant Birnbaum, and Defendant Birnbaum owns, controls, directs, authorizes and operates Dabir. (*Id.*)

15. Defendants Birnbaum and Dabir (collectively, "Defendants") engaged in a nationwide scheme to defraud investors by offering financial consultation and investment services using Plaintiffs' famous GUGGENHEIM Marks. (SAC ¶31.) Using counterfeits of Plaintiff's GUGGENHEIM Marks and marks that are substantially similar to those marks, Defendants purport to be Plaintiffs and offer consumers investment opportunities in bogus, large-scale transactions involving things such as crude oil, bank guarantees, diamonds, and gold. (*Id.*)

16. In furtherance of the scheme, Defendants distributed advertising and communications proposing business transactions—some in excess of 1 billion dollars—including letters, financial documents, advertising materials, and emails, which Defendants designed to appear as if they originated from Plaintiffs, when in reality they originated from Defendants. (SAC ¶32.)

17. For example, Defendants distributed advertising materials, emails, "letters of intent," investment proposals, and purchase agreements using Plaintiffs' GUGGENHEIM Marks and

soliciting: (a) purchase contracts for crude oil for billions of dollars; (b) the sale of "Bank Guarantees" in the denominations of $300 million, $500 million, and $1 billion; (c) loans in excess of 1 billion dollars; and (d) the sale of diamonds. (SAC ¶¶31-74; Exs. 7-9, 11, 13-15, 17, 22 to SAC; *see also* Def. Birnbaum's first responses to Plaintiffs' interrogatories, attached as Ex. 4 to Dkt. No. 63; Def. Birnbaum's first responses to Plaintiffs' requests for production of documents, attached as Ex. 5 to Dkt. No. 63; Birnbaum Transcript, attached as Ex. 7 to Dkt. No. 63, at 94:7-17; 202:1-15.)

18. Defendants' advertising materials prominently display Plaintiffs' mark GUGGENHEIM or a formative of GUGGENHEIM, such as GUGGENHEIM FUND and GUGGENHEIM BANK, and Defendants' documents that are distributed to investors to solicit business are replete with unauthorized uses of Plaintiffs' GUGGENHEIM Marks, such as GUGGENHEIM ADVISORS and GUGGENHEIM PARTNERS. (*Id.*, Exs. 7-9, 11, 13-15, 17, 22 to SAC.) Some of Defendants' counterfeits of Plaintiffs' GUGGENHEIM Marks are depicted in the identical font, type style and distinctive purple color that Plaintiffs use to depict their GUGGENHEIM Marks. (SAC ¶¶34, 37; Exs. 7, 11 to SAC.) Defendants' advertising materials and communications also contain false claims of association with Plaintiffs. (SAC ¶¶34-39.)

19. On November 22, 2010, the Court entered a temporary restraining order prohibiting Defendant Birnbaum, other named defendants, and all persons acting in concert or participation with them, from using the GUGGENHEIM marks. (Dkt. No. 3.)

20. Despite the entry of the TRO prohibiting the use of Plaintiffs' GUGGENHEIM Marks, on November 29, 2010, Defendant Dabir filed an application to register GUGGENHEIM for financial services with the U.S. Patent and Trademark Office. (Ex. 29 to SAC; *see* Jan. 6, 2011 Order setting conference to discuss Dabir's trademark application, Dkt. No. 37.) The address

listed in the trademark application is the same as Defendant Birnbaum's address. (*Id.*)

21. On December 17, 2010, the Court entered a preliminary injunction prohibiting Defendants and all persons acting in concert or participation with them from using the GUGGENHEIM Marks. (PI Order, Dkt. No. 25.)

22. The Court held that "Defendants are advertising, promoting, distributing, offering for sale and/or selling investment and financial products and services under counterfeits and unauthorized reproductions of Plaintiffs' GUGGENHEIM trademarks and will continue to carry out such acts unless restrained by Order of the Court..." (PI Order, p. 6.)

23. The Court held that Defendants have no right to use Plaintiffs' GUGGENHEIM Marks. (*See* PI Order, ¶7.) The Court found that Defendants' use of Plaintiffs' GUGGENHEIM marks "has led to actual confusion in the marketplace, and presents a serious risk of fraud." (*Id.* ¶8.)

24. The Court held that Defendants' continued advertising, offering to sell, sale and/or rendering of products and services under counterfeits and unauthorized reproductions of Plaintiffs' GUGGENHEIM Marks would cause Plaintiffs "immediate and irreparable injury," including "diminution of the value of Plaintiffs' trademarks, impairment of goodwill and reputation, confusion in the marketplace, and dilution of the distinctiveness of Plaintiffs' famous GUGGENHEIM trademarks." (PI Order ¶6.)

25. Defendants continued to use the name "Guggenheim" after entry of the preliminary injunction. For example, during at least the last two weeks of December 2010, Defendant Birnbaum conducted business meetings and engaged in business discussions representing himself as "David B. Guggenheim," chairman of "Guggenheim Bank." (Dkt. No. 73 (12/30 Hearing Tr.), 6:15-7:4).)

26. During a hearing on December 30, 2010, the Court warned Defendant Birnbaum that its

"patience is wearing thin here. It's wearing very thin. And if I get so much as a peep from [Plaintiffs'' counsel] that [Defendant Birnbaum] is continuing to use the Guggenheim name in business, the consequences are going to be very very severe." (*Id.*, 11:15-22.)

27. Based upon Defendant Dabir's filing of a trademark application for GUGGENHEIM, the Court granted Plaintiffs' Motion to Amend the Complaint to add Dabir International, Ltd. as a defendant. (Jan. 13, 2011 Order, Dkt. No. 49.) Plaintiffs filed a Second Amended Complaint on January 14, 2011 (Dkt. No. 50.)

28. On February 10, 2011, the Court denied Defendant Birnbaum's application for modification of the preliminary injunction order to permit Defendant Birnbaum to use Plaintiffs' GUGGENHEIM Marks, including the name "David Guggenheim." (February 2, 2011 Order denying Defendant Birnbaum's request for modification, Dkt. No. 65.)

29. From January to March 2011, and as recently as March 1, 2011, Defendants Birnbaum and Dabir continued to use the GUGGENHEIM name in connection with financial transactions. (*See* March 4, 2011 letter from John Dabney to Judge Gardephe and enclosed March 1, 2011 Declaration of Joel Costonis, attached as Ex. A to Dabney Declaration.)

30. On April 4, 2011, at the show cause hearing for why Defendants should not be held in default, the Court noted that "Plaintiffs have now offered evidence to me that as recently as [March 2011], the conduct which appears to be not only trademark infringement, but, as I said, possibly fraud, has continued, despite several orders I have issued, despite admonitions, despite warnings that it was to stop. It has continued." (Tr. of April 4, 2011 hearing, attached as Ex. C to Dabney Decl.)

31. Defendants' unauthorized use of marks identical and similar to Plaintiffs' GUGGENHEIM Marks is likely to cause confusion, mistake and deception as well as dilution of

the distinctive quality of Plaintiffs' GUGGENHEIM Marks. (SAC ¶85.)

32. Defendants' acts were undertaken with the intent to trade upon to goodwill, recognition and fame associated with Plaintiffs' GUGGENHEIM Marks. (SAC ¶86.)

33. Defendants' conduct causes, and has caused, consumers to falsely believe that Defendants' financial consultation and investment services, and purported investment opportunities and other products and services, originate from Plaintiffs. (SAC ¶¶82-87; Decls. of Lawrence Carroll and Jeffrey Bartlett, Dkt. Nos. 5 and 6; Decl. of Joel Costonis, Ex. A to Dabney Decl.)

## II. CONCLUSIONS OF LAW

### A. Defendants Birnbaum and Dabir Infringed Plaintiffs' GUGGENHEIM Marks

32. To prevail on their trademark infringement claims, Plaintiffs must prove: (1) ownership of valid GUGGENHEIM marks; and (2) that Defendants' use of similar marks is likely to cause confusion as to the source or approval of Defendants' goods and services.[1] 15 U.S.C. §§ 1114, 1125. See *Louis Vuitton Malletier v. Dooney & Bourke. Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).

#### 1. Plaintiffs Own Valid GUGGENHEIM Marks

33. Plaintiff Guggenheim Capital, LLC owns federal registrations for GUGGENHEIM, GUGGENHEIM PARTNERS, and GUGGENHEIM INVESTMENT

---

[1] To prevail on their counterfeiting claims, Plaintiffs also must prove that Defendants are using an "identical or substantially indistinguishable" mark for the same services that are identified in Plaintiffs' federal registrations. See *Chloe v. Designersimports.com USA, Inc.*, No. 07-cv-1791, 2009 U.S. Dist. LEXIS 42351, at *17 (S.D.N.Y. Apr. 29, 2009) (plaintiffs established prima facie case for trademark counterfeiting and infringement where defendant used plaintiff's mark on handbags, the same goods covered by plaintiffs' trademark registration, explaining that under the Lanham Act, a "counterfeit" is a "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark," and accordingly, "counterfeits, by their very nature, cause confusion."). See 15 U.S.C. § 1116(d)(1)(B) (a counterfeit mark is defined as "a spurious designation that is identical with, or substantially indistinguishable from" a registered mark).

ADVISORS for financial consultation and investment services. (*See* SAC ¶24, Ex. 4 to SAC.) Those registrations are "prima facie" evidence that Plaintiffs' GUGGENHEIM Marks are valid, that Plaintiffs owns the marks, and that Plaintiffs have the "exclusive right" to use the marks in commerce. 15 U.S.C. § 1057(b). (*See also* PI Order ¶4.)

### 2. Defendants' Use of Plaintiffs' GUGGENHEIM Marks Causes a Likelihood of Confusion

34. To prevail on their trademark infringement claims, Plaintiffs also must show that Defendants' use of Plaintiffs' GUGGENHEIM Marks and similar marks causes a likelihood of confusion. Likelihood of confusion is assessed using the following factors: (1) strength of plaintiff's mark; (2) similarity of the parties' marks; (3) competitive proximity of the parties' services; (4) the likelihood that plaintiff will "bridge the gap," if any, between the parties' services; (5) actual confusion; (6) defendant's good faith; (7) the quality of defendant's services; and (8) purchaser sophistication. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).[2]

### a. Plaintiffs' GUGGENHEIM Marks Are Strong and Famous

35. The strength of Plaintiffs' trademarks is evaluated in terms of their (i) conceptual strength, i.e., whether the mark is inherently distinctive in relation to the services for which it is used; and (ii) commercial strength, i.e., the degree to which the marks are known in the marketplace. *See Virgin Enters. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003). The stronger and

---

[2] While courts generally consider the eight-factor likelihood of confusion test in assessing trademark infringement claims, "the Court need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion," and, indeed, "confusing the customer is the whole purpose of creating counterfeit goods." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). As discussed *infra*, this Court finds that Defendants' conduct constitutes trademark counterfeiting that inherently causes a likelihood of confusion, but nevertheless considers the eight-factor likelihood of confusion analysis in an abundance of caution.

more famous a plaintiff's mark, the greater the likelihood of confusion. *Id.* at 149.

36. Plaintiffs' ownership of federal registrations for GUGGENHEIM Marks demonstrates that Plaintiffs' marks are entitled to a high level of trademark protection. *See Omega, S.A. v. S & N Jewelry Inc.*, No. 92 Civ. 3656 (PKL), 1992 U.S. Dist. LEXIS 8359, at *11 (S.D.N.Y. June 8, 1992) (federal registrations mean that marks should be afforded a "high level of trademark protection").

37. Plaintiffs and their predecessors have been using the GUGGENHEIM Marks for financial consultation and investment services for over 50 years. *See Planned Parenthood Fed'n of Am. v. Bucci*, No. 97 Civ. 0629, 1997 U.S. Dist. LEXIS 3338, at **24, 40 (S.D.N.Y. Mar. 19, 1997), *aff'd*, 1998 U.S. App. LEXIS 22179 (2d Cir. N.Y. Feb. 9, 1998) (strength of plaintiff's mark shown by registration of mark and continued use for approximately 50 years). The strength of Plaintiffs' GUGGENHEIM Marks is evident through Plaintiffs' investment of millions dollars promoting their GUGGENHEIM Marks and the significant revenue that Plaintiffs have earned under those marks. *See Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear*, 909 F. Supp. 896, 905 (S.D.N.Y. 1995).

38. Further, the strength and fame of Plaintiff's GUGGENHEIM Marks is apparent from the persistent, substantial, unsolicited international and national media coverage which Plaintiffs' receive. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) This Court has held that Plaintiffs' GUGGENHEIM Marks are famous. (PI Order ¶6.) Thus, this factor weighs in favor of finding a likelihood of confusion.

### b. Defendants' Marks Are Identical To And Substantially Indistinguishable From Plaintiffs' GUGGENHEIM Marks

39.     The "similarity of the marks" factor attempts to discern "whether the similarity of the marks is likely to cause confusion among potential customers." *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005).  Here the parties' marks are identical and virtually indistinguishable.

40.     Plaintiffs own federal registrations for GUGGENHEIM-formative marks, including GUGGENHEIM, GUGGENHEIM PARTNERS, and GUGGENHEIM INVESTMENT ADVISORS.  (SAC ¶24, Ex. 4 to SAC.)  Defendants use the marks GUGGENHEIM, GUGGENHEIM PARTNERS, GUGGENHEIM ADVISORS, GUGGENHEIM FUND and GUGGENHEIM BANK.  (SAC ¶¶31-34; Exs. 7-9, 11, 13-15, 17, 22 to SAC.)

41.     The parties' marks are identical in sight and sound in many cases, and substantially indistinguishable in some instances.  Confusion is "inevitable," where, as here, a defendant uses the exact trademark as plaintiff. *See Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.*, No. CV-07-1455 (CPS), 2007 U.S. Dist. LEXIS 34108, at *9 (E.D.N.Y. May 9, 2007) (granting preliminary injunction where parties used identical marks).

42.     Defendants' addition of the generic term "bank" or "fund" to the name GUGGENHEIM does not dispel the likelihood of confusion and in fact increases it because the generic term relate to Plaintiffs' financial services. *See New York City Triathlon, LLC*, 704 F. Supp. 2d 305, 317 (S.D.N.Y. 2010).  Thus, this factor weighs in favor of finding a likelihood of confusion.

### c.     The Parties Offer Identical Services

43.     The greater the similarity between the parties' services, the greater the likelihood of confusion. The parties' services are identical, i.e., financial consultation and investment services. (SAC ¶¶84, 87.) *See Metlife, Inc. v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223, 233 (S.D.N.Y. 2005) (granting preliminary injunction where both parties offered retail banking services).[3] Thus, this factor weighs in favor of finding a likelihood of confusion.

### d.     Defendants' Use Of "Guggenheim" Is Causing Actual Confusion

44.     "Actual confusion is the best evidence of a likelihood of confusion. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. N.Y. 1987) ("While . . . it is not necessary to show actual confusion . . . there can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.").

45.     Defendants' use of counterfeits of Plaintiffs' GUGGENHEIM Marks and marks that are similar to Plaintiffs' GUGGENHEIM Marks is causing actual consumer confusion, including among sophisticated investors. (SAC ¶¶82-83; *see* Decls. of Jeffrey Bartlett and Lawrence Carroll, Dkt. Nos. 5-6.) Plaintiffs received numerous communications from customers and professional advisors showing that Defendants' unauthorized use of "Guggenheim" caused those persons to believe that Defendants are Plaintiffs. (*Id.*) *See GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297-298 (S.D.N.Y. 2002) (granting permanent injunction, explaining that "professional buyer's actual confusion "speaks volumes about the likely confusion of less informed consumers."). Thus, this factor weighs in favor of finding a likelihood of confusion.

---

[3]     The parties offer the same services and thus the "bridging the gap" factor necessarily weighs in favor of Plaintiffs. *See, e.g., Blue & White Food Prods. Corp. v. Shamir Food Indus.*, 350 F. Supp. 2d 514, 521 (S.D.N.Y. 2004).

### e. Defendants Adopted And Used "Guggenheim" In Bad Faith

46. Plaintiffs are not required to show Defendants' bad faith to prevail on their infringement claims. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. N.Y. 1986) (affirming infringement as a matter of law although defendant adopted mark in good faith). However, evidence of defendant's bad faith, i.e., a defendant's intent to confuse, is strong evidence of likelihood of confusion. *See Polaroid*, 287 F.2d at 4965. Indeed, bad faith may be presumed where, as here, defendant uses counterfeit marks. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) ("a presumption of bad faith attaches to the use of a counterfeit mark.").

47. Defendants adopted and used Plaintiffs' GUGGENHEIM Marks in bad faith because Defendants have used counterfeits of Plaintiffs' famous GUGGENHEIM marks, e.g., GUGGENHEIM, and GUGGENHEIM PARTNERS. (SAC ¶¶34-37, 47-48, 57, 69-71 & Exs. 7-8, 11, 13-15, 17-20, 21-23 thereto.) *See Paddington Corp. v. Attiki Importers and Distrib., Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) (evidence that defendant intentionally copied plaintiff's mark demonstrates bad faith). Defendants' use of "Guggenheim" was also in bad faith because they continued to use the "Guggenheim" name for months after they were enjoined and after being repeatedly ordered and warned by the Court not to engage in such conduct. (*See supra.*)

48. Further, Defendants adopted and used Plaintiffs' GUGGENHEIM Marks in bad faith because Defendants offer and sell services that are identical or nearly identical to those offered under Plaintiffs' famous GUGGENHEIM Marks, i.e., financial consultation and

investment services.[4] (SAC ¶¶34-37, 47-48, 57, 69-71 & Exs. 7-8, 11, 13-15, 17-20, 21-23 thereto.) *See Fila U.S.A. v. Run Run Trading Corp.*, 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y. May 20, 1996) ("where a party endeavors to sell products which are identical or nearly identical to those of another party's well-known and widely distributed trademarks, it is reasonable to infer bad faith.").

### f.   Overall Balance of the Likelihood of Confusion Factors

49.   Virtually all of the likelihood of confusion factors weigh in favor of Plaintiffs. Plaintiffs' GUGGENHEIM marks are famous and federally registered. Defendants are using GUGGENHEIM marks that are identical or virtually indistinguishable from Plaintiffs' GUGGENHEIM Marks for the same services identified in Plaintiffs' federal trademark registrations. Defendants' conduct has caused actual confusion in the marketplace, including among sophisticated investors. Defendants' use of Plaintiffs' GUGGENHEIM Marks is a bad faith attempt to trade off of the goodwill and reputation of Plaintiffs' famous marks. Defendants' conduct is likely to cause a likelihood of confusion and a likelihood of dilution with respect to Plaintiffs' GUGGENHEIM marks in violation of the federal Lanham Act and New York law.

50.   Defendants are liable for trademark infringement, trademark counterfeiting, false designation of origin, trademark dilution and unfair competition in violation of the Lanham Act and New York law. 15 U.S.C. §§ 1114(1), 1125(a).  Unless Defendants are permanently enjoined, Plaintiffs will continue to suffer irreparable injury and the public will be deceived on account on Defendants' use of the "Guggenheim" name and mark.

---

[4] The sophistication of consumers factors is at most neutral in the likelihood of confusion analysis because Defendants' use of Plaintiffs' GUGGENHEIM marks has caused actual confusion among sophisticated investors.

51. Defendants' conduct constitutes the intentional trafficking in counterfeit marks in violation of the Lanham Act and New York law, including 15 U.S.C. § 1116(d). Defendants have used five different counterfeit GUGGENHEIM Marks. Because Defendants' conduct is willful, intentional and in bad faith, the Court finds that statutory damages in the amount of $2 million per counterfeit mark is appropriate under the circumstances of this case.

52. Defendants' unlawful conduct has been knowing and intentional and there are no "extenuating circumstances" for such conduct. Plaintiffs are entitled to an award of their reasonable attorney's fees and costs under the Lanham Act and New York law.

In view of the foregoing, it is THEREFORE, it is ORDERED, ADJUDGED and DECREED:

1. Defendants David Birnbaum and Dabir International, Ltd. and each of their respective partners, owners, officers, directors, associates, agents, servants, employees, attorneys, successors and assigns, and all persons acting in active concert or participation with them are hereby permanently enjoined and restrained from:

   a. Using or causing others to use Plaintiffs' GUGGENHEIM names or marks alone or in combination with any other word(s), initial(s), number(s), letter(s), number(s), mark(s), name(s), term(s), symbol(s), designation(s) and/or design(s), or any marks that are colorably similar to Plaintiffs' GUGGENHEIM names or marks for any purpose whatsoever, including, but not limited to, use any of the following:

   - "Guggenheim";
   - "Guggenheim Capital";
   - "Guggenheim Partners";

- "Guggenheim Fund;"
- "Guggenheim Advisors;"
- "Guggenheim Investment Advisors";
- "Guggenheim Real Estate Advisors";
- "Guggenheim Brothers";
- "Guggenheim Securities";
- "Vladimir Z. Guggenheim";
- "David B. Guggenheim";
- "David Guggenheim";
- "Mr. Guggenheim" or "Messrs. Guggenheim";
- "Guggenheim family";
- "Guggenheims";
- "Guggenheim Foundation";
- "Guggenheim Museums";
- "The Solomon R. Guggenheim Museum";
- "The Peggy Guggenheim Collection";
- "The Guggenheim Museum Bilbao";
- "Deutsche Guggenheim";
- "Guggenheim Abu Dhabi";
- "Guggenheim bank"; and
- "Guggenheim private diamond collection."

      b.     Registering or using any domain name or filing any trademark application or any other document in a federal, state or local government agency that contains GUGGENHEIM, any of Plaintiffs' GUGGENHEIM marks, or a colorably similar mark; and

      c.     Using any word, term, name, symbol, designation or device, or any combination thereof, or any false designation of origin or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive regarding the origin, sponsorship or approval of Defendants' products or services, falsely implies a connection or affiliation with Plaintiffs or Plaintiffs' GUGGENHEIM-branded products or services or that is likely to cause dilution of the distinctive character of Plaintiffs' famous GUGGENHEIM marks.

2.     In the event of a violation of this Order, Defendants shall be liable for an automatic fine if $100,000 per violation, and an award of Plaintiffs' reasonable costs and attorneys' fees in bringing the violation to the Court's attention.

3.     Within three (3) business days from the entry of this Order, Defendants shall furnish to Plaintiffs a list of all persons, including contact information, with whom they have communicated regarding a proposed or actual business transaction since January 1, 2010.

4.     Before offering to sell any product or service to any person, Defendants shall first furnish a copy of this Judgment to any such person.

5.     Defendants shall pay Plaintiffs statutory damages for trademark counterfeiting in the amount of ten million dollars ($10,000,000), in lieu of an award of actual damages and profits, pursuant to 15 U.S.C. § 1117(c).

6.     Defendants shall pay Plaintiffs' reasonable costs and attorneys' fees in bringing this action. Plaintiffs are directed to submit a detailed declaration documenting their costs and attorney's fees within three (3) days of entry of this Order.

7.    Within thirty (30) days of entry of this Judgment, Defendants shall file with the Court and serve on Plaintiffs a report in writing under oath setting forth in detail the manner and form in which they have complied with this Judgment. 15 U.S.C. § 1116(a).

8.    If necessary, Defendants shall participate in discovery in aid of execution on this Judgment, including by attending depositions and producing discoverable documents.

Dated: New York, New York

April __, 2011

SO ORDERED

_____
Paul G. Gardephe
United States District Judge

WDC99 2008347-1.067276.0119