UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

                Plaintiffs,

v.

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A CATARINA
FREDERICK; VLADIMIR ZURAVEL A/K/A
VLADIMIR GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI PICHEL;
THEODOR PARDO; DABIR INTERNATIONAL,
LTD.; AND JOHN DOES 1-10,

                Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/22/11
```

**ORDER**

10 Civ. 8830 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       This action, brought under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, et seq., and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962, et seq., alleges – inter alia – trademark infringement, trademark dilution, false advertising, and fraud. Plaintiffs Guggenheim Capital, LLC, and Guggenheim Partners, LLC – investment firms and the owners of various "Guggenheim" marks – allege that Defendants have attempted to defraud consumers by offering fake investment opportunities in connection with the Guggenheim name. Defendants David Birnbaum and Dabir International, Ltd. (the "Moving Defendants") have moved to dismiss on the grounds that the Second Amended Complaint ("SAC") fails to allege facts that make out a cause of action against them.

       For the reasons stated below, the motion to dismiss will be granted in part and denied in part.

## BACKGROUND

The SAC alleges that Defendants

> are engaged in a nationwide scheme to defraud consumers out of billions of dollars by pretending to be Plaintiffs . . . . Defendants distribute letters, investment proposals, and other financial documents bearing counterfeits of Plaintiffs' federally registered GUGGENHEIM marks. Purporting to be Plaintiffs, Defendants offer consumers the chance to participate in multi-million and multi-billion dollar investments involving a variety of products, such as crude oil, bank guarantees, diamonds, and gold.

(SAC ¶¶ 1-2) Asserting that "Defendants are co-conspirators and are aware of each others' actions and intentions in furtherance of a scheme to defraud" (id. ¶ 3), the SAC sets forth sixty paragraphs of factual allegations detailing Defendants' use of Plaintiffs' marks in connection with fraudulent schemes involving oil (id. ¶¶ 34-39), gold (id. ¶¶ 40-42), bank guarantees (id. ¶¶ 47-56), and diamonds. (Id. ¶¶ 57-68) The alleged schemes to defraud have involved approaches to the Coca-Cola Company (id. ¶¶ 43-46), George H.W. and George W. Bush (id. ¶¶ 69-72), and Rupert Murdoch. (Id. ¶¶ 73-74) For each alleged fraudulent scheme, the SAC sets forth dates, participants, and other details; relevant letters and emails are attached to the SAC as exhibits.[1]

When this action was filed on November 22, 2010, the Court entered a temporary restraining order enjoining Defendants from "us[ing] the Guggenheim Capital, LLC and Guggenheim Partners, LLC names and trademarks in any way relevant to this matter." (Dkt. No. 3) A preliminary injunction was entered on December 17, 2011. (Dkt. No. 25) All defendants other than Defendant Birnbaum failed to answer the Complaint or respond to discovery requests, and default judgment was entered against Defendants Toumei, Zuravel, and Pichel on January 6,

---

[1] The fraudulent schemes alleged in the SAC are the subject of a criminal complaint filed in this court on January 26, 2011, by the United States Attorney's Office. Catarina Pietra Toumei, David Birnbaum, and Vladimir Zuravel are charged in that action with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. United States v. Toumei et al., 11 Mag. 207 (S.D.N.Y. Jan. 26, 2011).

2011. (Dkt. No. 40) Retained counsel appeared for Birnbaum at the preliminary injunction hearing on December 17, 2011, but Birnbaum later dismissed that lawyer as well as an attorney who replaced him. Accordingly, Birnbaum is now proceeding pro se.

## DISCUSSION

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.

3

1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II. ANALYSIS

Moving Defendants argue that "while Plaintiffs make many allegations against Defendants generally, and even some allegations against defendant[s] other than the Moving Defendants particularly, they have made only two substantive and particular allegations concerning the actions of Moving Defendants." (Def. Br. 5) Moving Defendants claim that these "two substantive and particular allegations" – a telephone call to the Coca-Cola Company and the submission of a trademark application, both discussed below – are insufficient "to support any of Plaintiffs' causes of action." (Id. at 1) Defendants go on to contend that Plaintiffs have impermissibly "lumped" all the Defendants together, have failed to set forth each defendant's alleged misconduct, and have thus failed to "give adequate notice to the defendants as to what they did wrong." (Id. at 8) As to the RICO claim, the Moving Defendants argue that, "[t]here is no adequate allegation of pattern, or enterprise." (Id. at 16)

This Court concludes that the SAC's allegations against the Moving Defendants are sufficiently detailed and particular to survive a motion to dismiss, with the exception of Claim Four (Federal Cyberpiracy).

Accepting the SAC's allegations as true, as the Court must at this stage, Defendant Birnbaum – using the name "David B. Guggenheim" – was a key player in the unauthorized use of Plaintiffs' marks and the related schemes to defraud potential investors. Defendant Birnbaum allegedly called the Coca-Cola Company, purported to be a member of the

4

Guggenheim family, indicated that he had substantial amounts of money to invest, and expressed a wish to "partner" with the Coca-Cola Company in investment activity. He requested a meeting with Coca-Cola senior management to discuss partnering with the company. (Id., Ex. 10) Defendant Birnbaum's home telephone number was provided to the Coca-Cola Company and was represented to be the telephone number for the Guggenheims' office in New York. (Id., Ex.10, Ex. 3)

In the fraudulent bank guarantee scheme, potential investors were instructed to send proof of funds "to the attention of, 'Mr. David B. Guggenheim, Chairman of Guggenheim Fund, and Mr. Vladimir Z. Guggenheim, President of Guggenheim Fund.'" (Id., Ex. 11) The address printed on the solicitation's letterhead for the "Guggenheim Fund" is an address publicly listed as Defendant Birnbaum's residence. (Id., Ex. 11, Ex. 3) The SAC also cites numerous fraudulent letters sent to potential investors letters inviting them to enter into business transactions with "David B. Guggenheim." See, e.g., SAC, Ex. 14 ("Mr. Vladimir Guggenheim and Mr. David B. Guggenheim are ready, willing and able to supply you with up to 100,000 carats worth of rough diamonds according to your needs"); Ex. 11 ("Mr. David B. Guggenheim and Mr. Vladimir Z. Guggenheim . . . currently are ready, willing, and able to issue Bank Guarantees from Deutsche Bank, Credit Suisse, HSBC London, and Barclays London"); Exs. 21, 22 (seeking to arrange telephone call or private meeting between Defendant Birnbaum and "either President Bush"); Ex. 23 (seeking private meeting with Rupert Murdoch). In these letters, Birnbaum, a/k/a "David B. Guggenheim," is represented to be, inter alia, an owner of the "Guggenheim Museums," the "Guggenheim Foundation," the "Guggenheim Fund," and the "Guggenheim Bank." (SAC, Ex. 11, 21-23)

5

Defendant Dabir International, which Plaintiffs allege "is the alter ego of Defendant Birnbaum" (id. ¶ 11), filed a trademark application with the Patent and Trademark Office on November 29, 2010 – after this Court had entered the above-described temporary restraining order – for the mark "Guggenheim" as used in connection with various financial services. (Id., Ex. B) The application lists as Defendant Dabir International's address the same address publicly listed as Defendant Birnbaum's residence. The application further claims that "[t]he name 'Guggenheim' has been used in our commerce for over 40 years, as it is our family name." (Id.) Attached to the application is a picture of a vodka bottle – as "an example of one of the many commerces that we have been involved in for over a decade, using the Guggenheim name" – bearing the name "David B. Guggenheim." (Id.)

The SAC's trademark infringement, counterfeiting, false designation, and unfair competition claims require that Plaintiffs allege facts sufficient to show that Plaintiffs own a valid mark and that Defendants' unauthorized use of the mark causes a likelihood of confusion. See Gucci Am., Inc. v. Action Activewear, Inc., 759 F. Supp. 1060, 1063 (S.D.N.Y. 1991); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 119 (2d Cir. 2006). Plaintiffs – owners of valid Guggenheim marks (SAC, ¶ 24) – have not merely alleged a likelihood of confusion in the SAC, but have submitted several examples of actual consumer confusion caused by Defendants, including Defendant Birnbaum. (See, e.g., SAC ¶¶ 82-83)

To support their claim of trademark dilution, Plaintiffs must allege that their marks are distinctive and famous and that Defendants' use of the marks causes a likelihood of dilution. See Mister Softee, Inc. v. Marerro, No. 04 Civ.4011 JSR GWG, 2004 WL 2368009, at *3 (S.D.N.Y. Oct. 21, 2004). Here, Plaintiffs have alleged that their marks are famous (SAC ¶¶ 21, 26-29) and that Defendants' commercial use of the marks began after the marks became

6

famous. (Id. ¶¶ 31, 34, 40, 43, 47, 57) Plaintiffs also allege that Defendants' use of the marks "[has] injured Plaintiffs' business reputation, blurred and tarnished the distinctive quality of Plaintiffs' [marks], and lessened the capacity of Plaintiffs' famous [marks] to identify and distinguish Plaintiffs' goods and services." (Id. ¶ 111) These allegations are supported by evidence showing that consumers have incorrectly believed that Plaintiffs support the alleged services being offered by Defendants. (Id. ¶ 82) These allegations are sufficient to make out a claim for trademark dilution. See Mister Softee, 2004 WL 2368009, at *3.

To make out a claim for false advertising and deceptive trade practices, Plaintiffs must allege facts sufficient to show that:

> "(1) defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff's [or defendant's] services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) defendants' actions made plaintiff believe it would be damaged by the representations."

Yves Saint Laurent Parfums, S.A. v. Costco Wholesaler Corp., No. 07 Civ. 3214(LBS)(HBP), 2010 WL 2593671, at *8 (S.D.N.Y. June 24, 2010) (quoting Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 629 (S.D.N.Y. 2003), aff'd, 355 F.3d 206 (2d Cir. 2004)). Here, Plaintiffs have sufficiently alleged that Defendants made false and misleading representations – including that they were associated with Plaintiffs – while soliciting various business deals, and that Plaintiffs believed these actions would damage Plaintiffs. (See SAC ¶¶ 125-27)

The fourth claim for relief alleges cyberpiracy under 15 U.S.C. § 1125(d), which provides:

> (1)(A) [a] person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

7

>> (ii) registers, traffics in, or uses a domain name that –
>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>>
>>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>>>
>>> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A). The statute further states that "[a] person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D). Although the SAC alleges that "Defendants have registered, trafficked in and used the domain name guggenheimadvisors.org" (SAC ¶ 115 (emphasis added)), Exhibit 24 to the SAC indicates that the website was registered by "Lady Catarina Toumei" and lists a California address and telephone number not associated with the Moving Defendants. Because the SAC does not allege that either of the Moving Defendants is a "domain name registrant or that registrant's authorized licensee," 15 U.S.C. § 1125(d)(1)(D), the SAC does not state a cause of action against Moving Defendants for cyberpiracy. Accordingly, Moving Defendants' motion to dismiss will be granted as to the cyberpiracy claim.

Finally, Birnbaum argues that the RICO claim must be dismissed[2] because (1) Plaintiffs have not specified the acts of racketeering committed by Birnbaum; and (2) "[t]here is no adequate allegation of pattern, or enterprise." (Def. Br. 16) "To state a claim under RICO, a complaint must allege (1) that the defendant (2) through the commission of two or more acts (3)

---

[2] The RICO claim does not name Defendant Dabir International. (See SAC ¶¶ 135-40)

8

constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce." Trans World Airlines, Inc. v. 47th St. Photo, Inc., No. 88 Civ. 1936 (PNL), 1990 WL 481956, at *7 (S.D.N.Y. Apr. 16, 1990) (citing Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983)). Contrary to Birnbaum's assertion, and as discussed above, the SAC pleads numerous acts of wire fraud involving Birnbaum. These acts of wire fraud are sufficient to make out a "pattern" for purposes of the RICO statute. The SAC also adequately pleads the existence of a RICO enterprise. The SAC and attached exhibits contain sufficient facts to demonstrate the existence of an enterprise "consisting of an ongoing association-in-fact, which included [the Moving] Defendants and others [who] . . . were a continuing unit in a particular course of fraudulent conduct [that involved] working together in furtherance of their common goal of defrauding consumers" through fraudulent use of the Guggenheim marks. (SAC ¶ 134)

   In sum, except as to the cyberpiracy claim, the SAC adequately pleads a cause of action as to each claim. The SAC sets forth facts as to each alleged fraudulent scheme, and demonstrates how Defendants Birnbaum and Dabir International utilized Plaintiffs' marks in an effort to convince investors that the Moving Defendants were associated with Plaintiffs. The SAC connects the Moving Defendants to the fraudulent schemes directly and provides factual allegations sufficient "to give [them] fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp., 507 F.3d at 121 (citing Twombly, 550 U.S. at 555).

## CONCLUSION

For the reasons stated above, Defendant Birnbaum and Defendant Dabir International's motion to dismiss is granted as to Claim Four (Cyberpiracy) but otherwise denied. The Clerk of the Court is direct to terminate the motion (Dkt. No. 83).

Dated: New York, New York
      April 22, 2011         SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge