UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

                      Plaintiffs,

                v.

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A
CATARINA FREDERICK; VLADIMIR
ZURAVEL A/K/A VLADIMIR
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI
PICHEL; THEODOR PARDO; DABIR
INTERNATIONAL, LTD.; AND JOHN DOES
1-10,

                      Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/15/11

**ORDER**

10 Civ. 8830 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This action, brought under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, et seq., and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962, et seq., alleges – inter alia – trademark infringement, trademark dilution, false advertising, and fraud.  Plaintiffs Guggenheim Capital, LLC, and Guggenheim Partners, LLC – investment firms and the owners of various "Guggenheim" marks – allege that Defendants have attempted to defraud consumers by offering fake investment opportunities in connection with the Guggenheim name.[1]  Plaintiffs have filed a motion for an award of statutory damages and attorneys' fees against Defendants Catarina Pietra Toumei, Vladimir Zuravel, and Eli Pichel.  (Dkt. No. 76)  Defendant Birnbaum

---

[1]  Familiarity with the facts of this case and previous proceedings, laid out in part in an April 22, 2011 order (Dkt. No. 101), is presumed.

has filed a motion to stay these proceedings pending resolution of a related criminal proceeding

(United States v. Toumei et al., 11 Mag. 207 (S.D.N.Y. Jan. 26, 2011)).  (Dkt. No. 91)

For the following reasons, Plaintiffs' motion will be granted, and Defendant

Birnbaum's motion will be denied as moot.

## DISCUSSION

### I.   PLAINTIFFS' MOTION FOR STATUTORY DAMAGES AND ATTORNEYS' FEES WILL BE GRANTED

#### A.   Statutory Damages for Counterfeiting

In this Court's January 6, 2011 order, default judgment was granted against

Defendants Toumei, Zuravel, and Pichel.[2]  (Dkt. No. 40)  "A plaintiff's factual allegations,

except those relating to damages, must be accepted as true where, as here, the defendant

defaults." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).

Accordingly, Plaintiffs have established that Defendants engaged in willful trademark

counterfeiting and cybersquatting.  (See Dkt. No. 40)

The Lanham Act permits Plaintiffs to recover statutory damages of $1000 to

$200,000, or, if use of the counterfeit mark was willful, up to $2,000,000, "per counterfeit mark

per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15

U.S.C. § 1117(c)(1)-(2).  Accordingly, because the counterfeiting here was willful, the Court

may award up to $2,000,000 per counterfeit mark.  Plaintiffs – owners of the registered marks

"Guggenheim" and "Guggenheim Partners" for investment and financial consultation services[3] –

---

[2]  Default judgment was also granted against Theodor Pardo, but was later vacated pursuant to this Court's order granting Pardo's motion to quash service of process.  (Dkt. No. 68)

[3]  Plaintiffs own federally registered marks for, inter alia, "Guggenheim" for "[p]roviding information, advice and consulting in the fields of finance, insurance, business, banking, asset management and investment; financial investment in the fields of securities, funds, real estate, and venture capital businesses . . . " and "Guggenheim Partners" for "[f]inancial consultation

have provided evidence of five counterfeit marks used by Defendants:  (1) Guggenheim; (2) Guggenheim Fund; (3) Guggenheim Bank; (4) Guggenheim Advisors; (5) Guggenheim Partners and guggenheimpartners.org.  (Feb. 22, 2011 Pltf. Br. Ex. A-N)  Plaintiffs argue that imposition of the maximum amount of statutory damages – that is, a total of $10,000,000 – is warranted here because of Defendants' willfulness, violations of court orders, and continued infringement, and because of the actual confusion caused.  (Id. at 7-10)

Although 15 U.S.C. § 1117(c)(2) provides little guidance for determining the appropriate award in a case involving willful trademark violations, "'courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.'" All-Star Mktg. Group, LLC v. Media Brands Co., No. 10 Civ. 1764(RMB)(AJP), 2011 WL 9381, at *7 (S.D.N.Y. Jan. 3, 2011) (quoting Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009)).  Accordingly, "'where, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.'" Id. (quoting Malletier, 648 F. Supp. 2d at 504).  The following factors have been considered by courts in determining damages under Section 1117(c):

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Id. at *7-8.

---

services, namely, providing information, advice and consulting in the fields of finance, banking, asset management and investment; financial investment in the fields of securities, funds, real estate, and venture capital businesses. . . ." (Cmplt. ¶ 22)

The "key factors weigh in plaintiffs' favor" here. See id. at *8. Although there is nothing in the record regarding any profits earned by Defendants – because Defendants have not responded to discovery requests – Defendants used the counterfeit marks in proposed transactions involving more than $1 billion (see Cmplt. ¶ 30), and several sophisticated investors were deceived into believing that they were dealing with Plaintiffs. (See Carroll Decl. (Dkt. No. 5); Bartlett Decl. (Dkt. No. 6)) With regard to the fourth factor, courts have found that "'the goal of deterring similar conduct by other enterprises requires a substantial award.'" All-Star Mktg. Group, LLC, 2011 WL 9381, at *8 (quoting Louis Vuitton Malletier, S.A. v. LY USA, No. 06 Civ. 13463(AKH), 2008 WL 5637161, at *2 (S.D.N.Y. Oct. 3, 2008)).

Willfulness is also present, because Defendants clearly intended to associate themselves with Plaintiffs. (See Feb. 22, 2011 Pltf. Br. Ex. B (Letter of Intent from Defendant Toumei as "Legal Representative for Mr. Vladimir Z. Guggenheim" to EGC Corp) at 2-3 (directing EGC Corp to Plaintiffs' websites for more information on the Guggenheim family))[4]

Most significantly, Defendants have failed to comply with this Court's orders and have continued to use the infringing marks. Defendants have violated this Court's January 6, 2011 order regarding discovery, and have not paid the fines or attorneys' fees resulting from that violation. (See Dkt. No. 36) Defendant Toumei has failed to transfer the domain name guggenheimadvisors.org to Plaintiffs, or pay the fines relating to her use of the domain name, as required by another January 6, 2011 order (Dkt. No. 38), and she continued to solicit business under the Guggenheim name after a temporary restraining order was entered on November 22,

---

[4] Willfulness is also evident from Defendants' default, "because an innocent party would presumably have made an effort to defend itself." Chloe v. Zarafshan, No. 1:06-cv-03140-RJH-MHD, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009).

2010, barring her from engaging in such conduct. (See Nov. 30, 2010 Dabney Decl., Ex. 3-4 (e-mails from Toumei assuring investors that Defendants are not fraudulent)

While courts frequently enter substantial monetary awards "where the defendant willfully infringes on the plaintiff's mark and fails to stop such behavior after being put on notice by the plaintiff or the court," those awards typically fall well below the statutory maximum "where there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue." All-Star Mktg. Group, LLC, 2011 WL 9381, at *9 (citing Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., 06 Civ. 7827(HB)(GWG), 2008 WL 4449533, at *5-6 (S.D.N.Y. Oct. 2, 2008) (awarding $200,000 for each of five counterfeit marks, and finding that "[c]ourts have awarded similar damages in other cases in which there was little information as to the scope or circumstances of a defendant's infringement.")); Pitbull Prods., Inc. v. Universal Netmedia, Inc., 07 Civ. 1784(RMB)(GWG), 2007 WL 3287368, at *3-4 (S.D.N.Y. Nov. 7, 2007) ("Taking into account the defendants' failure to submit to this Court any documentation from which to determine damages, the willfulness of . . . their conduct, and the deterrent effect a damages award would have on both the defendants and others, the Court believes that $250,000 per mark [for two marks] is sufficient to compensate [plaintiff] for losses it suffered and to deter both the defendants and others from infringing on those marks in the future."); Rodgers v. Anderson, No. 04CIV1149RJHAJP, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005) ("$250,000 in statutory damages based on willful infringement is sufficient and appropriate to deter defendants and others.")). Indeed, cases in which maximum statutory damages have been awarded generally involve hundreds of thousands if not millions of counterfeit goods. See Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., 697 F. Supp. 2d 287, 297 (E.D.N.Y. 2009); Malletier v. Carducci Leather Fashions, Inc., 648 F.Supp.2d 501,

5

505-06 (S.D.N.Y.2009) (awarding $100,000 per trademark, and finding that in cases in which maximum damages were awarded "there was reason to believe that the defendant's sales were substantial"); but see Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999) (awarding $750,000 in statutory damages for counterfeiting of approximately 5,500 handbags worth at least $230,000).

Given that there is no evidence that Defendants reaped any profit from their infringing conduct, the Court finds that an award of $250,000 per infringing mark is appropriate here. Accordingly, Plaintiffs are entitled to $1,250,000 in statutory damages for trademark infringement under 15 U.S.C. § 1117(c) in connection with Defendants' five infringing marks.

**B.      Statutory Damages for Cybersquatting**

Plaintiffs also seek to recover statutory damages from Defendant Toumei, who registered and used the domain name guggenheimadvisors.org in a bad faith effort to profit from Plaintiff's registered marks in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Under this statute, "[a] person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name" that is "identical or confusingly similar to or dilutive of" a famous mark. "[A] court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark," as this Court did in its January 6, 2011 order (Dkt. No. 38). 15 U.S.C. 1125(d)(1)(C). In cases of cyberpiracy, the Lanham Act permits recovery of statutory damages up to $100,000. 15 U.S.C. § 1117(d).

"The specific provision governing damages for a cybersquatting claim includes no specific guidance with respect to willfulness." Mamiya Am. Corp. v. HuaYi Bros., No. 09–CV–

6

5501 (ENV)(JO), 2011 WL 1322383, at *8 (E.D.N.Y. Mar. 11, 2011) (citing 15 U.S.C. § 1117(d)). "However, such guidance can be found in other similar provisions of the Lanham Act providing for as much as a ten-fold increase in the maximum award of statutory damages where the defendant is shown to have acted willfully." Id. (citing 15 U.S.C. 1117(c)(2) (increasing the maximum award of statutory damages for counterfeiting violation from $[200,000] to $[2,000,000] upon a finding of willfulness)).

Because "[t]he statutory minimum award of $1,000 is presumptively sufficient for purposes of deterrence and compensation where there is no reason to believe the violation was willful or that it resulted in any harm," the court in Mamiya Am. Corp. awarded the plaintiff a ten-fold increase over the minimum award for a willful violation. See id. Plaintiffs have cited no law supporting their request for the statutory maximum, and given that "statutory damages are a substitute for actual damages, and should replicate as nearly as possible the actual harm done to the successful plaintiff without punishing it for lacking information on the issue due to the absent defendant's default," id. at *7, this Court concludes that a ten-fold increase over the statutory minimum is appropriate. Accordingly, Plaintiffs are entitled to $10,000 in statutory damages for Defendant Toumei's cybersquatting under 15 U.S.C. § 1125(d).

## C.   Attorneys' Fees and Costs

Because Defendants used counterfeit marks, "the court shall, unless the court finds extenuating circumstances, enter judgment for . . . a reasonable attorney's fee." 15 U.S.C. § 1117(b); see also Burberry Ltd. & Burberry USA v. Designers Imports, Inc., No. 07 Civ. 3997(PAC), 2010 WL 199906, at *11 (S.D.N.Y. Jan. 19, 2010) ("Since there was willful infringement and no 'extenuating circumstances,' the Court allows Burberry attorneys' fees and costs, as required by 15 U.S.C. § 1117(b)."). No extenuating circumstances have been suggested

by Defendants.  See <u>Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.</u>, 628 F. Supp. 2d 312, 325 (E.D.N.Y. 2009) (finding that personal circumstances were not extenuating circumstances because "[a]lthough [the defendant] may well have pressing family responsibilities, he refused to produce in discovery various records relevant to his personal financial circumstances").  Accordingly, Plaintiffs are entitled to attorneys' fees.

Plaintiffs are directed to submit a declaration and supporting documentation concerning attorneys' fees and costs by July 20, 2011.

## II.   <u>DEFENDANT BIRNBAUM'S MOTION TO STAY WILL BE DENIED</u>

Defendant Birnbaum has filed a motion to stay these proceedings pending resolution of a related criminal proceeding.  This Court finds no basis for granting a stay.  In any event, default judgment has been entered against Defendant Birnbaum (<u>see</u> July 14, 2011 default judgment order).  Accordingly, his stay motion will be denied as moot.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' motion for an award of statutory damages and attorneys' fees [Dkt. No. 76] is GRANTED, and Defendant Birnbaum's motion for a stay [Dkt. No. 91] is DENIED.  The Clerk of the Court is directed to terminate the motions.

Dated: New York, New York
      July 14, 2011                                      SO ORDERED.

_____
Paul G. Gardephe
United States District Judge