UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

                                    Plaintiffs,

                    v.

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A
CATARINA FREDERICK; VLADIMIR
ZURAVEL A/K/A VLADIMIR
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI
PICHEL; THEODOR PARDO; DABIR
INTERNATIONAL, LTD., AND JOHN DOES
1-10,

                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8 2 11

**ORDER**

10 Civ. 8830 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        A default judgment was entered against Defendant David Birnbaum on July 14,

2011. (Dkt. No. 103) On July 29, 2011, Birnbaum filed a motion for reconsideration, stating

that he "had to plead the 5th Amendment and was unable to defend [him]self in the civil matter

because of the ongoing criminal matter," but that if a deferred prosecution request pending

before the U.S. Attorney's Office is granted "the 5th Amendment impediment will be removed

and I will thereafter be prepared to defend and proceed." (July 29, 2011 Birnbaum Ltr.) For the

following reasons, Birnbaum's motion for reconsideration is denied.

## BACKGROUND

        Plaintiffs commenced this action against Defendant Birnbaum and others on

November 22, 2010. On that date, the Court entered a temporary restraining order enjoining

Birnbaum from using Plaintiffs' "Guggenheim" "names and trademarks in any way relevant to this matter." (Dkt. No. 3)  The Court also ordered Birnbaum to respond to Plaintiffs' expedited discovery requests within four calendar days of the service of the requests, and required him to preserve all records related to this matter. (Id.)  The Court then set a briefing schedule for Plaintiffs' preliminary injunction motion. (Dkt. No. 13)  Birnbaum did not submit any opposition to Plaintiffs' preliminary injunction motion, nor did he comply with the deadlines for discovery set forth in the TRO.  He appeared with counsel at the December 17, 2010 preliminary injunction hearing, however, and the Court granted him an extension of time to respond to Plaintiffs' discovery requests and to answer the Complaint. (Dkt. No. 30)

The Court entered a preliminary injunction order on December 17, 2010, enjoining Birnbaum from "[u]sing Plaintiffs' GUGGENHEIM trademarks alone or in combination with any other mark, term, symbol, designation or design, or any term that is confusingly similar to Plaintiffs' GUGGENHEIM trademarks." (Dkt. No. 25 at 5)

On December 30, 2010, this Court held a hearing concerning Birnbaum's continued use of Plaintiffs' "Guggenheim" marks, in violation of the TRO and the preliminary injunction order, because Plaintiffs had produced evidence that Birnbaum had met with an investor during the week of December 13, 2010, and represented himself as "David B. Guggenheim," chairman of "Guggenheim Bank." (Dkt. No. 73 (Dec. 30, 2010 Hearing Tr.) at 6:15-7:4)  The Court warned Birnbaum that the Court's "patience is wearing thin here.  It's wearing very thin.  And if I get so much as a peep from [Plaintiffs' counsel] that [Birnbaum] is continuing to use the Guggenheim name in business, the consequences are going to be very very severe." (Id. at 11:15-22)

2

On January 13, 2011, the Court held a conference regarding Birnbaum's alleged violation of the TRO, which involved his filing of an application with the U.S. Patent and Trademark Office to register the trademark "Guggenheim." The Court granted Plaintiffs' motion to add Dabir International, Ltd. ("Dabir") – the entity that filed the trademark application, and which Plaintiffs allege is an alter ego of Defendant Birnbaum – as a defendant. At Birnbaum's request, the Court granted him an extension of time to January 21, 2011, to answer or amend his interrogatory responses and respond to Plaintiffs' requests for production of documents. (Dkt. No. 49)

In a letter dated January 20, 2011, Birnbaum notified the Court that he was changing counsel. As a result of the change of counsel, the Court granted Birnbaum another extension to respond to Plaintiff's discovery requests – this time to January 31, 2011. (Dkt. No. 54) In a letter dated January 27, 2011, Birnbaum sought a pre-motion conference regarding a proposed motion to dismiss, and requested that his February 1, 2011 deposition be postponed. The Court denied the request to postpone the deposition. (Dkt. No. 57)

On January 26, 2011, Birnbaum moved to modify the preliminary injunction order to allow him to use, inter alia, the "David Guggenheim" and "David B. Guggenheim" names. (Dkt No. 65 at 1) Birnbaum stated that he was seeking permission to use the Guggenheim mark in connection with the importation and distribution of vodka and spirits, but not – he alleged – in connection with financial services. On February 10, 2011, the Court denied Birnbaum's motion, finding that "there is evidence in the record that [the use of the trademark for financial and investment services and the use of the trademark for the importation of vodka and spirits] have been deliberately intermingled," given that Dabir International's trademark

3

application included a photograph of a vodka bottle yet requested registration of the mark "Guggenheim" for financial services. (Id. at 2)

Birnbaum did not produce the court-ordered discovery. On January 31, 2011, the Court issued an order to show cause directing Birnbaum to demonstrate "why contempt sanctions should not be imposed for his failure to respond to Plaintiffs' discovery requests." (Dkt. No. 58)

On February 7, 2011, Birnbaum moved to stay discovery pending resolution of the related criminal prosecution. Although he appeared for his deposition the next day, he refused to proceed with the deposition. During a telephone conference with the parties on the morning of February 8, the Court ordered the deposition to proceed, noting that Birnbaum should assert his Fifth Amendment privilege as he deemed appropriate. Despite the Court's instruction, Birnbaum and his counsel "ignored [the Court's] directives, disrupting and ultimately terminating the deposition shortly after the telephone conference." (Dkt. No. 66 at 2) The Court concluded that "Defendant Birnbaum and his counsel violated this Court's repeated instructions concerning procedure at the deposition." (Id.) The Court directed that Birnbaum's deposition "recommence – at a date, time, and place convenient to Plaintiffs." (Id.) The deposition was rescheduled for February 15, 2011.

On February 14, 2011, Birnbaum requested permission to proceed with the deposition on written questions instead of orally, because "[i]t is his expressed intent to invoke his Fifth Amendment privilege in response to every single question propounded by Plaintiffs' counsel." (Feb. 14, 2011 Def. Ltr. (emphasis in original)) This request was denied. (Dkt. No. 69)

4

Despite the TRO, the preliminary injunction order, the Court's warning at the December 30, 2010 hearing, and the Court's February 10, 2011 order denying Birnbaum's motion to modify the preliminary injunction order, Birnbaum continued to use the "Guggenheim" name to solicit financial deals. Between January and March 2011, Birnbaum represented to investors – in connection with a large-scale oil deal – that he was a "Guggenheim." Plaintiffs introduced a declaration from an employee of CNF Commodities stating that that company was poised to enter into a large oil transaction with Defendant Dabir and an individual who had identified himself as "David Guggenheim." (April 18, 2011 Dabney Decl., Ex. A. (Costonis Decl.)) (Dkt. No. 99)

After the alleged oil deal came to light, the Court scheduled a hearing on April 4, 2011, for Birnbaum and Dabir to show cause why a default judgment should not be entered against them. At that hearing, Birnbaum – who was then proceeding pro se – did not challenge the account in the CNF declaration or oppose Plaintiffs' request that default judgment be entered against himself and Dabir. Instead, Birnbaum invoked the Fifth Amendment. (April 18, 2011 Dabney Decl., Ex. C (Tr. from April 4, 2011 hearing) at 5:6-12)

On April 14, 2011, Plaintiffs filed a motion for a default judgment against Defendants. (Dkt. No. 96) Birnbaum did not file any opposition to Plaintiffs' motion, and the motion was granted on July 14, 2011. (Dkt. No. 103)

<strong>DISCUSSION</strong>

## I.    <u>LEGAL STANDARD</u>

The "standard for granting reconsideration is 'strict.'" <u>Laurent v. PriceWaterhouseCoopers LLP</u>, 2010 U.S. Dist. LEXIS 137123, at *3 (S.D.N.Y. Dec. 22, 2010) (quoting <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995)). "Reconsideration

5

should not be granted where the moving party seeks solely to relitigate an issue already decided."

Christoforou v. Cadman Plaza N., Inc., No. 04 Civ. 08403 (KMW), 2009 WL 723003, at *7

(S.D.N.Y. March 19, 2009). "'The moving party must establish: (1) that the court overlooked

controlling decisions or data; (2) that there has been a change in controlling law; (3) that new

evidence has become available; or (4) that reconsideration is necessary to correct a clear error or

prevent manifest injustice.'" Laurent, 2010 U.S. Dist. LEXIS 137123, at *3 (quoting Dorchester

Fin. Secs. v. Banco BRJ, 2010 U.S. Dist. LEXIS 59702, at *4 (S.D.N.Y. June 15, 2010)); see

also Shrader, 70 F.3d at 257. "A motion for reconsideration is not an 'opportunity for making

new arguments that could have been previously advanced.'" Cordero v. United States, 2010

U.S. Dist. LEXIS 136885, at *5 (S.D.N.Y. Dec. 28, 2010); see also Commerce Funding Corp. v.

Comprehensive Habilitation Servs., Inc., 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant

may not raise on a motion for reconsideration any matter that it did not raise previously to the

court on the underlying motion sought to be reconsidered.").[1]

---

[1]   While Birnbaum styles his application as a motion for reconsideration, he is, in effect, asking
the Court to vacate the July 14, 2011 default judgment. The standard under Fed. R. Civ. P. 55(c)
is similar to that for reconsideration: "The court may set aside an entry of default for good cause
. . . [or] under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) allows a court to grant relief from
a final judgment for, inter alia, "mistake, inadvertence, surprise, or excusable neglect," "newly
discovered evidence" that could not have been discovered earlier with reasonable diligence, and
"any other reason that justifies relief." Fed. R. Civ. P. 60(b). "In determining whether to set
aside a defendant's default, the Court should consider three factors: '(1) whether the default was
willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a
meritorious defense is presented.'" In re Rates - Viper Patent Litig., No. 09 Civ.
4068(LTS)(THK), 2011 WL 856261, at *2 (S.D.N.Y. Mar. 10, 2011) (quoting Powerserve Int'l,
Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)). "The Court may also consider relevant equitable
factors, including whether the failure to appear was 'a mistake made in good-faith and whether
the entry of default would bring about a harsh or unfair result.' If any doubt exists 'as to whether
a default should be granted or vacated, the doubt should be resolved in favor of the defaulting
party.'" Id. (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1991)).

## II.   ANALYSIS

Birnbaum has not met the strict standard for reconsideration. He has not demonstrated that this Court overlooked controlling decisions or data, that there has been a change in controlling law, that new evidence has become available, or that a clear error or manifest injustice must be corrected. Instead, Birnbaum argues that he might be "prepared to defend and proceed" with this action in the event that his request for a deferred prosecution in a related criminal action is granted.

This motion, however, comes on the heels of Birnbaum's repeated violations of court orders regarding discovery and multiple changes in counsel.[2] (See Dkt. Nos. 49, 54, 58, 66, 69, 73, 89, 99) Birnbaum's dilatory conduct took place both before and after criminal charges were brought against him. Accordingly, the possibility of criminal sanctions does not explain what is a long record of contumacious behavior.

Birnbaum was given ample warning that a default judgment would be entered against him if he continued to violate court orders, and he was given ample opportunity to oppose the default judgment application. (See Dkt. No. 103 at 2-6) He chose not to oppose Plaintiffs' application for a default judgment, and he has not demonstrated that reconsideration is necessary "to correct a clear error or prevent manifest injustice." Indeed, Birnbaum's motion does not address these factors.

Nor has Birnbaum met the standard for setting aside a default judgment. His default was willful: he was on notice of Plaintiffs' application, appeared at the hearing, but chose not to file an opposition. Moreover, setting aside the default judgment would prejudice

---

[2] In his July 29, 2011 application, Birnbaum asks the Court to delay decision on his motion so that he can retain new counsel. (July 29, 2011 Birnbaum Ltr.) This would be the third lawyer who has appeared on behalf of Birnbaum in this action, which has been pending for approximately 8 months.

Plaintiffs, who are at obvious risk of injury given Birnbaum's repeated efforts – despite court

orders to the contrary – to hold himself out to investors as affiliated with Plaintiffs.  Finally,

Birnbaum has not presented a meritorious defense, or in fact any defense at all.

## CONCLUSION

For the reasons stated above, Defendant Birnbaum's motion for reconsideration is

denied.

Dated: New York, New York
     August 1, 2011            SO ORDERED.

Paul G. Gardephe
United States District Judge

Copy to:
David Birnbaum
525 Ocean Parkway
Apt. 1-G
Brooklyn, NY 11218