UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUGGENHEIM CAPITAL, LLC, AND
GUGGENHEIM PARTNERS, LLC,

                        Plaintiffs,

            v.

CATARINA PIETRA TOUMEI, A/K/A LADY
CATARINA PIETRA TOUMEI A/K/A
CATARINA FREDERICK; VLADIMIR
ZURAVEL A/K/A VLADIMIR
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM A/K/A VLADIMIR Z.
GUGGENHEIM BANK; DAVID BIRNBAUM
A/K/A DAVID B. GUGGENHEIM; ELI
PICHEL; THEODOR PARDO; DABIR
INTERNATIONAL, LTD. AND JOHN DOES
1-10,

                        Defendants.

Civil Action No. 10-CV-8830-PGG

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS

On July 15, 2011, the Court justly awarded attorneys' fees and costs to Plaintiffs Guggenheim Capital, LLC and Guggenheim Partners, LLC ("Plaintiffs") based on defendants' willful trademark counterfeiting and continuous violation of multiple Court Orders. (Dkt. Nos. 102-103.) Defendants David Birnbaum ("Birnbaum") and Dabir International, Ltd. ("Dabir") (collectively "Defendants") have filed an opposition to the Declaration of John J. Dabney, Esq. (Dkt. No. 107, referred to herein as Plaintiffs' "Attorneys' Fees Declaration") which was filed in support of Plaintiffs' petition for attorneys' fees and costs. (*See* Def's Opp'n, Dkt. No. 110.) Defendants repeatedly admit that the Court awarded attorneys' fees and costs to Plaintiffs (Def's Opp'n at 5, 9) yet oppose Plaintiffs' Attorneys' Fees Declaration on irrelevant grounds.

Defendants' Opposition sets forth no valid reason for denying Plaintiffs' petition for attorneys' fees. Plaintiffs' submission of its Attorneys' Fees Declaration was timely filed and served; Plaintiffs concurrently submit detailed documentation to support their request for attorneys' fees and costs; the amount of fees and costs Plaintiffs request is reasonable; and the Court's Order granting Plaintiffs' attorneys' fees and costs was proper. Thus, Plaintiffs respectfully request that the Court grant Plaintiffs the attorneys' fees and costs, as detailed in their Attorneys' Fees Declaration (Dkt. No. 107) and the Supplemental Declaration of John J. Dabney ("Dabney Decl."), submitted concurrently herewith. Further, Plaintiffs respectfully request that the Court order contempt sanctions against Defendants for Defendants' willful refusal to comply with the requirements of the July 15, 2011 Default Judgment Order. (Dkt. No. 103.)

I.  **Plaintiffs' Attorneys' Fees Declaration Was Timely Filed**

   A.  **Plaintiffs' Attorneys' Fees Declaration Was Timely Filed By Hand On The Deadline of August 5, 2011**

Defendants spend half of their Opposition (8 of 16 pages) arguing that Plaintiffs' Attorneys' Fees Declaration was not filed on August 5, 2011, the Court deadline for the filing. (Def's Opp'n at 2-8.) Defendants' eight page argument is refuted by a single document: a Court-stamped copy of Plaintiffs' Attorneys' Fees Declaration with a filing date of August 5, 2011, which is attached as Exhibit 1 to the Declaration of Rita Weeks. (*See* Decl. of Rita Weeks ("Weeks Decl.") ¶¶ 7-8.)

In brief summary, the Court awarded Plaintiffs their attorneys' fees and costs in Orders dated July 15, 2011. (Dkt. No. 102 at 7-8; Dkt. No. 103 at 24.) Per an Order dated July 16, 2011, the deadline for Plaintiffs to file an attorney declaration documenting those fees and costs was extended to August 5, 2011. (Dkt. No. 104.) On August 5, Plaintiffs' counsel Rita Weeks

called the Court's chambers to ask whether Plaintiffs' Attorneys' Fees Declaration should be filed by hand or through the ECF System, as previously Plaintiffs had filed a similar attorney fee declaration by hand. (Weeks Decl. ¶¶ 5-6.) Ms. Weeks spoke to a male at the Court's chambers, who informed her that Plaintiffs' Attorneys' Fees Declaration should be filed by hand. (Weeks Decl. ¶ 6.) Plaintiffs filed Plaintiffs' Attorneys' Fees Declaration by hand with the Court on the August 5, 2011. (*Id.* ¶¶ 7-8.) A date-stamped copy of the Attorneys' Fees Declaration stamped by the Court as "RECEIVED" on August 5, 2011 is attached as Exhibit 1 to the Declaration of Rita Weeks. Plaintiffs' Attorneys' Fees Declaration was timely filed.

On Wednesday August 10, 2011, at 11:23 a.m., Plaintiffs' counsel received electronic notice from the Court's ECF system that the Court had rejected the filing by hand and directed Plaintiffs to file their Attorneys' Fees Declaration electronically on the Court's ECF system. (Weeks Decl. ¶ 9; Exhibit 2 to Weeks Decl.) Pursuant to the Court's instructions, Plaintiffs filed the same Attorneys' Fees Declaration that it had hand-filed on August 5 via ECF at 2:58 p.m. on that same day, August 10, 2011, after receiving the electronic notice. (*Id.* ¶ 10; Exhibit 3 to Weeks Decl.) Plaintiffs' Attorneys' Fees Declaration was timely filed on the August 5, 2011 deadline pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules. *See* S.D.N.Y. Local Rule 1.2 ("A night depository with an automatic date stamp shall be maintained by the Clerk of the Southern District in the Pearl Street Courthouse. . . After regular business hours, papers for the District Court only may be deposited in the night depository. Such papers will be considered as having been filed in the District Court as of the date stamped thereon, which shall be deemed presumptively correct."); *see* Fed. R. Civ. Proc. 5(e).

### B. No Excusable Neglect Finding Is Necessary As Plaintiffs' Attorneys' Fees Declaration Was Timely Filed And No Prejudice Exists

Defendants argue that Plaintiffs' Attorneys' Fees Declaration was "untimely" and

constitutes "prejudice [to Defendants], as well as affront to the Court and to the litigation process." (Def's Opp'n at 6.) Defendants claim that Plaintiffs must show "excusable neglect" to avoid a finding that the Attorneys' Fees Declaration was filed out of time. (*Id.*) There is absolutely no merit to these arguments.

First and foremost, Plaintiffs' Attorneys' Fees Declaration **was timely filed on August 5, 2011,** in compliance with instructions from the Court's chambers, the Federal Rules of Civil Procedure, and the Court's Local Rules. (*See* Exhibit 1 to Weeks Decl.; *see supra*, at 3.) Further, Plaintiffs' filing of its Attorneys' Fees Declaration did not prejudice Defendants. Defendants received a copy of Plaintiffs' Attorneys' Fees Declaration (*See* Def's Opp'n at 3.). Defendants filed an "opposition" to Plaintiffs' Attorneys' Fees Declaration on August 18, 2011. (Dkt. No. 107.) Defendants had sufficient notice to file a response to Plaintiffs' Attorneys' Fees Declaration and did in fact do so. The cases cited by Defendants, in which courts rejected parties' claims of "excusable neglect" concerning late court filings, are irrelevant where, as here, Plaintiffs **timely filed** their Attorneys' Fees Declaration.

## II. Plaintiffs Have Provided Detailed Documentation Sufficient to Substantiate Their Petition for Attorneys Fees and Costs

Plaintiffs support their attorneys' fees and costs request with contemporaneous time records from their attorneys at McDermott Will & Emery LLP ("McDermott"). Attached as Exhibit 1 to the Declaration of John J. Dabney, filed concurrently herewith, are true and correct copies of McDermott's invoices to Plaintiffs on a monthly basis, which provide time records entered by each attorney and non-attorney professional contemporaneously with the work performed, for the time period between July 2010 and July 2011. These records provide sufficient information to allow the Court to evaluate the reasonableness of the fees. (*See* Dabney Decl. ¶¶ 6-8.) These records also specify, for each attorney and non-attorney professional, the

date, the hours expended, and the nature of the work performed. Plaintiffs have either paid or agreed to pay all of McDermott's fees and expenses in this matter as detailed in Exhibit 1. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. N.Y. 2007) ("[t]he determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a reasonable, paying client would be willing to pay.") (*See* Dkt. No. 107 ¶ 22.)

Because Plaintiffs' Attorneys' Fees Declaration was timely filed, the Court may consider Plaintiffs' detailed documentation of its attorneys' fees and costs, submitted concurrently with this Reply. *See, e.g., Derechin v. State Univ. of New York*, 138 F.R.D. 362, 365 (W.D.N.Y. 1991) (finding that if the affidavit regarding fees had been timely submitted, although lacking in sufficient detail, the Court would have directed counsel simply to resubmit its request with an itemization of time spent, by whom and at what rate").

### III.  The Amount of Attorneys' Fees and Costs Plaintiffs Request is Reasonable

The amount of attorneys' fees sought by Plaintiffs (75% of their incurred, recoverable attorneys' fees, which is an amount totaling $618,520.00) is reasonable, based on both the hourly rates sought and in the number of hours expended. The billing rates charged by McDermott attorneys in this matter are consistent with rates charged by firms in New York City with 150 or more attorneys in 2008.[1] (*See* Dabney Decl. ¶ 9; Exhibit 2 to Dabney Decl., excerpts from American Intellectual Property Law Association's most recent "Report of the Economic Survey," dated 2009.)

---

[1] Defendants cannot credibly contest the reasonableness of Plaintiffs' counsel's rates, given Defendants' acknowledgments that Plaintiffs "are represented by a world-renowned law firm" (Def's Opp'n at 8) that is "one of the most sophisticated law firms in the world," (*Id.* at 11) and that Plaintiffs' Attorneys' Fees Declaration that details the background of the McDermott attorneys who have worked on this case describes "lawyers of impeccable credentials and experience." (*Id.* at 10.)

Moreover, the volume of hours expended by McDermott attorneys was reasonable in light of the complexity of this case[2] and the significant amount of time required to address Defendants' numerous and continuing violations of nearly all of the Court's Orders. Defendants' contumacious conduct – including the repeated failure to comply with discovery rules and continuing violation of numerous Court Orders – has necessitated Plaintiffs' counsel to expend significant time attempting to secure compliance, drafting motions and briefs, and seeking the Court's intervention to address this behavior. (*See, e.g.*, Dkt. No. 49 (ordering Birnbaum to respond to interrogatories and requests for production of documents); Dkt. No. 54 (same); Dkt. No. 58 (Order to Show Cause); Dkt. No. 66 (Order noting Birnbaum's violation of the Court's repeated instructions and improper disruption of deposition); Dkt. No. 85 (Order that Birnbaum show cause why contempt sanctions should not be imposed); Dkt. No. 103 (Order granting Default Judgment against Defendants and discussing Defendants' "history of willful non-compliance with court orders").) Defendants' conduct dramatically increased the costs Plaintiffs have been forced to spend in order to stop Defendants' counterfeiting.

---

[2] In connection with this action, McDermott attorneys performed the following tasks, among others: (1) pre-filing investigation concerning defendant's infringement and counterfeiting of Plaintiffs' GUGGENHEIM trademarks; (2) analyzing intellectual property infringement and available remedies including injunctive relief and seizure; (3) drafting a detailed and extensive Verified Complaint; (4) preparing detailed evidence of defendants' infringement and supporting declarations for the Verified Complaint; (5) drafting Plaintiffs' *ex parte* application and motion for emergency relief (temporary restraining order, seizure order, order restraining the transfer of assets, order authorizing expedited discovery); (6) drafting discovery to defendants and several third parties; (7) preparing Plaintiffs' motion for preliminary injunction including all supporting declarations and exhibits; (8) arguing the hearing on Plaintiffs' motion for preliminary injunction; (9) preparing multiple contempt motions against defendants for repeated failure to comply with Court's temporary restraining order and preliminary injunction, including multiple failures to cooperate in discovery as ordered by the Court; (10) conducting factual investigations into Defendants' violations of the Preliminary Injunction Order; (11) interviewing third parties in connection with that factual investigation; (12) participating in oral argument on some of those motions; (13) preparing for and conducting the depositions of five defendants and one witness; (14) analyzing and responding to motion to dismiss filed by defendants David Birnbaum ("Birnbaum") and Dabir International, LLC ("Dabir"); (15) preparing multiple motions for default judgment against defendants; (16) preparing for and arguing the hearing on Plaintiffs' motion for default judgment against defendants Birnbaum and Dabir; (17) preparing Plaintiffs' Attorneys' Fees Declaration; and (18) preparing Plaintiffs' Reply in Support of its Attorneys' Fees Petition. (*See* Plaintiffs' Attorneys' Fees Declaration, Dkt. No. 107, ¶ 7.)

Because some of the work performed in connection with this case was not associated with Defendants Birnbaum and Dabir or involved work performed in connection with legal research and drafting motions that ultimately were not filed, Plaintiffs reduced their request for fees by 25%. (Dkt. No. 107 ¶ 17.) This approach of an across-the-board percentage-based reduction has been accepted as a practical means to prevent courts from needing to review and rule on every single item. *See, e.g., McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Walker v. Coughlin*, 909 F. Supp. 872, 881 (W.D.N.Y. 1995).

### IV. The Court Properly Granted an Award of Attorneys Fees and Costs Under the Lanham Act

The Court found that "Defendants' unlawful conduct has been knowing and intentional and there are no "extenuating circumstances for such conduct," and thus awarded Plaintiffs their reasonable attorneys' fees and costs under the Lanham Act and New York law. (Dkt. No. 103 at 24; *see also* Dkt. No. 102 at 7-8.) Defendant Birnbaum moved for reconsideration of the July 14, 2011 Default Judgment Order, and that motion was denied a couple of days later. (Dkt. No. 106.) While Defendants state in a footnote of their Opposition that "the Court's order granting attorneys' fees is not the subject of [Defendants'] submission" (Dkt. No. 110 at 6 n.3), Defendants nonetheless argue that awarding attorneys' fees and costs should be disallowed because it would amount to a "windfall" with "no basis in law or policy." (*Id.* at 15.)

First, this argument is way, way too late. The Court already held in the Default Judgment (Dkt. 103) and the Order denying Defendants' motion for reconsideration (Dkt. No. 106) that Plaintiffs were entitled to attorney fees and costs. In contesting the **amount** of those fees and costs, Defendants may not argue that the Court was wrong to make an award of fees in the first instance. The Court already entered a judgment that such an award was proper and to the extent

that Defendants disagree with that judgment, the proper course to challenge the judgment is through an appeal.

Second, Defendants failed to make this argument in opposition to Plaintiffs' Motion for Default Judgment or in Birnbaum's Motion for Reconsideration, and thus the Court could find that the argument is waived.

Third, Defendants' argument is contrary to the law and ignores the fact that under the Lanham Act, absent "extenuating circumstances," an award of attorneys fees is <u>mandatory</u> in a willful counterfeiting case. *See* 15 U.S.C. § 1117(b) (stating that in cases involving the intentional use of a counterfeit mark, "the court shall, unless the court finds extenuating circumstances," grant "a reasonable attorney's fee.") Moreover, Defendants ignore the fact that attorneys' fees are routinely granted in cases of willful counterfeiting. *See, e.g., Burberry Ltd. V. Designers Imps., Inc.*, 07 Civ. 3997, 2010 U.S. Dist. LEXIS 3605 at *30-31 (S.D.N.Y. Jan. 19, 2010) (granting attorneys' fees upon a finding if willful infringement and "no extenuating circumstances"); *Rolex Watch U.S.A., Inc. v. Jones*, 99 Civ. 2359, 2002 U.S. Dist. LEXIS 6657 at *17-19 (S.D.N.Y. Apr. 17, 2002) (granting statutory damages and attorneys' fees where Defendant was found to have willfully infringed); *Fila U.S.A. v. Run Run Trading Corp.*, 95 Civ. 7144, U.S. Dist. LEXIS 6893 at *11 (S.D.N.Y. May 20, 1996) (granting attorneys' fees and costs in counterfeiting case because defendants demonstrated no extenuating circumstances).[3]

This Court has already found, and Defendants do not dispute, that:

- Defendants engaged in willful counterfeiting (Dkt. No. 103, *passim*);

---

[3] *Cartier v. Symbolix Inc.*, cited in Defendants' Opposition, does not support Defendants' argument that an award of attorneys fees is not appropriate in this case. (Dkt. No. 110 at 14 (citing *Cartier v. Symbolix Inc.*, 544 F. Supp. 2d 316, 319-20 (S.D.N.Y. 2008)). There, like here, the Court concluded that an award of attorneys' fees was appropriate <u>in addition to</u> statutory damages. Defendants also neglect to acknowledge that "most decisions have awarded attorneys' fees even where the damage award is pursuant to § 1117(c)." *Rodgers v. Anderson*, 04 Civ. 1149, 2005 U.S. Dist. LEXIS 7054 at *10-11 (S.D.N.Y. Apr. 26, 2005).

- Defendants' conduct was "willful, intentional, and in bad faith" (Dkt. No. 103 at 24);

- Defendants violated the temporary restraining Order entered on November 22, 2010 (Dkt. No. 103 at 3);

- Defendants have violated the preliminary injunction Order entered on December 17, 2010 (*Id.*); and

- Defendants have continued to violate numerous Court Orders (Dkt. No. 103 at 4-6).

Based on these findings, which Defendants have offered no basis to disturb, the Court properly awarded costs and attorney's fees.

### V. Civil Contempt Sanctions Should Be Imposed Against Defendants Because Defendants Have Failed to Comply With The Court's Default Judgment Order

Given Defendants' prior conduct in this proceeding, it is unsurprising that Defendants Birnbaum and Dabir have failed to comply with the Court's July 15, 2011 Default Judgment Order. (Dkt. No. 103.) Defendants' blatant disregard for that Order and disrespect for the judicial process – which coincided with the commencement of this action – necessitates civil contempt sanctions pursuant to the Court's inherent power and 18 U.S.C. § 401(3).

Defendants are obligated to comply with the Court's Default Judgment Order, even if Defendants disagree with it. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 656 (2d Cir. N.Y. 2004) (affirming district court's finding of civil contempt and imposition of sanctions). Indeed, compliance "is a matter of respect for the judicial process." *Id.* Courts have inherent power to compel obedience by holding parties in civil contempt for violating clear orders. *See Playboy Enters. v. Chuckleberry Publ.*, 939 F. Supp. 1032, 1036 (S.D.N.Y. 1996); *see also* 18 U.S.C. § 401(3). A district court may exercise its inherent power to hold a party in civil contempt where, as here: "(1) the order the party failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not been reasonably diligent and energetic in attempting to

comply." *NBA v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 376 (S.D.N.Y. 2003). Sanctions for civil contempt can be imposed without a finding of willfulness. *Chere Amie, Inc. v. Windstar Apparel*, Corp., 175 F. Supp. 2d 562, 566 (S.D.N.Y. 2001).

### A. The Court's July 15, 2011 Default Judgment Order is Clear and Unambiguous

In its July 15, 2011 Default Judgment Order entered against Defendants Birnbaum and Dabir, the Court ordered that:

> Within **three business days** from the entry of this Order, Defendants shall furnish to Plaintiffs a list of all persons, including contact information, with whom they have communicated regarding a proposed or actual business transaction since January 1, 2011.

(Dkt. No. 103 at 26 (emphasis added).) The Court further ordered that:

> Within **thirty days** of entry of this Judgment, Defendants shall file with the Court and serve on Plaintiffs a written report in writing under oath setting forth in detail the manner and form in which they have complied with this Judgment.

(*Id.* (emphasis added))

The Court's mandates are clear and unambiguous. First, Defendants must provide Plaintiffs with a "list of all persons . . . with whom they have communicated regarding a proposed or actual business transaction since January 1, 2001" – by a clear deadline, namely, within "three business days." Second, Defendants must file with the Court and serve on Plaintiffs "a written report under oath setting forth in detail the manner and form in which they have complied with this judgment" – by a clear deadline, i.e., within thirty (30) days of entry of the judgment. *See NBA*, 289 F. Supp. 2d at 377.

### B. Defendants' Noncompliance is Clear and Convincing, and Defendants Have Shown No Attempt to Comply

More than two months have passed since Defendants Birnbaum and Dabir were required to provide Plaintiffs with the above-detailed list of persons, i.e., July 20, 2011. Three weeks

- 10 -

have passed since Defendants were required to file with the Court and serve on Plaintiffs a written report of compliance, i.e., August 15, 2011. Defendants have not complied with either requirement. (Dabney Decl. ¶¶ 33-36.) The clear and convincing standard is easily met here, where Plaintiffs have shown "a quantum of proof adequate to demonstrate to a reasonable certainty that a violation has occurred." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 06 Civ. 0085, 2007 U.S. Dist. LEXIS 75812 at *9 (S.D.N.Y. Oct. 10, 2007). Moreover, the clear and convincing standard is conclusively met where, as here, Defendants have admitted that the Order contained the requirements and that they refuse to obey. (*See* August 24, 2011 letter to Judge Gardephe from Ronald D. Coleman, at 3, "Plaintiffs raise the issue of defendants' [noncompliance] with the Court's July 15 order. . . defendants were under criminal investigation during this period, and the required submission would have been rife with implications with respect to that matter.")

Defendants' abject refusal to comply with the Court's Orders has become commonplace, but it is still breathtaking when it happens. It is rare to encounter civil defendants (or counsel for that matter) that have as little regard for this Court's authority as these Defendants and their counsel. On July 29, 2011 – when Defendants were already nine (9) days late in providing Plaintiffs with the list of persons required by the July 15 Default Judgment Order – Defendants filed a Motion for Reconsideration of the Order. The Court denied Defendants' Motion, but both Defendants still refuse to comply with the Order. (*See* August 2, 2011 Order, Dkt. No. 106.) In essence, Defendants asked the Court to reconsider its Order, the Court wrote a reasoned Opinion, which said in sum or substance "no," and Defendants have responded that they will simply not comply with the Order then. Defendants' conduct amounts to "court nullification" – if Defendants disagree with an Order, they ask to reconsider it, they appeal from it, but under no

circumstances do they comply with it. Indeed, one will search the Court's docket in vain for a single Order with which these Defendants **have** complied.

The situation may be less egregious if Defendants did not know that they were violating the Default Judgment, but they do know. Plaintiffs' counsel explained the violations in his August 15, 2011 letter to the Court. The situation also would be less egregious if Defendants were not represented by counsel, but they are represented by counsel. To this day, having actual knowledge of the violations, and being represented by counsel, Defendants will not comply with the Default Judgment Order.

Defendants' counsel did not dispute the violations in his August 24, 2011 letter. But that letter did not seek any relief from the Court concerning the Default Judgment Order and it would be way too late to seek any such relief anyway. Instead, Defendants' counsel's August 24 letter argues that compliance with the Order is unnecessary because it could somehow jeopardize Defendants' liberty in view of the criminal case. To the extent that argument is coherent, it was rejected by the Court in its denial of Defendants' motion for reconsideration. (*See* Dkt. No. 106.) Further, the existence of the criminal investigation is no excuse for Dabir's failure to comply with the Order.

### C.  Defendants And Their Counsel Should Be Sanctioned For Defendants' Willful Violation of the Default Judgment Order

Defendants and their counsel should be sanctioned for Defendants' blatant refusal to comply with the Court's Default Judgment Order. "Civil contempt is not a discretionary matter; if a court order has been violated, the court must make the injured party whole." *Eros Entm't, Inc. v. Melody Spot, L.L.C.*, 99 CV 1157, 2005 U.S. Dist. LEXIS 43227 at *16 (E.D.N.Y. Oct. 11, 2005) (internal citations omitted). Civil contempt sanctions serve either or both of two purposes – to coerce compliance with a court's order, or to compensate the plaintiff from the

violator's noncompliance. *See Bear U.S.A. v. Kim*, 71 F. Supp. 2d 237, 248-249 (S.D.N.Y. 1999) (granting plaintiff's motion for contempt). The Court has broad discretion to fashion a remedy to force Defendants into compliance with the Default Judgment Order, and in doing so considers: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 96 Civ. 9721, 2002 U.S. Dist. LEXIS 16323 at *32-33 (S.D.N.Y. Sept. 3, 2002) (citations omitted).

As recognized by the Court in granting Default Judgment against Defendants, Defendants' counterfeiting and infringement of Plaintiff's GUGGENHEIM marks has caused irreparable harm to Plaintiffs in the form of loss of goodwill (Dkt. No. 103 at 10, 16). The Court also recognized that Plaintiffs would continue to suffer irreparable injury of lost goodwill, and the public would continue to be deceived, unless Defendants were permanently enjoined. (*Id.* at 23-24.) The irreparable nature of that harm clearly warrants the imposition of coercive sanctions against Defendants.

Despite the fact that Defendants have been found in contempt on multiple occasions in this case for continued use of the "Guggenheim" name in violation of the TRO and preliminary injunction, and despite the fact that Defendant Birnbaum has even been charged with a federal felony for using "Guggenheim," Defendants refuse to show the Court how they have stopped using the "Guggenheim" name, in violation of the July 15, 2011 Default Judgment Order. Moreover, Defendants continue to obstruct Plaintiffs' investigation into Defendant's unlawful acts, by refusing to provide a list of persons with whom Defendants have communicated

concerning proposed or actual business transactions, also in violation of the Default Judgment Order.

In light of Defendants' "demonstrated history of willful non-compliance with court orders" (Default Judgment Order at 9), there is no reasonable basis to believe that Defendants have actually ceased use of the "Guggenheim" name. Indeed, the undisputed evidence shows that Defendants continued using "Guggenheim" despite the Court's: (1) entry of a TRO prohibiting the use of Plaintiffs' GUGGENHEIM marks; (2) entry of a Preliminary Injunction Order prohibiting the use of "Guggenheim" in any manner; (3) express warnings to Defendants at multiple court hearings not to use the "Guggenheim" name; and (4) denial of Defendants' motion to amend the Preliminary Injunction Order to allow for use of "Guggenheim." Therefore, Defendants' repeated, willful counterfeiting of Plaintiffs' trademarks, and Defendants' "demonstrated history of willful non-compliance with court orders" **does** provide a reasonable basis to infer that Defendants are continuing to use Plaintiffs' GUGGENHEIM marks to defraud consumers, which constitutes counterfeiting and causes Plaintiffs' irreparable injury.

Plaintiffs submit that imposing sanctions upon Defendant Birnbaum and Defendant Dabir in the amount of $50,000 each for their failure to comply with the Default Judgment Order, and an additional $10,000 per day of continued noncompliance after the entry of a contempt order, is significant enough to coerce Defendants to comply with the Court's mandates contained in the Default Judgment Order.

Further, Plaintiffs are entitled to an award of attorneys' fees and costs incurred in prosecuting this contempt motion. An award of attorneys' fees is warranted where, as here, Defendants' contempt is willful. *See Bear*, 71 F. Supp. 2d at 249 (granting attorneys' fees where violation was willful). A violation is willful if the violator "had actual notice of the court's

order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." (*Id.*)

Defendants' refusal to comply with the Default Judgment Order is clearly willful, as Defendants have admitted that the Order contained the requirements and that they refuse to obey. (*See* August 24, 2011 letter to Judge Gardephe from Ronald D. Coleman, at 3, "Plaintiffs raise the issue of defendants' [noncompliance] with the Court's July 15 order. . . defendants were under criminal investigation during this period, and the required submission would have been rife with implications with respect to that matter."). Although Defendant Birnbaum sought reconsideration of the Order, the Court denied that request almost one month ago (Dkt. No. 106) and Defendants still refuse to comply. Nothing indicates that Defendants are unable to comply with the two plain requirements of the Default Judgment Order: (1) providing Plaintiffs with a list of above-detailed persons; and (2) filing with the Court and serving upon Plaintiffs a written report detailing Defendants' efforts to comply with the Default Judgment Order. As explained above, Defendants' counsel's August 24 letter argues that compliance with the Order is unnecessary because it could somehow jeopardize Defendants' liberty in view of the criminal case. That argument cannot defeat the imposition of contempt sanctions against Defendants, however, because (a) it was already rejected by the Court in its denial of Defendant Birnbaum's motion for reconsideration; and (b) the existence of the criminal investigation is no excuse for Dabir's failure to comply with the Order. Thus, attorneys' fees and costs to Plaintiffs are mandated here because Defendants' contempt is willful. *See Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 566 (S.D.N.Y. 2001) ("Having found willful contempt, this Court would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs for the victim of contempt.").

## CONCLUSION

Plaintiffs respectfully request that the Court award Plaintiffs the attorneys' fees and costs requested in their Attorneys' Fees Declaration and impose civil contempt sanctions on Defendants.

                                      McDERMOTT WILL & EMERY LLP

September 1, 2011      By:

                                      /s/ John J. Dabney
                                      John J. Dabney (admitted *pro hac vice*)
                                      Rita Weeks (admitted *pro hac vice*)
                                      Robert W. Zelnick (admitted *pro hac vice*)
                                      McDermott Will & Emery LLP
                                      600 13th Street, NW
                                      Washington, DC  20005
                                      (202) 756-8000 (telephone)
                                      (202) 756-8087 (facsimile)

                                      Michael Shanahan (NY Bar. # 3971793)
                                      McDermott Will & Emery LLP
                                      340 Madison Avenue
                                      New York, NY  10173
                                      (212) 547-5400 (telephone)
                                      (212) 547-5444 (facsimile)

                                      *Attorneys for Plaintiffs*
                                      *Guggenheim Capital, LLC and Guggenheim Partners, LLC*